IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOHN A. SPERTUS, MD<br><br>       Plaintiff,<br><br>  v.<br><br>EPIC SYSTEMS CORPORATION,<br>  Serve:   Registered Agent:<br>              Judith R. Faulker<br>              1979 Milky Way<br>              Verona, WI 53593-9179<br><br>       Defendant. | Case No. 4:22-cv-183 |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT
AND DEMAND FOR JURY TRIAL**

Plaintiff John A. Spertus, MD alleges as follows:

## INTRODUCTION

1.  Dr. John Spertus is a cardiologist. Dr. Spertus maintains an active clinical practice and also conducts research and publishes in the cardiology field.

2.  Dr. Spertus is the author of a series of questionnaires that are used to measure the impact of heart disease on patients' lives. Dr. Spertus owns the copyrights to the questionnaires and registered them with the Copyright Office in 2005.

3.  Dr. Spertus licenses his questionnaires to doctors, clinics, hospitals, researchers, and industry actors. Many doctors, clinics, and hospitals have taken licenses to Dr. Spertus' questionnaires. The questionnaires are used widely in the field.

4.  Defendant Epic Systems Corporation is a leading provider of electronic health records software in the United States. Epic provides its health records software to hospitals and medical schools. In 2019, Dr. Spertus learned that, through its health records software, Epic was

reproducing and distributing one of Dr. Spertus' copyrighted questionnaires without Dr. Spertus' permission.

5. Dr. Spertus offered Epic the opportunity to license his questionnaire. But Epic refused to take a license from Dr. Spertus. Yet, as Dr. Spertus recently learned, Epic nonetheless continued to use his copyrighted questionnaire without his permission. Dr. Spertus files this case for copyright infringement to stop Epic's use of Dr. Spertus' copyrighted work, and to hold Epic accountable for its past and continuing infringement.

## PARTIES

6. Plaintiff Dr. John Spertus ("Dr. Spertus" or "Plaintiff") is an individual who resides in Kansas City, Missouri.

7. Defendant Epic Systems Corporation ("Epic") is a corporation organized under the laws of Wisconsin, with its principal place of business in Verona, Wisconsin. Epic does business in many states, including the state of Missouri.

## NATURE OF THE ACTION, JURISDICTION AND VENUE

8. Dr. Spertus asserts claims for copyright infringement under the copyright laws of the United States, including 17 U.S.C §§ 501 *et. seq*. The Court has original jurisdiction over this action under 28 U.S.C. §§1331 and 1338(a).

9. The Court has personal jurisdiction over Epic. Epic has transacted and does transact business within, and has committed and continues to commit acts of infringement in, this district. For example, Epic has provided and continues to provide its electronic health records software to clients in Missouri, including hospitals in this district. In doing so, Epic reproduces and transmits Dr. Spertus' copyrighted work into Missouri and specifically this district in violation of Dr. Spertus' exclusive rights. In addition, by intentionally infringing Dr. Spertus' copyright as alleged below, Epic committed intentional acts expressly aimed at Missouri, and

specifically this district, causing harm to Dr. Spertus that Epic knew was likely to be suffered in Missouri, and specifically in this district, where Dr. Spertus resides.

10.     Venue is proper in this district under 28 U.S.C. §1400(a).  Epic may be found in this district within the meaning of section 1400(a) because this Court has personal jurisdiction over Epic.

## FACTS

### I.     Dr. Spertus authored and registered copyrights for the Seattle Angina Questionnaires.

11.     Dr. John Spertus is a cardiologist, a doctor who specializes in the study and treatment of heart diseases and heart abnormalities.  Alongside his clinical practice, Dr. Spertus has conducted extensive research in this field.

12.     Dr. Spertus authored and owns a series of copyrighted questionnaires for patients with coronary artery disease known as the Seattle Angina Questionnaires.[1]

13.     Dr. Spertus authored the first version of the Seattle Angina Questionnaire (the "First Angina Questionnaire") in 1992.  At the time, there was no universally-accepted health status measure for coronary disease patients.  A health status measure is a measure of the overall impact of a health condition on a patient's life, including their symptoms, function and quality of life.

14.     Dr. Spertus observed the need for a universally-accepted health status measure for coronary disease, in part because such a measure would be valuable in measuring treatment outcomes for both clinical and research purposes.  Dr. Spertus also recognized that it would be highly advantageous for such a measure to come from a questionnaire that patients could administer to themselves, as compared with physician-administered systems.

---

[1] "Angina" is a cardiovascular condition marked by severe pain in the chest caused by inadequate blood supply to the heart.  The first version of the survey was developed in Seattle.

15. To meet this need, Dr. Spertus authored the First Angina Questionnaire. The questionnaire measures the five clinically important dimensions of the disease: physical limitation, anginal stability, anginal frequency, treatment satisfaction, and disease perception. The questionnaire contains nineteen questions, each with five to six scaled answer options. An example question is shown below:

> 2. Compared with 4 weeks ago, how often do you have **chest pain, chest tightness, or angina** when doing your **most strenuous** activities?
>
> I have had **chest pain, chest tightness, or angina**...
>
> | Much more often | Slightly more often | About the same | Slightly less often | Much less often | I have had **no chest pain** over the last 4 weeks |
> |---|---|---|---|---|---|
> | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

16. Dr. Spertus intended the First Angina Questionnaire to be accessible to, and usable by, patients. He authored the questions, as well as the overall questionnaire, to ensure that patients would be able to complete it in 5 minutes or less. He created the questions so that they could be used by all coronary disease patients, regardless of socioeconomic status and gender. And he crafted the answer options by adapting physician-administered classifications systems to make them understandable and therefore accessible to patients.

17. For example, the questionnaire asks patients to indicate how much their chest pain, chest tightness, or angina limited them from performing certain everyday activities, like "dressing yourself" and "showering." Patients answer by choosing an option on a scale from "severely limited" to "not limited," or "Limited, or did not do for other reasons," as shown in the excerpt below.

4882-7533-5702.2

**The Seattle Angina Questionnaire I**

1. The following is a list of activities that people often do during the week. Although for some people with several medical problems it is difficult to determine what it is that limits them, please go over the activities listed below and indicate how much limitation you have had **due to chest pain, chest tightness, or angina** <u>over the past 4 weeks</u>.
Place an x in one box on each line.

| Activity | Severely Limited | Moderately Limited | Somewhat Limited | A Little Limited | Not Limited | Limited, or did not do for other reasons |
|---|---|---|---|---|---|---|
| Dressing yourself | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking indoors on level ground | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Showering | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

18. Dr. Spertus also developed a scoring system to translate answers to the questionnaire into a quantitative measure of patient-centered coronary disease outcomes. And Dr. Spertus and his colleagues conducted studies to ensure that the questionnaire was scientifically valid (measures what it intends to measure), reproducible, and responsive to clinically-important changes.

19. Dr. Spertus also authored other versions of the questionnaire.

20. In 1996, Dr. Spertus authored a second questionnaire largely based on the first, which he called the "Seattle Angina Questionnaire II" ("Second Angina Questionnaire"). In the Second Angina Questionnaire, Dr. Spertus changed the phrasing of certain questions and answer options. Dr. Spertus made these changes so that the questionnaire would be easier for patients to answer, and easier to translate into other languages.

21. In 2014, Dr. Spertus observed the need for a shorter questionnaire. A shorter and less time-consuming version would make it more feasible to use the questionnaire in routine clinical care.

22. So Dr. Spertus created a shorter version of the Second Angina Questionnaire ("Short Form Questionnaire"). And Dr. Spertus and his colleagues used data from thousands of

patients with coronary artery disease to create the Short Form Questionnaire to preserve the psychometric and prognostic properties of the Second Angina Questionnaire.

23. The Short Form Questionnaire is composed entirely of a subset of the elements of the Second Angina Questionnaire, reproduced verbatim with no changes.

24. Here is Question 1 of the Second Angina Questionnaire:

1. The following is a list of activities that people often do during the week. Although for some people with several medical problems it is difficult to determine what it is that limits them, please go over the activities listed below and indicate how much limitation you have had **due to chest pain, chest tightness, or angina** <u>over the past 4 weeks</u>:

Place an X in one box on each line

| Activity | Extremely Limited | Quite a bit Limited | Moderately Limited | Slightly Limited | Not at all Limited | Limited for other reasons or did not do the activity |
|---|---|---|---|---|---|---|
| Dressing yourself | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking indoors on level ground | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Showering | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Climbing a hill or a flight of stairs without stopping | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Gardening, vacuuming, or carrying groceries | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking more than a block at a brisk pace | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Running or jogging | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Lifting or moving heavy objects (e.g. furniture, children) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Participating in strenuous sports (e.g. swimming, tennis) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

25. And here is Question 1 of the Short Form Questionnaire:

1. The following is a list of activities that people often do during the week. Although for some people with several medical problems it is difficult to determine what it is that limits them, please go over the activities listed below and indicate how much limitation you have had **due to chest pain, chest tightness or angina over the past 4 weeks**.

Place an X in one box on each line.

| Activity | Extremely limited | Quite a bit limited | Moderately Limited | Slightly limited | Not at all limited | Limited for other reasons or did not do the activity |
|---|---|---|---|---|---|---|
| Walking indoors on level ground | ❏ | ❏ | ❏ | ❏ | ❏ | ❏ |
| Gardening, vacuuming or carrying groceries | ❏ | ❏ | ❏ | ❏ | ❏ | ❏ |
| Lifting or moving heavy objects (e.g. furniture, children) | ❏ | ❏ | ❏ | ❏ | ❏ | ❏ |

26. As the above demonstrates, question 1, the instructions for question 1, and the answer categories to question 1 are identical. And the activities the Short Form Questionnaire asks about are a subset of the activities that the Second Angina Questionnaire asks about.

27. The remaining questions of the Short Form Questionnaire are each identical to questions on the Second Angina Questionnaire.

28. Question 2 of the Short Form Questionnaire is identical to Question 3 of the Second Angina Questionnaire. Question 3 of the Short Form Questionnaire is identical to Question 4 of the Second Angina Questionnaire. Question 4 of the Short Form Questionnaire is identical to Question 9 of the Second Questionnaire. And Question 5 of the Short Form Questionnaire is identical to Question 10 of the Second Angina Questionnaire.

29. Dr. Spertus also created a scoring method for the Short Form Questionnaire.

30. Dr. Spertus is the author of and owns the copyright to the First Angina Questionnaire and the Second Angina Questionnaire. In 2005, Dr. Spertus registered his copyright for both the First Angina Questionnaire and the Second Angina Questionnaire. **Exhibit 1**; **Exhibit 2**.

31. The Short Form Questionnaire is composed entirely of elements from the Second Questionnaire. Indeed, as explained above, the Short Form Questionnaire consists entirely of a verbatim subset of the questions on the Second Questionnaire. Moreover, each of those questions is a protectable element. Accordingly, the entirety of the Short Form Questionnaire, and each element of it, is protected by the registered copyright on the Second Angina Questionnaire.

## II. Dr. Spertus licenses the Second Angina Questionnaire and the Short Form Questionnaire to clients.

32. Dr. Spertus licenses his questionnaires to clinics, practices, hospitals, researchers, and industry actors for an annual fee. The fee can vary based on the number of patients at each client clinic, practice, or hospital.

33. Both the Second Angina Questionnaire and the shorter Short Form Questionnaire have become among the most commonly-used measures of coronary disease patients' angina symptoms and angina's effect on their functioning and quality of life.

34. Peer-reviewed research has repeatedly supported the survey's validity. [2] And a task force comprising the American College of Cardiology Foundation and the American Heart Foundation endorsed the use of the Second Angina Questionnaire, which is generally known as the Seattle Angina Questionnaire, in 2011. [3]

35. Likewise, shortly after the Short Form Questionnaire was developed in 2015, the International Consortium for Health Outcomes Measurement endorsed the results of the Short

---

[2] *See, e.g.* https://pubmed.ncbi.nlm.nih.gov/29772387/; https://pubmed.ncbi.nlm.nih.gov/33624815/; https://pubmed.ncbi.nlm.nih.gov/34175106/; https://pubmed.ncbi.nlm.nih.gov/34495443/; https://pubmed.ncbi.nlm.nih.gov/33261627/.
[3] https://www.ahajournals.org/doi/epub/10.1161/CIR.0b013e31821d9ef2

Form Questionnaire as a standardized outcome measure for patients with coronary artery disease.[4]

### III.   Epic's infringing use of the Short Form Questionnaire.

36. Defendant Epic is a leading provider of electronic health records software. Epic provides its health records software to hospitals and medical schools, including Kaiser Permanente, John Hopkins Hospital, Cleveland Clinic, and the Mayo Clinic. According to Epic, more than 250 million patients have a current electronic record in Epic. Epic is paid license fees for its software.

37. Epic's health records software allows its users—such as hospital and clinics—to manage their patients' health records. The software performs basic functions like record-keeping and appointment-scheduling. Epic's software also includes other content and functions.

38. In June 2019, Dr. Spertus discovered that Epic was reproducing the Short Form Questionnaire and distributing it to its clients on its health records system.

39. Reproducing and distributing the Short Form Questionnaire without a license infringes Dr. Spertus' copyright. As explained above, the Short Form Questionnaire consists entirely of elements taken from Second Angina Questionnaire. Indeed, each and every question in the Short Form Questionnaire also appears, identically, in the Second Angina Questionnaire. Accordingly, Dr. Spertus has the exclusive right to reproduce and distribute the Short Form Questionnaire, and each element of it. Epic's use of the Short Form Questionnaire without Dr. Spertus' permission therefore infringes Dr. Spertus' exclusive rights.

40. Shortly after discovering Epic's infringement, Dr. Spertus sent Epic a copyright violation notice. In the notice, Dr. Spertus informed Epic that the Short Form Questionnaire was copyrighted, that Dr. Spertus owned the copyrights covering the Short Form Questionnaire, and

---

[4] https://www.ahajournals.org/doi/10.1161/JAHA.115.001767

that Epic was infringing his copyright by providing the Short Form Questionnaire on its medical platform.

41. In addition, Dr. Spertus attempted to negotiate with Epic a license to the Short Form Questionnaire, so that Epic could continue distributing the Short Form Questionnaire on its system. But their negotiations failed after several months, and Epic did not take a license from Dr. Spertus.

42. Because Epic did not take a license, Epic did not have the right to continue reproducing and distributing the Short Form Questionnaire, and continuing to do so would constitute a willful violation of Dr. Spertus' copyright rights. But in May 2021, Dr. Spertus discovered that Epic was still using the Short Form Questionnaire—without a license and without telling Dr. Spertus. Dr. Spertus again notified Epic that it was violating Dr. Spertus' copyright.

43. Despite Dr. Spertus' repeated notices of copyright infringement, Epic continued and continues to infringe Dr. Spertus' copyrighted works.

44. As described above, Epic provides and makes available to its clients on its health records software a copy of the Short Form Questionnaire.

45. Using Epic's health records software, a client doctor can download to their computer and open a copy of the Short Form Questionnaire for a patient, fill it in, receive a score for the questionnaire, and save a copy of the completed questionnaire and its score to the patient's file. In addition, patients can themselves view and download the questionnaire using Epic's health records software.

46. To make the Short Form Questionnaire available on its health records software, Epic necessarily reproduces the Short Form Questionnaire. In doing so, Epic distributes copies

of the copyrighted work to its clients. In addition, by making Dr. Spertus' copyrighted work available to its clients, Epic knows that its clients use the Short Form Questionnaire, and induces and materially contributes to their copying and distribution of the questionnaire in their own systems and to their patients.

47. Epic does not disclose to its clients that it does not have a license to use the Short Form Questionnaire as used by Epic and its clients. And Epic does not inform its clients that they would have to obtain a license to use the Short Form Questionnaire as used in connection with Epic's heath records software. Nor does Epic do anything to check or make sure that its clients have a license to the Short Form Questionnaire before making it available to them or allowing them to use, copy, or distribute it.

48. Epic has the right and ability to prevent its clients' use of the Short Form Questionnaire without a license. For example, Epic can remove the Short Form Questionnaire from its software. Or, Epic could require its clients to provide proof that they have a license to use the Short Form Questionnaire before making it available to its clients. But Epic does not take any of these steps.

49. Providing the Short Form Questionnaire on its health records system is a draw for Epic's clients to use and pay for Epic's software, because use of the Short Form Questionnaire is valuable and these clients would otherwise have to pay for a license to use the Short Form Questionnaire. And Epic's failure to police or otherwise prevent infringing uses of the Short Form Questionnaire is also a draw for Epic's clients. That is, if Epic took steps to prevent its clients from using the Short Form Questionnaire without a license, such as requiring proof of a license before providing access to the Short Form Questionnaire, then Epic's software would be less desirable to its clients.

11

50. Meanwhile, Epic's use of the Short Form Questionnaire—and the use of the Short Form Questionnaire on behalf of Epic's clients that Epic knowingly induces, causes, and materially contributes to—deprives Dr. Spertus of the fees that he would charge for licenses of the Short Form Questionnaire.

IV. **Epic's infringement of Dr. Spertus' copyright is willful and intentional.**

51. Since at least 2019, Epic has known of Dr. Spertus' copyright in his Short Form Questionnaire. Epic further knows that it does not have a license or permission to use the Short Form Questionnaire in connection with its commercialized heath records software.

52. Despite this, Epic has refused to stop using the Short Form Questionnaire, and has refused to revoke access to the Short Form Questionnaire for its clients. Instead, Epic continues to make the Short Form Questionnaire available on its health records software without a license. And Epic continues to allow its clients to access and use the Short Form Questionnaire without a license.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**for copyright infringement (direct, contributory, vicarious)**

53. Dr. Spertus re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

54. Dr. Spertus is the exclusive owner of the copyright to the First Angina Questionnaire and the Second Angina Questionnaire. Both works are original works of authorship that were fixed in a tangible medium and subject to copyright protection. Both works have been registered with the United States copyright office since 2005. A true and correct copy of the certificate of registration for the First Angina Questionnaire is attached as **Exhibit 1** to this Complaint. A true and correct copy of the certificate of registration for the Second Angina

Questionnaire is attached as **Exhibit 2** to this Complaint. Copies of the First and Second Angina Questionnaire, as well as the Short Form Questionnaire, are attached as **Exhibits 3-5**.

55. Epic had constructive knowledge of Dr. Spertus' copyright in the Seattle Angina Questionnaires since Dr. Spertus' registration in 2005. And Epic had actual knowledge of Dr. Spertus' copyrights in these works since at least 2019.

56. Epic reproduced, distributed, and publicly displayed Dr. Spertus' protected work, or derivatives of Dr. Spertus' protected work, without Dr. Spertus' consent. Epic's acts violate Dr. Spertus' exclusive rights under the Copyright Act, 17 U.S.C §§ 106 and 501, including Dr. Spertus' exclusive rights to reproduce and distribute copies of his work, to create derivative works, and to publicly display his work. Epic's infringement was undertaken knowingly, and with intent to financially gain from Dr. Spertus' copyrighted work.

57. In addition, Epic's clients, using Epic's health records system, reproduced, distributed, and publicly displayed Dr. Spertus' protected work, or derivatives of Dr. Spertus' protected work, without Dr. Spertus' consent. Epic knew that its clients were performing these acts. Epic also knew that these acts constituted copyright infringement, because Epic was aware that Dr. Spertus' works are copyrighted and that neither it nor its clients had a license to use, reproduce, or distribute the works. And Epic induced and materially contributed to its clients' infringements by providing access to and distributing the Short Form Questionnaire to them on its health records system and by failing to prevent their infringing uses.

58. In addition, Epic had the right and ability to supervise its clients' infringing activities, such as by removing the Short Form Questionnaire from its software or requiring users to have a license to the Short Form Questionnaire before providing access.

59. Moreover, Epic has a direct financial interest in its clients' infringing activity. The availability of the Short Form Questionnaire on Epic's health records system, and the ability to use the Short Form Questionnaire without paying a license, are draws for Epic's clients. Epic's failure to police or otherwise take action against infringing uses of the Short Form Questionnaire is also a draw for clients who use Epic's health records system.

60. Accordingly, Epic has directly, contributorily, and vicariously infringed Dr. Spertus' copyrighted works.

61. Epic's infringement has been, and continues to be, willful. Epic knows that Dr. Spertus' works are copyrighted and knows that it does not have a license to use, reproduce, or distribute the works. Accordingly, Epic knows that its acts constitute copyright infringement.

62. Epic's copyright infringement has harmed Dr. Spertus. For example, Dr. Spertus has lost license fee revenue as a direct result of Epic's copyright infringement.

63. Because of Epic's infringing acts, Dr. Spertus is entitled to statutory damages, to his actual damages, and to Epic's profits attributable to its copyright infringement, in an amount to be proven at trial.

64. Epic's infringement has caused and is causing irreparable harm to Dr. Spertus, for which he has no adequate remedy at law. Unless this Court enjoins Epic from infringing Dr. Spertus' work, the harm will continue to occur in the future. Accordingly, Dr. Spertus is entitled to a preliminary and permanent injunction.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John A. Spertus, MD prays for judgment as follows:

a. Entry of judgment holding Epic liable for infringement of the copyrights at issue in this litigation;

b.	An order permanently enjoining Epic from continued acts of infringement of the copyrights at issue in this litigation;

c.	An order requiring Epic to provide a full accounting to Dr. Spertus of clients that have used the copyrighted work without a license, and for all profits derived from Epic's infringement of Dr. Spertus' copyrights;

d.	An order awarding Dr. Spertus his actual damages from the copyright infringements and Epic's profits resulting from Epic's infringement of the copyrights at issue in this litigation in such amount as may be found; alternatively, at Dr. Spertus' election, for statutory damages pursuant to 17 U.S.C. §504;

e.	An order requiring Epic to pay punitive damages as a result of their deliberate and willful misconduct;

f.	An order awarding Dr. Spertus his costs and attorney's fees under 35 U.S.C. §505;

g.	Impounding and destruction of Epic's products and materials that infringe Dr. Spertus' copyright; and

h.	Any and all other legal and equitable relief as may be available under law and which the court may deem proper.

## **DEMAND FOR A JURY TRIAL**

Dr. Spertus demands a jury trial for all issues so triable.

4882-7533-5702.2

Respectfully submitted,

/s/ *Eric S. Johnson*

Eric S. Johnson        MO # 53525
Destiny L. Bounds    MO # 69530
KUTAK ROCK LLP
2300 Main Street, Ste. 800
Kansas City, MO 64108
P:   (816) 960-0090
F:   (816) 960-0041
eric.johnson@kutakrock.com
destiny.bounds@kutakrock.com

and

Christin Cho*
CA State Bar No. 238173
Joanne Bui*
CA State Bar No. 340378
Simon Franzini*
CA State Bar No. 287631
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
christin@dovel.com

*ATTORNEYS FOR PLAINTIFF*

\**Pro hac vice* admission to be sought.

16