# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JOHN A. SPERTUS, MD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-183 |
| | ) | |
| EPIC SYSTEMS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT EPIC SYSTEMS CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER

---

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................ 1

II.     FACTUAL BACKGROUND .......................................................................................... 1

        A.      The Parties ........................................................................................................ 1

        B.      The Copyright Dispute ..................................................................................... 3

III.    ARGUMENT .................................................................................................................. 4

        A.      THIS COURT LACKS PERSONAL JURISDICTION OVER EPIC .................. 4

                1.      Legal Standard ...................................................................................... 4

                2.      This Court Lacks General Jurisdiction Over Epic ................................. 6

                3.      This Court Lacks Specific Jurisdiction Over Epic ................................. 7

        B.      ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO
                THE WESTERN DISTRICT OF WISCONSIN ................................................ 13

                1.      Legal Standard .................................................................................... 13

                2.      This Case Could Have Been Brought in Western District of Wisconsin . 14

                3.      Transfer to the Western District of Wisconsin Will Serve the Convenience
                        of the Parties, the Convenience of Witnesses, and the Interest of Justice. 14

IV.     CONCLUSION ............................................................................................................. 17

QB\310265.00379\73575913.4

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. Bangash*, No. 4:13-CV-269 HEA,
  2014 WL 805869 (E.D. Mo. Feb. 28, 2014) .......................................................................... 11

*Am. Standard, Inc. v. Bendix Corp.*,
  487 F. Supp. 254 (W.D. Mo. 1980) ..................................................................................... 16

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...................................................................................................... 5, 12

*Calder v. Jones*,
  465 U.S. 783 (1984)............................................................................................................ 8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)...................................................................................................... 5, 6

*Dakota Indus. v. Dakota Sportswear*,
  946 F.2d 1384 (8th Cir. 1991) ............................................................................................ 8

*Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*,
  89 F.3d 519 (8th Cir. 1996) .......................................................................................... 5, 6

*ESAB Grp., Inc. v. Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997) .............................................................................................. 9

*etrailer Corp. v. Automatic Equip. Mfg.*,
  4:17CV1309 HEA, 2018 WL 1535473 (E.D. Mo. Mar. 29, 2018) ................................. 11, 12

*Gen. Elec. Capital Corp. v. Grossman*,
  991 F.2d 1376 (8th Cir. 1993) .......................................................................................... 10

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
  564 U.S. 915 (2011)............................................................................................................ 5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984).......................................................................................................... 12

*Hoffman v. Blaski*,
  363 U.S. 335 (1960).......................................................................................................... 14

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)............................................................................................................ 5

*Johnson v. Arden*,
  614 F.3d 785 (8th Cir. 2010) ....................................................................................... 6, 10

*Land–O–Nod v. Bassett Furniture Indus., Inc.*,
  708 F.2d 1338 (8th Cir. 1983) ............................................................................................ 7

*Myers v. Casino Queen, Inc.*,
  689 F.3d 904 (8th Cir. 2012) ............................................................................................. 7

*N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*,
   975 F. Supp. 2d 993 (E.D. Mo. 2013)..............................................................passim

*Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Coca-Cola Co.*,
   No. 06-03056-CV-W-GAF, 2006 WL 696461 (W.D. Mo. Mar. 17, 2006) ............................ 14

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981).................................................................................. 14

*Rano v. Sipa Press, Inc.*,
   987 F.2d 580 (9th Cir. 1993) ........................................................................ 9

*Renaissance Pen Co. v. Krone, L.L.C.*,
   No. 4:04 CV 557 DDN, 2006 WL 6322521 (E.D. Mo. Apr. 11, 2006) .................................. 9

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
   119 F.3d 688 (8th Cir. 1997) ........................................................................ 14

*True Fitness Tech., Inc. v. Samsara Fitness*, LLC,
   No. 4:14CV1930 HEA, 2015 WL 3795862 (E.D. Mo. June 18, 2015)............................. 5, 7, 8

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
   646 F.3d 589 (8th Cir. 2011) ..................................................................... 4, 5, 6

*Walden v. Fiore*,
   571 U.S. 277 (2014)................................................................................ 5, 6

*World–Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ................................................................................. 6

**Statutes**

28 U.S.C. § 1391 (c)(2) ................................................................................ 14

28 U.S.C. § 1400(b) .................................................................................... 14

28 U.S.C. § 1404(a) .................................................................................... 13

**Other Authorities**

5 Patry on Copyright § 17:154......................................................................... 9, 12

**Rules**

Fed. R. Civ. P. 12(b)(2)................................................................................ 4

QB\310265.00379\73575913.4

# I. INTRODUCTION

Plaintiff John A. Spertus, MD ("Plaintiff") improperly seeks to hail Defendant, Epic Systems Corporation ("Epic") into this Court to answer to allegations of copyright infringement within Epic's electronic health records software. Plaintiff sued Epic in the Western District of Missouri despite knowledge of Epic's copyright license to the work at-issue and of Epic's minimal and unrelated contacts in this forum.

Epic hereby moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over Epic. Epic is incorporated in, and maintains its principal place of business in, Wisconsin. Epic does not, and has not, uniquely or expressly directed any of its business activities, including those alleged to be infringing, toward the Western District of Missouri. Any contacts Epic does have with Missouri are minimal in comparison to Epic's business across the other 49 states and have little to do with the underlying cause of action. In the alternative, Epic requests the Court transfer this action to the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

# II. STATEMENT OF FACTS

## A. The Parties

Epic is a healthcare information technology ("IT") company that develops electronic medical records software for medical groups, hospitals, and integrated healthcare organizations. (Declaration of Jamie Bjorklund ("Bjorklund Decl."), ¶ 13). Epic provides software to healthcare organizations in all 50 states across the country. (*Id.*).

Epic is incorporated in Wisconsin and maintains its principal place of business at its campus in Verona, Wisconsin, located just outside of Madison. (*Id.*, ¶¶ 3-4). Epic does not have,

QB\310265.00379\73575913.4

and has never had, a brick-and-mortar presence anywhere in Missouri. (*Id.*, ¶ 6). Epic has been located in the Madison, Wisconsin area since its inception in 1979.[1] (*Id.*, ¶ 4).

Epic currently employs roughly 10,000 people, the vast majority of whom are based out of the Verona campus. (*Id.*, ¶ 5). At the time this suit was filed, Epic only had two employees working remotely from Missouri, neither of whom have job responsibilities or knowledge related to allegations in this case. (*Id.*, ¶¶ 7-8). Epic does not own, rent, or lease space for these employees, and does not store any inventory or other materials at the residences of these employees. (*Id.*, ¶ 9). Epic does not require either employee to reside in or around this District. (*Id.*, ¶ 7). To the contrary, Epic's general policy is that *all* employees must live within 45 minutes of Verona, Wisconsin, but, on the rare occasion, Epic sometimes makes exceptions in unique cases. (*Id.*).

The design, development, and testing of Epic's software platforms occurred, and continues to occur, primarily at Epic's Verona, Wisconsin campus. (*Id.*, ¶ 11). Likewise, the employees who negotiated and executed a copyright license from Wolters Kluwer for the questions in the Seattle Angina Questionnaire were located in Verona, Wisconsin, and, to the extent they are still employed by Epic, remain on the Verona campus. (*Id.*, ¶ 11; *see also* Declaration of Gretchen Bader, (hereinafter "Bader Decl."), ¶ 3). Epic's documents and records are maintained at its Verona, Wisconsin campus. (Bader Decl., ¶ 8; Bjorklund Decl., ¶ 11).

While Epic software has been implemented at health systems with locations in Missouri, Epic has not specifically directed its business to Missouri nor otherwise have any reason to believe that it would be hailed into this Court on a copyright infringement related to content licensed from Wolters Kluwer (a publisher headquartered in the Netherlands) through Copyright Clearance

---

[1] Prior to moving to its current campus in Verona, Epic was based in neighboring Madison, Wisconsin. (Bjorklund Decl., ¶ 4).

QB\310265.00379\73575913.4

Center (headquartered in Massachusetts). (Bader Decl., ¶¶ 5-8). Moreover, of the roughly 550 organizations in the Epic customer community, only 8 are headquartered in Missouri. (Bjorklund Decl., ¶ 13).

According to his Complaint, Plaintiff is a cardiologist who maintains an active clinical practice while also conducting research in the field of cardiology. (Dkt 1, ¶ 1). Plaintiff resides in Kansas City, Missouri. (Dkt. 1, ¶ 6).

**B.      The Copyright Dispute**

Plaintiff alleges that he is the author of a series of questionnaires, which he refers to in his Complaint as the "Seattle Angina Questionnaire(s)," used to assist healthcare providers in measuring the status of coronary disease in patients. (Dkt. 1, ¶¶ 12, 20, 22). Plaintiff alleges Epic infringed Plaintiff's purportedly exclusive rights to reproduce, distribute, and publicly display the Seattle Angina Questionnaire by including a portion of it in Epic's software and by providing that software to Epic's customers. (Dkt. 1, ¶¶ 44, 54-56). Plaintiff further alleges Epic indirectly infringed his alleged copyright by inducing, materially contributing to, and controlling the reproduction, distribution, and public display of the Seattle Angina Questionnaire by Epic's customers. (Dkt. 1, ¶¶ 53-60). Plaintiff does not allege facts detailing how Epic purportedly accomplished this alleged infringement.

Plaintiff noticeably omits in his pleading that Epic had, and has, a license to use questions from the Seattle Angina Questionnaire from Wolters Kluwer, who published an article authored by Plaintiff and others that included those same questions—a license Epic informed Plaintiff of when he first reached out to Epic. (Bader Decl., ¶¶ 5-6, 9). Wolters Kluwer also is not headquartered in Missouri, but instead—according to its website—in the Netherlands. (Wolters Kluwer, About Us, Organization, http://wolterskluwer.com/en/about/organization (last visited Apr. 19, 2022)). Copyright Clearance Center, Inc. facilitated the copyright license Epic obtained

QB\310265.00379\73575913.4

from Wolters Kluwer. (Bader Decl., ¶ 7). Copyright Clearance Center—which professes to "help[] organizations integrate, access, and share information through licensing, content, software, and professional services"—also is not headquartered in Missouri, but instead in Massachusetts. (Copyright Clearance Center, Home, About, Contact, http://copyright.com/about/contact (last visited Apr. 19, 2022)).

## III.   ARGUMENT

The Western District of Missouri is not the proper forum for this dispute. Of primary importance, this Court does not have personal jurisdiction over Epic; Epic is neither "at home" in Missouri, nor does it have substantial contacts with Missouri related to the allegations at-issue. Yet, if the Court disagrees, the transfer to the Western District of Wisconsin is appropriate based on convenience and in the interests of justice.

### A.   THIS COURT LACKS PERSONAL JURISDICTION OVER EPIC

This Court lacks both general and specific personal jurisdiction over Epic. Epic is not "at home" in Missouri as it is not headquartered or incorporated in Missouri. Nor does Plaintiff sufficiently plead that his allegations arose out of or are related to contacts Epic has with Missouri, let alone substantial contacts. The vast majority of Epic's employees are located in Verona, Wisconsin, with just two of its roughly 10,000 employees working remotely from Missouri. While Epic's software is implemented in hospital systems within Missouri, Epic does not have such substantial contacts related to conduct at-issue in this case that Epic should have reasonably anticipated being hauled into this Court for copyright infringement.

#### 1.   Legal Standard

Plaintiffs must make a *prima facie* showing that personal jurisdiction is proper in the chosen forum. Fed. R. Civ. P. 12(b)(2); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011). Courts view the evidence in the light most favorable to the

pleading party; however, if the defendant controverts or denies jurisdiction, the plaintiff bears the burden of designating facts establishing personal jurisdiction. *True Fitness Tech., Inc. v. Samsara Fitness*, LLC, No. 4:14CV1930 HEA, 2015 WL 3795862, at *2 (E.D. Mo. June 18, 2015); *see also, Viasystems Inc.*, 646 F.3d at 592 ("the party seeking to establish personal jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction.").

Missouri's long-arm statute allows federal courts within its boundaries to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *Viasystems Inc.*, 646 F.3d at 593-94. The Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). Due process mandates personal jurisdiction be exercised ***only if*** the defendant has "purposefully availed" itself of the benefits and protections of the forum state by establishing ***sufficient*** "minimum contacts" with the forum state. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (emphasis added) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315-16 (1945)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). To maintain personal jurisdiction, the defendant's contacts with the forum state must be more than "random," "fortuitous," or "attenuated." *Burger King,* 471 U.S. at 474-75 The Supreme Court recognizes both "specific" and "general" jurisdiction. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).

General jurisdiction permits a court to assert jurisdiction only where a defendant's "affiliations with the State are so continuous and systematic as to render it essentially ***at home*** in the forum State." *Id*. (emphasis added). Absent exceptional circumstances, general jurisdiction exists only where the defendant corporation is incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

5

In the absence of general jurisdiction, personal jurisdiction depends on an affiliation between the forum and the specific underlying controversy. *Daimler*, 571 U.S. at 138-39. A court has specific jurisdiction over a nonresident defendant only if the defendant's suit-related conduct creates "a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *Digi-Tel Holdings*, 89 F.3d at 522. The defendant's contacts must be with the forum state itself, ***not merely with persons who reside there***. *Walden*, 571 U.S. at 285. As the Supreme Court has explained, the "defendants-focused 'minimum contacts' inquiry" is designed to "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* at 284 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). A forum may exercise specific personal jurisdiction over a defendant based on the in-state *effects* of a defendant's alleged *extraterritorial* tortious acts only if those acts "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state." *Viasystems, Inc.*, 646 F.3d at 594 (citing *Johnson v. Arden,* 614 F.3d 785, 796 (8th Cir. 2010)).

### 2. This Court Lacks General Jurisdiction Over Epic

Absent extraordinary circumstances, the "paradigm" bases for general jurisdiction are either (a) the place of incorporation or (b) the principal place of business. *Daimler*, 571 U.S. at 138-39. General jurisdiction is subject to a higher due-process threshold than specific jurisdiction. *Viasystems*, 646 F.3d at 595. Epic's home is not in Missouri; Epic is headquartered in Wisconsin, organized under the laws of Wisconsin, and maintains its expansive campus (i.e. principal place of business) and employs nearly all its personnel in Verona, Wisconsin. (Bjorklund Decl., ¶¶ 3-5; *see also* Dkt. 1, ¶ 7). Epic is not "essentially at home" in Missouri, and, as such, is beyond the reach of this Court's general personal jurisdiction.

6

### 3. This Court Lacks Specific Jurisdiction Over Epic.

Specific jurisdiction is equally lacking here. To the extent Plaintiff's Complaint alleges any conduct with specificity, none of that conduct occurred in Missouri. Beyond the fact that a minute percentage of Epic's customers are in Missouri and Plaintiff resides in Missouri, Epic's alleged conduct has no connection with Missouri. Specific jurisdiction is thus lacking over Epic.

"Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum state, the cause of action, and the defendant." *True Fitness*, 2015 WL 3795862 at *3 (citing *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912 (8th Cir. 2012)). The Eighth Circuit has established a five-factor test (*Land-O-Nod* factors) to determine whether a defendant's contacts with the forum state give rise to specific jurisdiction within the dictates of due process:

1) the nature and quality of contacts with the forum state;

2) the quantity of such contacts;

3) the relation of the cause of action to the contacts;

4) the interest of the forum state in providing a forum for its residents; and

5) the convenience of the parties.

*Id.* (citing *Land–O–Nod v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)). Although "the first three factors are primary factors, and the remaining two are secondary factors, [courts] look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 999 (E.D. Mo. 2013); *see also True Fitness Tech., Inc.*, 2015 WL 3795862 at *3.

### a. Epic's Alleged Conduct Was Not Carried Out for the Purpose of Having Its Consequences Felt in Missouri (*Land-O-Nod* Factor 3)

The Court's analysis begins with the third *Land-O-Nod* factor and consider whether Epic's alleged acts were carried out "for the very purpose of having their consequences felt in the forum state." *True Fitness*, 2015 WL 3795862 at *3 (citing *Dakota Indus. v. Dakota Sportswear*, 946

F.2d 1384, 1391 (8th Cir. 1991)). Under the so-called "Effects Test," Plaintiff is required to make a *prima facie* showing that Epic's alleged acts constituting infringement: (1) were intentional; (2) were uniquely or expressly aimed at Missouri; and (3) caused harm, the brunt of which was suffered—and which Epic knew was likely to be suffered—in Missouri. *Id.*; *see also Calder v. Jones*, 465 U.S. 783, 788-90 (1984). While the Effects Test does not unilaterally supersede the *Land–O–Nod* factors, courts cannot find specific personal jurisdiction if the Effects Test is not satisfied, particularly where copyright infringement is alleged. *True Fitness*, 2015 WL 3795862 at *3, 6 ("Following Calder, cases decided throughout this Circuit uniformly have held that in order for a defendant's tortious conduct to confer personal jurisdiction, there must be a prima facie showing that the defendant's intentional acts were performed for the very purpose of having their consequences felt in the forum state."); *see also N.C.C. Motorsports*, 975 F. Supp. 2d at 999. Thus, as a threshold matter, the Court must first determine whether the Effects Test is satisfied and only then move on to the remaining *Land-O-Nod* factors.

The only connections Plaintiff pleads between Epic's conduct and Missouri are that: (i) Epic provides its healthcare software to clients in Missouri, and in doing so, allegedly reproduces and transmits Plaintiff's work from Wisconsin into Missouri; and (ii) Epic knew that it was causing harm to Plaintiff in Missouri.. (Dkt. 1, ¶ 9). Under the weight of the controlling authority, these facts are insufficient to confer specific jurisdiction.

Plaintiff does not (because he cannot) allege Epic's allegedly infringing conduct is expressly aimed at Missouri. Indeed, Epic's electronic medical records software that allegedly contains Plaintiff's copyrighted work is used by groups, hospitals, and integrated healthcare organizations around the country. (Bjorklund Decl., ¶ 13). As federal courts have held, activities directed at customers throughout the United States, without focusing on and targeting a particular

forum, are insufficient to establish jurisdiction in that forum. *See e.g. ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir. 1997). To hold otherwise would render a copyright defendant subject to personal jurisdiction in any and all states where copyright protected material was ultimately sold or distributed, no matter the connection to the forum and "such a broad rule would amount to national service of process, something the Copyright Act does not provide." 5 Patry on Copyright § 17:154 (citing *Rano v. Sipa Press, Inc.*, 987 F.2d 580 (9th Cir. 1993)).

Moreover, courts in the Eighth Circuit have found in copyright infringement cases that extraterritorial acts having consequences in Missouri (*i.e.* the alleged acts constituting copyright infringement) combined with other "random" contacts were insufficient to confer jurisdiction. *Renaissance Pen Co. v. Krone, L.L.C.*, No. 4:04 CV 557 DDN, 2006 WL 6322521, at *3-4 (E.D. Mo. Apr. 11, 2006). For example, in *N.C.C. Motorsports*, the court found personal jurisdiction did not exist where the defendant signed a lease for the Missouri plaintiff's design, copied the design, cancelled the lease, and used the copyrighted design in Missouri by way of its website. 975 F. Supp. at 995-96. Not only did the defendant know prior to the infringement that plaintiff was a Missouri resident, they further specified in the lease agreement that Missouri law should control, and Missouri was the appropriate forum for any dispute arising from the agreement. Nevertheless, the court found the alleged conduct was not expressly directed at Missouri. *Id.*

Here, the alleged conduct was aimed at United States customers generally and was not expressly directed at Missouri. Epic sells its software products to organizations in all 50 states; only 8 of which are headquartered in Missouri. (Bjorklund Decl., ¶ 13). Based on Plaintiff's allegations in its Complaint, Epic's alleged infringement arose from software development that occurred in Wisconsin (*Id.*, ¶ 11), and would have allegedly been distributed to locations nationwide—with only a small fraction of those organizations being in Missouri. (*Id.*, ¶ 13).

Plaintiff further alleges that "by intentionally infringing [Plaintiff's] copyright . . . Epic committed intentional acts expressly aimed at Missouri and specifically this district, causing harm to [Plaintiff] that Epic knew was likely to be suffered in Missouri, and specifically in this district, where [Plaintiff] resides." (Dkt. 1, ¶ 9). But courts in the Eighth Circuit have consistently held that allegations of harm felt by a resident of the district is ***insufficient*** to find such conduct was performed for the very purpose of having its consequences felt in the forum state. For example, in *Johnson v. Arden*, the court found the defendant posting a statement on an online business review website that the plaintiff's pet shop "brutally killed and tortured" cats "in Unionville, Missouri" was insufficient to satisfy the Effects Test. 614 F.3d at 796-97 (internal quotations omitted). Despite the obvious impact that such public statements may have had on the defendant's Missouri business, the plaintiff's residence in Missouri, and the defendant's inclusion of their location in the website comment, the court declined to find the defendant's act "[was] performed for the very purpose of having their consequences felt in Missouri." *Id.*; *see also, e.g.*, *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir. 1993) (accounting firm's direction of reports into Minnesota with the knowledge that investors would rely on them was insufficient to confer personal jurisdiction); *N.C.C. Motorsports*, 975 F. Supp. 2d at 993-1005 (no personal jurisdiction where non-resident defendant entered into a lease with Missouri plaintiff to use the plaintiff's copyrighted shopping cart vehicle for promotional purposes, knowingly hired third party to build an infringing shopping cart, and then terminated lease when shopping cart was ready).

Accordingly, Plaintiff has failed to carry his burden of making the *prima facie* showing required under the Effects Test. Such failure is determinative under the third *Land-O-Nod* factor—the relation of the cause of action to Epic's alleged contact with the District. Plaintiff's failure in this respect is fatal to a finding that personal jurisdiction exists, and this case must be dismissed.

QB\310265.00379\73575913.4

### b. Plaintiff Cannot Meet *Land–O–Nod* Factors 1 & 2

Even if Plaintiff's allegations satisfied the Effects Test (they do not), the remaining *Land–O–Nod* factors also fail to establish personal jurisdiction. After the third factor, the first and second factors—(1) the nature and quality of contacts with the forum state and (2) the quantity of such contacts—are the primary factors considered by the Court. *N.C.C. Motorsports*, 975 F. Supp. at 999.

In analyzing the nature and quality of the contacts, courts first look to whether the defendant has maintained a business, property, offices, employees or agents in the forum state. *See Ahmed v. Bangash*, No. 4:13-CV-269 HEA, 2014 WL 805869, at *5 (E.D. Mo. Feb. 28, 2014). In *etrailer Corp. v. Automatic Equip. Mfg.*, the court focused on these factors in finding the nature and quality of the contacts factor favored the defendant, despite defendant having sold product to customers in Missouri. No. 4:17CV1309 HEA, 2018 WL 1535473, at *3 (E.D. Mo. Mar. 29, 2018). Epic does not, and has never, maintained a business, property or offices in Missouri. (Bjorklund Decl., ¶ 6). Epic does not maintain a registered agent for service of process in Missouri. (*Id.*, ¶ 10). While Epic has two employees working remotely from Missouri, they are not located in Missouri at Epic's request or for purposes of performing their job duties, and both requested to work in Missouri for personal reasons. (*Id.*, ¶¶ 7-8).

The nature and quality factor serves as another threshold test because, where "the nature and quality of the contacts between Defendant and Missouri is insufficient to confer specific jurisdiction, the numerosity of such contacts is immaterial to the Court's analysis." *Ahmed*, 2014 WL 805869, at *6. Given the deficient and inadequate nature and quality of Epic's contacts with Missouri, the Court need not consider the quantity of contacts. Nevertheless, the quantity of contacts factor weighs in favor of Epic. In *etrailer*, the court held, under the quantity factor, that roughly 5% of sales into Missouri was "minimal in relation to [the defendant's] total sales" and

11

thus, this factor favored the defendant. 2018 WL 1535473, at *3. Here, a mere 1.5% of the healthcare organizations to which Epic has licensed its software are based in Missouri. (*See* Bjorklund Decl., ¶ 13).

Because the first two factors also weigh in Epic's favor, the Court's analysis should stop here and Epic's motion to dismiss should be granted.

### c.    Plaintiff Fails to Meet *Land–O–Nod* Factors 4 & 5

The remaining two factors—(4) the interest of the forum state in providing a forum for its residents and (5) the convenience of the parties—serve only as secondary considerations in the specific jurisdiction analysis and cannot outweigh the first three factors. *See True Fitness*, 2015 WL 3795862 at *7 ("[The fourth and fifth *Land –O–Nod* factors] cannot outweigh the first three factors"); *N.C.C. Motorsports,* 975 F.Supp.2d at 1005 ("The last two elements of the Eighth Circuit test for personal jurisdiction are secondary to the first three."). While Missouri may have an interest in providing a forum for its resident copyright holders, this fact cannot outweigh the due process considerations necessary to hale an out-of-state defendant into this Court. *See etrailer Corp.*, 2018 WL 1535473, at  *4; *N.C.C. Motorsports*, 975 F.Supp.2d at 1005 (holding Missouri's interest in providing a forum for its copyright holders "does not compensate for Defendant's lack of minimum contacts"). To conclude otherwise would amount to allowance of national service of process, which the Copyright Act does not provide for. 5 Patry on Copyright § 17:154. Further, such a rule would violate the Supreme Court's consistent holdings that personal jurisdiction must arise from contacts "the defendant himself" creates with the forum, as opposed to those that were created via the plaintiff or third parties. *See Burger King*, 417 U.S. at 475; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

The convenience of the parties likewise does not support the exercise of jurisdiction over Epic in this District. While Plaintiff resides in the district, no other witness appears to. The vast

majority of documents and witnesses in this case are located where the conduct Plaintiff alleges would have actually occurred—at Epic's campus in Verona, Wisconsin. (Bader Decl., ¶¶ 3, 8).

In sum, considering all of the factors in totality, this Court does not have personal jurisdiction over Epic in this case. This case should be dismissed based on the third *Land–O–Nod* factor alone—relation of the cause of action to the contacts—which is informed by the Effects Test. Epic did not ***uniquely and expressly direct any intentional conduct*** related to Plaintiff's cause of action at Missouri and Plaintiff therefore cannot meet its burden to show personal jurisdiction exists. Beyond the third factor, each of the five *Land–O–Nod* factors favors Epic or is neutral at best. Thus, Epic requests this case be dismissed for lack of personal jurisdiction.

## B.     ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE WESTERN DISTRICT OF WISCONSIN

Even if the Court does not grant Epic's Motion to Dismiss, the Court should transfer this case to the Western District of Wisconsin. Other than Plaintiff, all parties and witnesses identifiable at this time are located outside of Missouri, primarily in Verona, Wisconsin. (Bjorklund Decl., ¶¶ 3-5, 11). The licensing activity occurred in Wisconsin. (Bader Decl., ¶¶ 3, 5-8). The alleged activity regarding the purported incorporation of Plaintiff's allegedly copyright material into Epic's software would have occurred in Verona, Wisconsin. (Bjorklund Decl., ¶ 11). All material documents identifiable at this time are similarly located outside of Missouri, primarily in Wisconsin. (Bader Decl., ¶ 8). As such, this Western District of Missouri is not the proper venue for the parties' dispute, and transfer to the Western District of Wisconsin is appropriate.

### 1.     Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …." 28 U.S.C. § 1404(a). A threshold inquiry is whether the suit "might have been brought" in the

proposed transferee venue. *Id; see also Hoffman v. Blaski*, 363 U.S. 335, 344-44 (1960). Once a defendant meets that threshold, the Court turns to additional factors. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). Courts in this Circuit have used the following articulation of these factors: (1) the convenience of the parties; (2) the convenience of the witnesses, including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony; (3) the accessibility to records and documents; (4) the location where the conduct complained of occurred; and (5) the applicability of each forum state's substantive law. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997).

### 2. This Case Could Have Been Brought in Western District of Wisconsin

This copyright infringement case could have been brought in the Western District of Wisconsin. Civil actions relating to copyrights "may be instituted in the district in which the defendant or his agent resides." 28 U.S.C. § 1400(b). A defendant corporation resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391 (c)(2). Under this definition, Epic resides in the Western District of Wisconsin because Epic is organized under the laws of Wisconsin and headquartered in Verona. (Dkt. 1, ¶ 6; Bjorklund Decl., ¶ 3). Thus, the Western District of Wisconsin has personal jurisdiction over Epic, and venue is appropriate there.

### 3. Transfer Will Serve the Convenience of the Parties, the Convenience of Witnesses, and the Interest of Justice.

First, transfer is appropriate for the convenience of the witnesses in this case. The convenience of the witnesses is the most important factor. *See Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Coca-Cola Co.,* No. 06-03056-CV-W-GAF, 2006 WL 696461 at *4 (W.D. Mo. Mar. 17, 2006). Plaintiff alleges that Epic has infringed his copyright. To the extent that Plaintiff requires witnesses to testify regarding the nature, originality, and validity of his copyright, it is

unlikely that many, if any, of those witnesses will be located in Missouri. To the extent that Plaintiff calls Epic's customers as witnesses to demonstrate whether his work was actually infringed and included in Epic's software, Plaintiff acknowledges in his Complaint that such witnesses can be found throughout the country. (*See* Dkt. 1, ¶¶ 36-38).

The vast majority of the remaining witnesses required to prove or disprove the allegations in Plaintiff's Complaint are located in or around Madison, Wisconsin. (Bjorklund Decl., ¶ 11). This is where Epic's employees create Epic's software and make decisions about what materials to include therein. (*Id.*). Madison, Wisconsin is also where any decisions concerning licensing would have been made and where the employees who would have handled any hypothetical licensing negotiations are located. (*Id.*). It is also the location of Epic's in-house legal team which would have conducted any discussions with Plaintiff that are alleged in Plaintiff's Complaint. (Dkt. 1, ¶¶ 40-43; Bjorklund Decl., ¶ 11). Thus, the vast majority of witnesses in this case would have to undergo the inconvenience of interstate travel from Wisconsin or elsewhere to Missouri unless this case is transferred.

Second, the fact that the majority of the likely witnesses in this case are Epic employees means transfer is necessary for the convenience of the parties. Not only will Epic have to foot the bill for travel of any of its personnel that participate in its defense, but it will further have to provide travel, lodging, and meals for many of the witnesses in this case. Further, it will have to make arrangements to cover the work of any personnel that are forced to travel for this case in lieu of their obligations to support Epic's healthcare organization customers. Given the nature of Epic's customer base—medical groups, hospitals, and integrated healthcare organizations—who are still combatting the effects of the pandemic, it is imperative that Epic's software maintains consistent

functionality and that any issues be immediately addressed. A long absence by key personnel could quite literally impinge on healthcare providers' ability to treat and care for patients.

This is not a case where transfer would merely shift the inconvenience from one party to the other. As it stands, the burden on Epic of litigating in Missouri is disproportionate to the burden that would be placed on a single individual (Plaintiff) by transferring the case to Wisconsin.

Third, the location where the alleged conduct occurred similarly supports transfer. As discussed above, any alleged decision to include Plaintiff's work in Epic's software would have been made in Wisconsin, the servers where the work was allegedly copied and stored would be located in Wisconsin, and nearly all implementation personnel involved in distributing the software are located in Wisconsin. (Bjorklund Decl., ¶ 11). None of the purported conduct related to alleged copyright infringement occurred in Missouri.

Fourth, the majority of the relevant documents (e.g., any documentation of Epic's alleged decision to include the work in the software) are located in Wisconsin. Admittedly, because "many records, or copies thereof, are easily transported, their location is not entitled to great weight." *Am. Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 264 (W.D. Mo. 1980). Epic is well aware of the irony that would be inherent in an electronic records software company arguing that the location of its records would create inconvenience in a foreign forum. However, the ease of copying relevant documents is also true for Plaintiff, whose own counsel are located in California. Accordingly, this factor is neutral.

The final factor, the applicability of each forum state's law, is neutral. This is a copyright case brought entirely under federal law. Missouri therefore has no interest in applying its law and no associated harm would result from transfer to the Western District of Wisconsin.

QB\310265.00379\73575913.4

Accordingly, the convenience factors weigh in favor of transfer to the Western District of Wisconsin.

## IV.     CONCLUSION

For the above reasons, Epic asks the Court to GRANT its Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, transfer this case to the Western District of Wisconsin.

Dated: April 22, 2022                    Respectfully Submitted By:

By:/s/ Robert M. Thompson
    Robert M. Thompson      MO Bar 38156
    rmthompson@bclplaw.com
    Grace Colato Martinez     MO Bar 70921
    Grace.colato@bclplaw.com
    BRYAN CAVE LEIGHTON PAISNER LLP
    1200 Main Street, Suite 3800
    Kansas City, Missouri 64105
    Tel. (816) 374-3200
    Fax (816) 374-3300

    And

    Martha Jahn Snyder (*pro hac admission forthcoming*)
    martha.snyder@quarles.com
    Kristin Graham Noel (*pro hac admission forthcoming*)
    kristin.noel@quarles.com
    Bryce A. Loken (*pro hac admission forthcoming*)
    bryce.loken@quarles.com
    QUARLES & BRADY LLP
    33 East Main Street, Suite 900
    Madison, WI 53703
    Tel. (608) 251.5000
    Fax (608) 251.9166

    ATTORNEYS FOR EPIC SYSTEMS CORPORATION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 22, 2022, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Robert M. Thompson*
Robert M. Thompson

QB\310265.00379\73575913.4