**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF**
**MISSOURI**

**JOHN SPERTUS**
               *Plaintiff,*

   v.

**EPIC SYSTEMS CORPORATION,**

         *Defendant.*

Case No. 4:22-cv-183

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS OR TRANSFER

# **Table of Contents**

I.      Introduction. .......................................................................................................... 1

II.     This Court has personal jurisdiction over Epic. .................................................. 1

    A.      Epic has sufficient minimum contacts to satisfy due process. ................................ 2

        1.      The nature and quality of the contacts. ........................................................ 3

        2.      The quantity of the contacts. .................................................................... 6

        3.      The relation of the cause of action to the contacts. ...................................... 6

        4.      The interest of the forum state in providing a forum for its residents. .............................................................................................. 8

        5.      The convenience of the parties. ................................................................ 8

    B.      Jurisdiction is also proper under the *Calder* effects test. ...................................... 9

III.    Epic's motion to transfer should be denied. ...................................................... 10

    A.      Epic does not meet its burden of showing that Wisconsin is clearly more convenient. ...................................................................................................... 11

        1.      Convenience of the parties. .................................................................... 11

        2.      Convenience of the witnesses. ................................................................ 12

        3.      Accessibility to records and documents. .................................................. 14

        4.      Location of events. ............................................................................... 14

        5.      State substantive law. ........................................................................... 15

**Cases**

*Ahmed v. Bangash*,
  No. 4:13CV269 HEA, 2014 U.S. Dist. LEXIS 25904 (E.D. Mo. Feb. 28, 2014) ..................... 5

*Aly v. Hanzada for Imp. & Exp. Co., LTD*,
  864 F.3d 844 (8th Cir. 2017) .......................................................................................... 2, 3

*Am. Standard, Inc. v. Bendix Corp.*,
  487 F. Supp. 254 (W.D. Mo. 1980) ..................................................................................... 13

*Austin v. Nestle USA, Inc.*,
  677 F. Supp. 2d 1134 (D. Minn. 2009) ............................................................................... 13

*Barone v. Rich Bros. Interstate Display Fireworks Co.*,
  25 F.3d 610 (8th Cir. 1994) ................................................................................................... 5

*Boilermaker-Blacksmith Nat'l Pension Tr. v. Ironhead Marine, Inc.*,
  No. 5:21-cv-06008-DGK, 2021 U.S. Dist. LEXIS 123152 (W.D. Mo. July 1, 2021) ............. 14

*Calder v. Jones*,
  465 U.S. 783, 788-89, 104 S. Ct. 1482 (1984) ....................................................................... 9

*CBS Interactive, Inc. v. NFL Players Ass'n*,
  259 F.R.D. 398 (D. Minn. 2009) .......................................................................................... 13

*Chromalloy Am. Corp. v. Elyria Foundry Co.*,
  955 S.W.2d 1 (Mo. 1997) ....................................................................................................... 3

*Dakota Indus. v. Dakota Sportswear, Inc.*,
  946 F.2d 1384 (8th Cir. 1991) ............................................................................................... 2

*Downing v. Goldman Phipps, PLLC*,
  764 F.3d 906 (8th Cir. 2014) ...................................................................................... 2, 3, 5, 8

*Epic Sys. Corp. v. Acacia Research Corp.*,
  Civil Action No. 06-255-JJF, 2006 U.S. Dist. LEXIS 84221, at *2 (D. Del. Nov. 16, 2006) .. 8, 12

*Epic Sys. Corp. v. Allcare Health Mgmt. Sys.*,
  NO. 4:02-CV-161-A, 2002 U.S. Dist. LEXIS 17110 (N.D. Tex. Sep. 11, 2002) ............... 8, 12

*etrailer Corp. v. Automatic Equip. Mfg*, Co.,
  No. 4:17CV1309 HEA, 2018 U.S. Dist. LEXIS 52468 (E.D. Mo. Mar. 29, 2018) .................. 5

*Fraserside IP L.L.C. v. Faragalla*,
  No. C11-3032-MWB, 2012 U.S. Dist. LEXIS 17528 (N.D. Iowa Feb. 13, 2012).................... 7

*Fulton v. Chicago, R.I. & P.R. Co.*,
  481 F.2d 326 (8th Cir. 1973) ................................................................................................. 6

*Hartman v. Bago Luma Collections, Inc.*,
  No. SA-03-CA-0465 XR (NN), 2004 U.S. Dist. LEXIS 8264 (W.D. Tex. Apr. 27, 2004) ....... 9

*Healthmate Int'l, LLC v. French*,
    No. 15-00761-CV-W-BP, 2016 U.S. Dist. LEXIS 169166 (W.D. Mo. Mar. 1, 2016) ............. 3

*Houk v. Kimberly-Clark Corp.,*
    613 F. Supp. 923 (W.D. Mo. 1985) ...................................................... 10, 11, 12, 15

*iFLY Holdings LLC v. Indoor Skydiving Germany GMBH*,
    No. 2:14-cv-01080-JRG-RSP, 2015 U.S. Dist. LEXIS 150343 (E.D. Tex. Oct. 2, 2015) ......... 8

*Knickerbocker Toy Co. v. Genie Toys, Inc.*,
    491 F. Supp. 526 (E.D. Mo. 1980) ........................................................................ 15

*Mason v. Mooney Aircraft Corp.*,
    No. 02-3323-CV-S-RED, 2003 U.S. Dist. LEXIS 16977 (W.D. Mo. May 8, 2003) ................ 5

*N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.,*
    975 F. Supp. 2d 993 (E.D. Mo. 2013) .................................................................... 6

*Pecoraro v. Sky Ranch for Boys, Inc.*,
    340 F.3d 558 (8th Cir. 2003) .............................................................................. 2

*Renaissance Pen Co. v. Krone, L.L.C.*,
    No. 4:04 CV 557 DDN, 2006 U.S. Dist. LEXIS 21794 (E.D. Mo. Apr. 11, 2006) .................. 5

*Shanks v. Wexner*,
    No. 02-7671, 2003 U.S. Dist. LEXIS 4014 (E.D. Pa. Mar. 17, 2003) ...................................... 8

*Sitzer v. Nat'l Ass'n of Realtors*,
    No. 4:19-cv-00332-SRB, 2019 U.S. Dist. LEXIS 236447 (W.D. Mo. Aug. 22, 2019) .......... 14

*Stevens v. Redwing*,
    146 F.3d 538 (8th Cir. 1998) .............................................................................. 2

*Tenant Dev. Ass'n v. Dickey's Barbeque Rest.*,
    No. 08-3155-CV-S-RED, 2008 U.S. Dist. LEXIS 136351 (W.D. Mo. July 1, 2008).............. 11

*Terra Int'l v. Miss. Chem. Corp.*,
    119 F.3d 688 (8th Cir. 1997) .............................................................................. 11

*Toomey v. Dahl*,
    63 F. Supp. 3d 982 (D. Minn. 2014)...................................................................... 14

*True Fitness Tech., Inc. v. Samsara Fitness, LLC*,
    No. 4:14CV1930 HEA, 2015 U.S. Dist. LEXIS 78993 (E.D. Mo. June 18, 2015)................... 5

*Whaley v. Esebag*,
    946 F.3d 447 (8th Cir. 2020) ................................................................... 2, 6, 9, 10

**Statutes**

17 U.S.C. §205(c) ....................................................................................... 14

28 U.S.C. §1404........................................................................................... 11

## I.      Introduction.

Dr. Spertus is a cardiologist and author of copyrighted questionnaires used to measure the impact of heart disease on patients' lives. He owns the copyrights to the questionnaires, and licenses them to doctors and hospitals. He also lives and works in this district. Epic is a provider of healthcare software. Epic infringes Dr. Spertus' copyright by reproducing, using, and distributing Dr. Spertus' questionnaire in its healthcare software without a license.

Epic contends that the Complaint should be dismissed or transferred because it does not have sufficient contacts here. But the evidence is to the contrary. Epic has multi-million-dollar contracts with eight healthcare systems in Missouri, and repeatedly enters the state of Missouri to negotiate contracts, implement its software, train tens of thousands of Missouri physicians and staff, and provide ongoing support and technical assistance to Missouri users. Epic's healthcare software also directly infringes Dr. Spertus' copyright in Missouri by using and distributing Dr. Spertus' copyrighted questionnaire. Epic's Missouri actions contribute to the infringement of Dr. Spertus' copyright by Missouri physicians and staff (who further use and distribute the questionnaire through Epic's healthcare software). Thus, Epic's motion should be denied.

In its motion, Epic does not dispute that its healthcare software copies and distributes Dr. Spertus' questionnaire. Epic instead contends that it has a license, and that Dr. Spertus has "knowledge of Epic's copyright license." Mot. at 1, 3. This is simply false. Dr. Spertus has never entered a license agreement with Epic. Spertus Decl., ¶10. And, when Dr. Spertus told Epic that it was infringing his copyright, Epic refused to pay for a license. *Id.* Epic has never shown Dr. Spertus any purported license (presumably because Epic's use is not licensed). *Id.*

## II.     This Court has personal jurisdiction over Epic.

"To survive a motion to dismiss for lack of personal jurisdiction a plaintiff need only

make a prima facie showing of personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). For specific personal jurisdiction, "jurisdiction must be authorized by Missouri's long arm statute and the defendant must have sufficient minimum contacts with the forum state to satisfy due process." *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 911 (8th Cir. 2014). "[B]ecause the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," this court may simply consider "whether the assertion of personal jurisdiction would violate due process." *Aly v. Hanzada for Imp. & Exp. Co., LTD*, 864 F.3d 844, 849 (8th Cir. 2017) (internal quotation marks omitted). [1] In considering personal jurisdiction, the court may consider facts outside of the pleadings. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998). The "court must look at the facts in the light most favorable to the nonmoving party." *Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

### A. Epic has sufficient minimum contacts to satisfy due process.

In analyzing specific jurisdiction, courts "consider whether the defendant has "purposely directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). This court uses a five-factor test: "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties. We give

---

[1]     Epic's conduct also squarely falls within the enumerated list of Missouri's long-arm statute, which includes "any cause of action arising from" "[t]he transaction of any business," or the "commission of a tortious act" within the state. Mo. Rev. Stat. § 506.500. The Complaint alleges that Epic does business within the state of Missouri, and has committed and continues to commit acts of copyright infringement in this district. Compl. ¶¶7, 9; 38-45. Because the lawsuit arises from Epic's transaction of business and commission of tortious acts within this state, jurisdiction is also proper under Missouri's long-arm statute. Epic does not challenge jurisdiction under Missouri's long-arm statute.

significant weight to the first three factors." *Healthmate Int'l, LLC v. French*, No. 15-00761-CV-W-BP, 2016 U.S. Dist. LEXIS 169166, at *8 (W.D. Mo. Mar. 1, 2016).

Each of these factors support exercising personal jurisdiction over Epic.

### 1. The nature and quality of the contacts.

Where a defendant "voluntarily entered a state multiple times seeking [its] own financial gain," the activity, standing alone, is enough to support the exercise of personal jurisdiction. *Downing,* 764 F.3d at 913; *Aly*, 864 F.3d at 849 ("forming a contract to establish a business with a Missouri corporation" was a substantial contact); *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 5 (Mo. 1997) ("Foster's [two] trips to Missouri were purposeful visits, made with the intention of initiating or furthering the purchase of the foundry").

Here, Epic repeatedly entered Missouri seeking its own financial gain. Epic has secured multi-year contracts to provide its software to these eight healthcare systems. Mot. at 3. These healthcare systems comprise dozens of hospitals in Missouri, and Epic earns tens of millions of dollars through these lucrative contracts. For example, Missouri-based Saint Francis Healthcare's investment with Epic was $43 million. Exh. 1. To win, implement, and service these contracts, Epic repeatedly entered (and continues to enter) the state of Missouri. Exh. 2.

Epic's conduct with BJC Healthcare & Washington University Physicians ("BJC") in Missouri illustrates the extent to which Epic repeatedly enters Missouri for its own financial gain. To win the contract in the first place, Epic undertook an extensive process in Missouri that included months of "surveys, demonstrations, and site visits." Exh. 2. Once the contract was signed, Epic and BJC embarked on a three-year project to implement Epic's software at BJC's Missouri facilities. *Id.* As part of this implementation, large numbers of Epic employees repeatedly visited the BJC campus in Missouri. Exh. 3.

For example, Epic conducted a massive "Go-live event" in Missouri, where Epic trained "over 3,200 physician and 15,000 staff." *Id.* During that time, Epic's presence on BJC's Missouri campus was pervasive: "If you were anywhere on the BJC campus …you couldn't help but notice the multitude of people wearing shirts emblazoned with the word Epic1. They were everywhere!" *Id.* "The Epic project team and leadership provided 24/7 support…Assisting end users with on-site issues were more than 3,500 At-the-Elbow staff and Super-Users." *Id*.

Epic's website confirms that Epic employees regularly travel to customer sites (such as those in Missouri) to train users on the Epic software and provide support. Epic hires trainers, who "work with new customers and staff through both <u>in-person</u> and virtual training as they learn and interact with our software." Exh. 4 (emphasis added). Epic also hires Client System Engineers, who work on site at "Epic's <u>customer sites</u> to integrate Epic's software." Exhs. 5, 6 (Epic's "implementation team works <u>side by side</u> with you to make sure the project meets your goals."). According to Epic, the constant contact does not end after implementation. Epic leads "certification courses, customized peer-to-peer training, and resources for go-live and beyond." Exh. 6. Epic also provides "Ongoing Services," "Technical Services," and "Continuous Improvement" after implementation, and provides constant contact. *Id.* ("After you are live, your BFF stays close to you to make sure you are happy users of the software…You get designated 24/7 support, system monitoring, and regular checkups."). *Id*.

Epic's practice of repeatedly entering Missouri for financial gain is longstanding and ongoing. Epic began working with Missouri hospitals at least as far back as 2006, when it began working with the Mercy Health System. Exh. 7. Today, Epic continues to serve 8 Missouri organizations. Mot. at 3. During its 16-year history serving Missouri hospitals, Epic has likely made hundreds of millions of dollars or more through its contracts with Missouri hospitals. Its

repeated visits to Missouri for its own financial gain are sufficient to support a finding of jurisdiction. *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 913 (8th Cir. 2014).

Citing *Ahmed v. Bangash*, No. 4:13-CV-269 HEA, 2014 WL 805869, at *5 (E.D. Mo. Feb. 28, 2014), Epic contends that this factor is not met because Epic has not "maintained a business, property or offices in Missouri." Mot. at 11. Epic's reliance on *Ahmen* is misplaced. *Ahmen* held that the nature and quality of contacts was insufficient where "[i]t is undisputed that Defendant has never maintained business, property, offices, <u>employees</u>, or agents in Missouri, <u>and none of Defendant's agents or employees have ever traveled to Missouri for business</u>." *Ahmed v. Bangash*, No. 4:13CV269 HEA, 2014 U.S. Dist. LEXIS 25904, at *11-12 (E.D. Mo. Feb. 28, 2014) (emphasis added). In contrast, Epic concedes that it has employees in Missouri. Mot. at 2. And Epic repeatedly sends large numbers of its employees to Missouri to negotiate, implement, and provide assistance to Missouri healthcare systems using Epic's software. Moreover, Epic's argument that it can avoid personal jurisdiction because it does not have a physical location in Missouri has been repeatedly rejected. *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir. 1994); *Mason v. Mooney Aircraft Corp.*, No. 02-3323-CV-S-RED, 2003 U.S. Dist. LEXIS 16977, at *20-22 (W.D. Mo. May 8, 2003).

Epic's reliance on a string of website cases is also misplaced. *See* Mot. at 7-9. Each of the cases cited by Epic considered whether internet contacts through a website accessible in Missouri was sufficient to confer specific jurisdiction. *Renaissance Pen Co. v. Krone, L.L.C.*, No. 4:04 CV 557 DDN, 2006 U.S. Dist. LEXIS 21794, at *13-14 (E.D. Mo. Apr. 11, 2006); *True Fitness Tech., Inc. v. Samsara Fitness, LLC*, No. 4:14CV1930 HEA, 2015 U.S. Dist. LEXIS 78993, at *9 (E.D. Mo. June 18, 2015) (considering "the sufficiency of internet contacts under a specific jurisdiction analysis"); *etrailer Corp. v. Automatic Equip. Mfg*, Co., No. 4:17CV1309 HEA, 2018 U.S. Dist. LEXIS 52468, at *2 (E.D. Mo. Mar. 29, 2018); *N.C.C. Motorsports, Inc.*

*v. K-VA-T Food Stores, Inc.,* 975 F. Supp. 2d 993, 1003-05 (E.D. Mo. 2013) ("Defendant's Internet contacts with the forum are insufficient"). But Epic's activity is not limited a passive website that is accessible in Missouri. Instead, Epic specifically targeted Missouri hospitals, and intentionally and repeatedly sent its employees to Missouri to negotiate multi-million-dollar contracts, implement Epic's software, train Missouri physicians and staff, and provide ongoing support to Missouri hospitals that use Epic's software. This confers personal jurisdiction.

### 2. The quantity of the contacts.

A single contact can be enough to confer specific jurisdiction. *Fulton v. Chicago, R.I. & P.R. Co.*, 481 F.2d 326, 335 (8th Cir. 1973). Here, Epic's contacts with Missouri are numerous. As discussed above, between 2006 to the present, Epic repeatedly entered the state of Missouri to (1) negotiate multi-million-dollar contracts with Missouri hospitals, (2) implement the Epic system at Missouri hospitals, (3) train Missouri physicians and staff on use of the Epic system, and (4) provide ongoing support to Missouri hospitals that use the Epic system. At times, Epic's presence on Missouri hospital campuses was unavoidable: "If you were anywhere on the BJC campus …you couldn't help but notice the multitude of people wearing shirts emblazoned with the word Epic1. They were everywhere!" Exh. 3. At just one Missouri training session, Epic trained "over 3,200 physician and 15,000 staff." *Id.* Epic's Missouri contacts likely number in the tens of thousands or more. This supports a finding of specific jurisdiction.

### 3. The relation of the cause of action to the contacts.

"In analyzing specific jurisdiction, [courts] consider whether the defendant has 'purposely directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). Here, this factor supports a finding of jurisdiction because Epic's Missouri activities

infringed and contributed to the infringement of Dr. Spertus' copyright. Thus, Dr. Spertus' copyright infringement claims asserted in lawsuit arise directly out of Epic's Missouri activities.

Epic infringes Dr. Spertus' copyright by copying, using, and distributing Dr. Spertus' questionnaire in its software to healthcare systems in Missouri (and elsewhere). Compl. ¶38-39. Epic's Missouri activities—distributing its infringing software to Missouri, travelling to Missouri to sell and implement its infringing software, and instructing Missouri doctors and staff to use the infringing software—are what give rise to Dr. Spertus' claims, because these acts constitute copyright infringement and contributory copyright infringement. *See Fraserside IP L.L.C. v. Faragalla*, No. C11-3032-MWB, 2012 U.S. Dist. LEXIS 17528, at *17 (N.D. Iowa Feb. 13, 2012) (Defendants are "contributorily liable for copyright infringement if they knowingly induce, cause, or materially contribute to the infringing conduct of another"). For example, by implementing its healthcare software in Missouri, Epic induces physicians and staff in Missouri hospitals to use and distribute Dr. Spertus' copyrighted questionnaire, infringing Dr. Spertus' copyright. Thus, Epic's contacts and conduct within Missouri are tied to Dr. Spertus' injuries for copyright infringement.

Epic contends that this factor is not met because Epic's activity was not "expressly aimed at Missouri" and its software "is used by groups, hospitals, and integrated healthcare organizations around the country." Mot. at 8. This argument fails at two levels.

First, Epic's activity was expressly aimed at Missouri. Epic repeatedly and specifically targeted Missouri healthcare systems as clients. It repeatedly enters Missouri to negotiate multi-million-dollar contracts, implement its software in Missouri, and service its Missouri clients. Its Missouri contacts number in the tens of thousands. Epic also knowingly infringed Dr. Spertus' copyright in Missouri, knowing that the harm would be felt by Dr. Spertus in Missouri.

Second, that Epic also conducts this activity in other states has no bearing on whether this Court has specific jurisdiction over Epic based on its Missouri contacts. There is no limit on the number of states that can have personal jurisdiction over a defendant. Nor does jurisdiction require a comparison of a defendant's acts in one state as compared to others. *See, e.g. iFLY Holdings LLC v. Indoor Skydiving Germany GMBH*, No. 2:14-cv-01080-JRG-RSP, 2015 U.S. Dist. LEXIS 150343, at *18 n.8 (E.D. Tex. Oct. 2, 2015) ("ISG may well be subject to personal jurisdiction in more than one State."); *Shanks v. Wexner*, No. 02-7671, 2003 U.S. Dist. LEXIS 4014, at *13 (E.D. Pa. Mar. 17, 2003). In fact, it is common for national companies with billions of dollars in yearly revenue like Epic to be subject to personal jurisdiction in every state.

Epic next argues that "extraterritorial acts having consequences in Missouri" cannot confer jurisdiction. Mot. at 9. But Plaintiff does not rely on "extraterritorial" acts—Plaintiff instead relies on Epic's extensive actions <u>within</u> the state of Missouri, such as its negotiation of, implementation of, and servicing of multi-million-dollar contracts in the state of Missouri.

### 4. The interest of the forum state in providing a forum for its residents.

Because Dr. Spertus is a resident of Missouri, Missouri has a clear interest in providing a forum for Dr. Spertus. *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014).

### 5. The convenience of the parties.

This factor also weighs in favor of exercising jurisdiction. Dr. Spertus is a resident of this district, and the district is convenient for Dr. Spertus. Epic is a large corporation that has clients in Missouri, and has litigated cases nationwide. *See Epic Sys. Corp. v. Acacia Research Corp.*, Civil Action No. 06-255-JJF, 2006 U.S. Dist. LEXIS 84221, at *2 (D. Del. Nov. 16, 2006); *Epic Sys. Corp. v. Allcare Health Mgmt. Sys.*, NO. 4:02-CV-161-A, 2002 U.S. Dist. LEXIS 17110, at *1 (N.D. Tex. Sep. 11, 2002). Thus, proceeding in Missouri will not be inconvenient for Epic.

* * *

Each of the five factors support a finding of personal jurisdiction. Thus, Epic's motion to dismiss for lack of jurisdiction should be denied.

**B.      Jurisdiction is also proper under the *Calder* effects test.**

Where, as here, "plaintiffs' claims sound in intentional tort, [the court may] evaluate specific jurisdiction using the 'effects test' set forth in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)."  *Whaley v. Esebag,* 946 F.3d 447, 451 (8th Cir. 2020).  "In *Calder*, personal jurisdiction was established where the nonresident defendant committed a tort and the associated harm was felt primarily within the forum state."  *Id.*  The *Calder* effects test has since been narrowed to require examination of two additional "aspects of the defendant's relationship with the forum." *Id.* "First, the relationship must arise out of contacts that the defendant himself created with the forum state. Second, [the court looks] to the defendant's contacts and conduct with the forum state itself, not the defendant's contacts with persons who reside there."  *Id.*  (internal quotation marks and citation omitted).

Here, Dr. Spertus can easily satisfy the *Calder* effects test.  Copyright infringement "is an intentional tort." *Hartman v. Bago Luma Collections, Inc.*, No. SA-03-CA-0465 XR (NN), 2004 U.S. Dist. LEXIS 8264, at *13 n.27 (W.D. Tex. Apr. 27, 2004).

Because Dr. Spertus lives and works in Missouri, and has throughout the entire period of Epic's infringement, the harm that he has felt from Epic's copyright infringement is in Missouri. *Calder v. Jones*, 465 U.S. 783, 788-89, 104 S. Ct. 1482, 1486-87 (1984) (Because the plaintiff was in California, "[t]he brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California.").

Epic's relationship with the state of Missouri arises out of contacts that Epic itself created with Missouri. Epic has contacts with Missouri due to its own business activity in Missouri (e.g. negotiating, implementing, and servicing long-term, multi-million dollar business contracts with Missouri healthcare systems), not Dr. Spertus' activity.

Finally, Epic has extensive contacts with Missouri itself, not just with Dr. Spertus. Indeed, Epic has been physically present in the jurisdiction. *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) ("Although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State — either by the defendant in person or through an agent, goods, mail, or some other means — is certainly a relevant contact."). Epic admits that it has employees in the state of Missouri, and the evidence further indicates that Epic's employees repeatedly entered the state to negotiate, implement, and service these contracts. Thus, under the *Calder* effects test, exercising jurisdiction over Epic is proper.

### III.    Epic's motion to transfer should be denied.

In the alternative, Epic asks the Court to transfer this case to the Western District of Wisconsin. Epic's primary justification is that Epic is headquartered in Wisconsin, and it apparently would prefer to litigate in its home state. Mot. at 15-16. But a transfer that would "merely shift the inconvenience from one party to another should not be granted." *Houk v. Kimberly-Clark Corp.,* 613 F. Supp. 923, 927-28 (W.D. Mo. 1985). Instead, "plaintiff's choice of a proper forum is entitled to great weight, and will not be lightly disturbed… especially where the plaintiff is a resident of the judicial district in which the suit is brought." *Id.* at 927. And here, where Plaintiff is an individual while Defendant is a multi-billion-dollar company, shifting the inconvenience from Defendant to Plaintiff would be particularly unfair.

As demonstrated below, Epic's motion must be denied because it fails to meet its burden of making "a clear showing that the balance of interests weighs… strongly" in its favor. *Id.*

### A.   Epic does not meet its burden of showing that Wisconsin is clearly more convenient.

For a motion to transfer, the Court considers the "convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §1404. Courts consider "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *Terra Int'l v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997). "Where the balance of relevant factors is equal or only slightly in favor of the movant, the motion to transfer should be denied." *Houk*, 613 F. Supp. at 927.

### 1.   Convenience of the parties.

"[T]he plaintiff's choice of a proper forum is entitled to great weight, and will not be lightly disturbed especially where the plaintiff is a resident of the judicial district in which the suit is brought." *Tenant Dev. Ass'n v. Dickey's Barbeque Rest.*, No. 08-3155-CV-S-RED, 2008 U.S. Dist. LEXIS 136351, at *8 (W.D. Mo. July 1, 2008).

Dr. Spertus is a resident of Missouri, and has lived in this district for 26 years. Spertus Decl., ¶3. He works in this district as a physician, and maintains an active clinical practice. Spertus Decl., ¶4. Because Dr. Spertus needs to be accessible to his patients here, it would be a significant inconvenience for him to litigate this case in Wisconsin. *Id.*

Epic is a large corporation that has clients in 49 states, including 8 healthcare organizations in the state of Missouri. Mot. at 1, 9; Bjorklund Decl., ¶13. Epic employees regularly travel to Missouri to negotiate, implement, and service its multi-million-dollar contracts in this state. *See supra.* Further, Epic has deliberately pursued cases in Delaware and Texas (further from Wisconsin than Missouri). *See Epic Sys. Corp. v. Acacia Research Corp.*,

No. 06-255-JJF, 2006 U.S. Dist. LEXIS 84221 (D. Del. Nov. 16, 2006); *Epic Sys. Corp. v.*

*Allcare Health Mgmt. Sys.*, NO. 4:02-CV-161-A, 2002 U.S. Dist. LEXIS 17110 (N.D. Tex. Sep.

11, 2002). Epic has demonstrated that it can send employees to Missouri, and litigate outside of

Wisconsin. Thus, litigating in Missouri is not unduly inconvenient for Epic.

In addition, Epic has significantly greater financial ability than Dr. Spertus, and can more

easily afford to litigate in a foreign forum. *Houk*, 613 F. Supp. at 929-30 ("the parties' relative

financial ability to undertake a trial in any particular forum is a relevant consideration.").

Thus, this factor weighs against transfer.

### 2. Convenience of the witnesses.

"The convenience of witnesses is said to be a primary, if not the most important, factor."

*Houk*, 613 F. Supp. at 928. Plaintiff has identified four non-party witnesses in Missouri:

- Two doctors in this district who conducted research relating to the copyrighted questionnaire, and have knowledge regarding Dr. Spertus' authorship and the use of questionnaire in measuring the impact of coronary disease. Bui Decl., ¶¶12-13; Exhs. 8-9.

- A doctor in this district who corresponded with Epic about Dr. Spertus' questionnaires, and has knowledge related to Epic's interest in and/or use of Dr. Spertus copyrighted questionnaires. Bui Decl., ¶14; Exh. 10.

- A copyright lawyer in Missouri who assisted Dr. Spertus in registering his copyrights, and has knowledge regarding Dr. Spertus' copyright ownership. Bui Decl., ¶15; Exh. 11.

Plaintiff also expects that individuals at the following Missouri institutions will have

knowledge of Epic's direct and contributory infringement: BJC HealthCare & Washington

University Physicians; Mercy Community Connect; Mercy Health; Phelps Health, Saint Francis

Healthcare System, Saint Luke's Health System, and SSM Health. Each of these institutions

uses Epic's infringing healthcare software. Exh. 12. Thus, individuals at each of those

institutions will have knowledge regarding Epic's infringing use of Dr. Spertus' copyrighted questionnaire. [2]

Epic argues that this factor weighs in favor of transfer because its employees and the "vast majority of witnesses" are in Wisconsin. Mot. at 15-16. This fails for two reasons.

First, "[p]arty witnesses and witnesses who are employees of a party are… not a paramount concern" in the transfer analysis. *CBS Interactive, Inc. v. NFL Players Ass'n*, 259 F.R.D. 398, 410 (D. Minn. 2009). "[W]itnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *Austin v. Nestle USA, Inc*., 677 F. Supp. 2d 1134, 1138 (D. Minn. 2009). This is especially true when a party has demonstrated its willingness to send its employees into that forum voluntarily to pursue business there.

Second, Epic's witnesses should be disregarded because Epic fails to specifically identify any of the Wisconsin witnesses it supposedly intends to call. "[I]f the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied." *Am. Standard, Inc. v. Bendix Corp*., 487 F. Supp. 254, 262 (W.D. Mo. 1980). Epic fails to name a single Wisconsin witness, and instead makes the conclusory assertion that the "vast majority of the remaining witnesses…are located in or around Madison, Wisconsin." Mot. at 15-16. Because Epic fails to specifically identify these witnesses, these unnamed witnesses must be disregarded.

The only witnesses that Epic attempts to identify with any specificity are two witnesses that reside out of state. Mot. at 2-3 (identifying the Copyright Clearance Center and Wolters

---

[2]     Plaintiff does not yet know the specific identities of the witnesses at these institutions, but intends to serve discovery directed at this particular topic when discovery opens.

Kluwer).  Because these non-party witnesses are out of the subpoena power of both the Missouri and Wisconsin courts, they are neutral to this analysis.

Because there are at least four identified non-party witnesses in Missouri, and none in Wisconsin, this factor weighs against transfer.

### 3.  Accessibility to records and documents.

Dr. Spertus' documents, such as the original questionnaires and the copyright certificates for the questionnaires, are located in this district.  Spertus Decl., ¶7.  The relevant documents can be scanned and produced electronically, however, and this factor is neutral.

### 4.  Location of events.

This factor considers "the location of the events alleged in the complaint."  *Boilermaker-Blacksmith Nat'l Pension Tr. v. Ironhead Marine, Inc*., No. 5:21-cv-06008-DGK, 2021 U.S. Dist. LEXIS 123152, at *7 (W.D. Mo. July 1, 2021).  This may include the place of the alleged unlawful conduct, the place where the effect on plaintiff was felt, and places from which the parties communicated.  *See, e.g. Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB, 2019 U.S. Dist. LEXIS 236447, at *14 (W.D. Mo. Aug. 22, 2019) (considering "[t]he location where the alleged unlawful conduct occurred, and more importantly, where the effect on Plaintiffs was felt…"); *Toomey v. Dahl*, 63 F. Supp. 3d 982, 994 (D. Minn. 2014) (considering "the alleged conduct in Alaska was directed at Plaintiff in Minnesota.").

Epic asserts that this factor supports transfer because "[n]one of the purported conduct related to alleged copyright infringement occurred in Missouri."  Mot. at 16.  Epic ignores "where the effect on Plaintiffs was felt."  *Sitzer*, 2019 U.S. Dist. LEXIS 236447, at *14.  Here, Dr. Spertus felt the effects of Epic's infringements in Missouri, where he resides.  Further, Epic knew that the effects would be felt in Missouri.  Epic had constructive notice of Dr. Spertus' copyright since at least 2005, and actual notice in 2019.  17 U.S.C. §205(c) ("Recordation of a

document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document…"); *Knickerbocker Toy Co. v. Genie Toys, Inc*., 491 F. Supp. 526, 529 (E.D. Mo. 1980); Compl. ¶¶40-42.  Yet, Epic continued to intentionally infringe Dr. Spertus' copyright, knowing that the effects would be felt in Missouri, where he resides.  Compl. ¶9.

In addition, as described above, Epic repeatedly entered the state of Missouri to implement and train Missouri users on Epic's healthcare software, which contained Dr. Spertus' copyrighted questionnaire.  Missouri users (e.g., physicians and staff), who accessed Dr. Spertus' questionnaire through Epic's healthcare software, also infringed Dr. Spertus' copyright in Missouri.  Dr. Spertus communicated with Epic about its copyright infringement from Missouri, and sent Epic multiple copyright violation notices from Missouri.  Compl. ¶¶40, 42.  He also attempted to negotiate a license with Epic for its use of his copyrighted questionnaire from Missouri.  *Id.*, ¶41.  Thus, there is substantial Missouri activity.

Because there is relevant activity in Missouri and in Wisconsin, this factor is neutral.

## 5. State substantive law.

This factor is neutral, because copyright claims are governed by federal law.

\* \* \*

As the moving party, Epic has the burden "to make a clear showing that the balance of interests weighs… strongly" in its favor.  *Houk*, 613 F. Supp. at 927.  Each of the factors weighs against transfer, or is neutral.  In addition, the most important factor, the convenience of non-party witnesses, weighs against transfer.  Thus, the motion to transfer should be denied.  *Id.* at 927 ("Where the balance of relevant factors is equal or only slightly in favor of the movant, the motion to transfer should be denied.").

Dated: May 13, 2022                           Respectfully submitted by:


**DOVEL & LUNER, LLP**

/s/ *Joanne Bui*＿＿＿＿＿＿＿＿＿＿
Joanne Bui (admitted *pro hac vice*)
CA State Bar No. 340378
Christin Cho (admitted *pro hac vice*)
CA State Bar No. 238173
Simon Franzini (admitted *pro hac vice*)
CA State Bar No. 287631
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
christin@dovel.com
joey@dovel.com
simon@dovel.com

and

**KUTAK ROCK LLP**

Eric S. Johnson MO # 53525
Destiny L. Bounds MO # 69530
2300 Main Street, Ste. 800
Kansas City, MO 64108
P: (816) 960-0090
F: (816) 960-0041
eric.johnson@kutakrock.com
destiny.bounds@kutakrock.com


*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2022, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system. The CM/ECF system will send notification of the filing to all counsel of record.

/s/ *Joanne Bui*
Joanne Bui