IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOHN A. SPERTUS, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00183-DGK |
| | ) |
| EPIC SYSTEMS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, GRANTING MOTION TO TRANSFER CASE TO THE WESTERN DISTRICT OF WISCONSIN, AND DENYING AS MOOT MOTION TO STAY**

Plaintiff John A. Spertus, M.D., owns the copyright to a questionnaire used by health care professionals to measure the impact of heart disease on a patient's life. He alleges that Defendant Epic System's Corporation, a health records software provider, included an unlicensed copy of one of his questionnaires on its health records software, thereby distributing unlicensed copies of the questionnaire to its clients. Defendant is a Wisconsin corporation, and the vast majority of its 9,562-person workforce works from its main campus in Verona, Wisconsin. Now before the Court is Defendant's motion to dismiss the complaint for lack of personal jurisdiction, ECF No. 12. *See* Fed. R. Civ. P. 12(b)(2). Defendant moves in the alternative to transfer this case to the Western District of Wisconsin. *See* 28 U.S.C. § 1404(a). Defendant also moves to stay discovery in this case pending the outcome this Order, ECF No. 21.

For the reasons stated below, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED, its motion to transfer this case to the Western District of Wisconsin is GRANTED, and its motion to stay discovery is DENIED AS MOOT.

## Standard

"Personal jurisdiction over a defendant represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v. EBM Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (internal quotation marks omitted). The plaintiff "bear[s] the burden of establishing a prima facie showing of jurisdiction," and the Court views the facts in the light most favorable to the plaintiff. *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021). The evidentiary showing required at this stage is minimal. *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022). "A prima facie showing 'is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Id.* (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011)). In addition, the Court "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits." *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

Regarding Defendant's motion to transfer, the statute governing transfer of venue, 28 U.S.C. § 1404(a), provides in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A change of venue is within the discretion of the district court, and should not be freely granted. Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). A plaintiff's choice to litigate in his home state is entitled to deference, and the party seeking transfer under section 1404(a) "bears the burden of proving that transfer is warranted." In re Apple, Inc., 602 F.3d 909, 913 (8th Cir. 2010).

**Background**

Plaintiff John A. Spertus, M.D., is a cardiologist who maintains an active clinical practice in Kansas, City, Missouri. In addition to his medical practice, Plaintiff is also the author of the Seattle Angina Questionnaire, a questionnaire used by medical professionals to measure the impact of heart disease on a patient's life. Plaintiff authored the first version of Seattle Angina Questionnaire in 1992 and a second version in 1994. The second version changed the phrasing of certain question and answer elements so that patients could more easily answer the questions and so that the questionnaire could be more easily translated into other languages. Both the first and second versions of the Seattle Angina Questionnaire contain nineteen questions, and each question has five or six scaled answer options. Plaintiff registered a copyright for both versions of the Seattle Angina Questionnaire in 2005. In 2014, Plaintiff developed a shortened version of the Seattle Angina Questionnaire. This short-form version—known as the SAQ-7—contains seven question and answer elements taken verbatim from the second version of the Seattle Angina Questionnaire.

Plaintiff conducted research—both on his own and in conjunction with other doctors and scientists—to ensure that each iteration of the Seattle Angina Questionnaire is "scientifically valid, reproducible, and responsive to clinically-important changes." Spertus Decl. ¶ 6, ECF No. 16-1. In 2014, Plaintiff—along with some of these other researchers—published the research regarding the SAQ-7 in an article titled *Development and Validation of a Short Version of the Seattle Angina Questionnaire* ("Article"), in the American Heart Association Journal *Circulation: Cardiovascular Quality and Outcomes*. Def. Ex. A, ECF No. 13-3; Chan et al., *Development and Validation of a Short Version of the Seattle Angina Questionnaire*, 7 Circulation: Cardiovascular

3

Quality and Outcomes 640 (2014). The Article contained a copy of the SAQ-7. Def. Ex. A at 6; Chan et al., *supra* at 644.

Plaintiff licenses both the second Seattle Angina Questionnaire—known as the SAQ-19—and the SAQ-7 to doctors, clinics, hospitals, researchers, and other medical industry professionals.

Defendant Epic Systems Corporation is a healthcare information technology company that develops electronic health records software and licenses it to large healthcare organizations. Bjorklund Aff. ¶ 13, ECF No. 13-1. Defendant is incorporated in Wisconsin. Its principal place of business is its main campus in Verona, Wisconsin, where 9,497 of its 9,562 employees work. *Id.* ¶¶ 3, 5. This campus and a satellite in Rochester, Minnesota are Defendant's only brick and mortar locations in the United States, and Defendant does not maintain a registered agent in Missouri. *Id.* ¶¶ 6, 10. Defendant's designs, develops, programs, and tests its software at its campus in Verona and its satellite in Rochester. All of Defendant's employees involved in this process, and all documents relating to this process are in Wisconsin or Minnesota. *Id.* ¶ 11.

Defendant has approximately 550 clients—including health systems, hospitals, and payers—and maintains clients in all 50 states. *Id.* ¶ 13. Eight of Defendant's clients are headquartered in Missouri. *Id.*; *See also* Pl. Ex. 12 at 4, ECF No. 16-14 (listing Defendant's Missouri clients); Pl. Ex. 7, ECF No. 16-9 (a copy of Sara Heath, *10 Biggest Epic EHR Hospital Implementations in United States*, EHR Intelligence, (November 4, 2015), https://ehrintelligence.com/news/10-biggest-epic-ehr-implementations-in-united-states) (including SSM Health and Mercy Health System—both headquartered in Missouri—on a list of Defendant's 10 largest clients in the United States).

Implementing Defendant's software in one of its client healthcare organizations often requires significant effort. For example, Defendant implemented its health records software at

BJC Healthcare and Washington University School of Medicine ("BJC-WUSTL") in St. Louis, Missouri in June of 2018. Pl. Ex. 3 at 2, ECF No. 16-5 (a copy of Cynthia Ritter, *Long-planned Epic System Implemented - Teaching Old Dogs New Tricks*, Washington University School of Medicine in St. Louis, (August 10, 2018), https://nephrology.wustl.edu/long-planned-epic-system-implemented-teaching-old-dogs-new-tricks/). When Defendant's software went live in 2018, Defendant trained 3,200 physicians and 15,000 staff in how to use the program. *Id.* This also required Defendant to give extensive training to 3,500 "At-the-Elbow" staff and "Super-Users," BJC-WUSTL doctors and staff "with extensive knowledge of [the software]" who then assisted other BJC-WUSTL doctors and staff. *Id.* Defendant's software "going live" at BJC-WUSTL was the culmination of a four-year process. *Id.* It took Defendant a full year to land BJC-WUSTL as a client and then negotiate a contract, a process which "included surveys, demonstrations, and site visits." Pl. Ex. 2 at 2, ECF No. 16-4 (a copy of Children's Hospital St. Louis, *Work Advancing on Three-Year Epic Electronic Medical Record Implementation*, https://www.stlouischildrens.org/health-resources/pulse/work-advancing-three-year-epic-electronic-medical-record-implementation (last visited September 14, 2022)). Defendant then worked for the next three years to implement the software at BJC-WUSTL, including facilitating the establishment of "Epic operation groups" to "guide the development of the new electronic health record system across various clinical and operational areas." *Id.* Defendant employs individuals in a number of positions who implement the software in client organizations. For example, "Trainers" "lead training sessions for physicians, nurses, and other healthcare users prior to their Epic Go-Live," "Project Managers" "work side by side with [Defendant's] customers to install [Defendant's] software," and "Client Systems Engineers" "work with the Windows System and Network Administration Staff at [Defendant's] customer sites to integrate [Defendant's]

software into their existing environments." Pl. Ex. 5 at 2–3, ECF No. 16-7. Once Defendant and its client organizations have implemented the software, Defendant maintains the software by providing "technical services," "ongoing services," and "continuous improvement." Pl. Ex. 6, ECF No. 16-8.

Plaintiff alleges Defendant infringed on his copyright by making an unlicensed copy of the SAQ-7 available on its health records software—meaning that Defendant's client doctors may download an unlicensed copy of the SAQ-7 for a patient, fill in and score the form, and then save a copy to the patient's file. In addition, Plaintiff alleges that patients are able to view and download an unlicensed copy via Defendant's software. Plaintiff further alleges that he discovered the infringement in 2019 and sent Defendant a violation notice. Plaintiff and Defendant attempted to negotiate a license, but these negotiations failed and Defendant continued to include the SAQ-7 on its software.

Defendant states that, in June of 2016, it contacted Wolters Kluwer, the Article's publisher, about obtaining a license to the Article. Bader Decl. ¶ 4–5. Defendant also states that, on July 22, 2016, it obtained a perpetual license from Wolters Kluwer to reproduce the SAQ-7 figure contained in the Article. *Id.* ¶ 6. All of Defendants employees that are involved in licensing third-party content to be included on its software are located in Verona, Wisconsin. *Id.* ¶ 3. Defendant also represents that any of its employees who worked on licensing the SAQ-7 from Wolters Kluwer and who still work for Defendant—and any documents regarding its purported license—are located in Verona. *Id.* ¶ 8.

**Discussion**

The Fifth Amendment limits the personal jurisdiction of federal district courts, authorizing them to exercise either general or specific personal jurisdiction over a defendant. *See Bristol-*

*Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1779–80 (2017). "Critical to due process analysis is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Bros. & Sisters in Christ*, 42 F.4th 948, 951 (8th Cir. 2022) (internal quotation marks omitted). Thus, general jurisdiction for a corporate defendant arises in the state in which "the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "A court with general jurisdiction [over a defendant] may hear *any* claim against that defendant. . . ." *Bristol-Myers Squibb*, 137 S. Ct. at 1780. By contrast, a court may exercise specific jurisdiction over defendants "'less intimately connected with a State, but only as to a narrower class of claims,' namely those that 'arise out of or relate to the defendant's contacts with the forum.'" *Bros. & Sisters in Christ*, 42 F.4th at 952 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)).

Plaintiff argues only that Defendant is subject to this Court's specific jurisdiction. For the reasons stated below, the Court concludes that it may exercise its specific jurisdiction over Defendant. However, given the convenience of the parties and the witnesses—as well as the fact that the relevant conduct occurred in the Western District of Wisconsin—the Court concludes that transfer is appropriate in this case.

**I.     The Court has personal jurisdiction over Defendant.**

"A district court may exercise specific jurisdiction over an out-of-state defendant only to the extent permitted by the states' long-arm statute and the Constitution's due process clause." *Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019). The parties agree that Defendant is subject to Missouri's long-arm statute, Mo. Rev. Stat. § 506.500, and the Court therefore turns to whether the exercise of personal jurisdiction over Defendant comports

7

with due process. This requires the Court to determine whether Defendant has certain "minimum contacts" with Missouri and whether Plaintiff's claims arise out of or relate to Defendant's contacts with Missouri. *See Bros. & Sisters in Christ*, 42 F.4th at 952 (quoting *Kaliannan*, 2 F.4th at 733). In making this determination, the Court considers Defendant's contacts with Missouri itself, not persons who reside there. *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

> The defendant's connection with the forum state must be more than random, fortuitous, or attenuated, and must permit the defendant to reasonably anticipate being haled into court there. The contacts therefore have to be based on some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021) (quotations omitted).

The Court applies a five-factor test to determine the sufficiency of Defendant's contacts with Missouri, considering: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties." *Id.* (quoting *Federated Mut.*, 928 F.3d 718). The first three factors are of "primary importance," while "the fourth and fifth factors carry less weight and are not dispositive." *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020) (quotations omitted).

In addition, because Plaintiff's copyright infringement claim sounds in intentional tort, the Court also uses the test set out in *Calder v. Jones*, 465 U.S. 783 (1984), "as an additional factor to consider when evaluating [Defendant's] relevant contacts with the forum state." *Bros. & Sisters in Christ*, 42 F.4th at 954 (quoting *Johnson v. Arden*, 614 F.3d 785, 796–97 (2010)). The "*Calder* effects test" provides that:

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused

> harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

*Id.* (quoting 614 F.3d at 796). The Court analyzes each factor as follows:

### a. The first and second factors—the nature, quality, and quantity of Defendant's Contacts with the forum state—weigh in favor of a finding of personal jurisdiction.

Plaintiff points to two of Defendant's employees who work remotely in Missouri, as well as to Defendant's eight client health systems in Missouri. Regarding Defendant's employees, they work from their personal residences and Defendant does not store any inventory or other materials at their residences. Bjorklund Decl. ¶ 9. Defendant's connection to Missouri via these employees is merely random or fortuitous, and therefore irrelevant to the determination of personal jurisdiction. *Morningside Church*, 9 F.4th at 619.

However, regarding Defendant's eight Missouri-based client health systems, Defendant has directed significant efforts to enter into contracts with these health systems, implement its software, and provide ongoing support. *See e.g.*, Pl.'s Ex. 1, 2, 3, 6, ECF Nos. 16-3, 16-4, 16-5, 16-8. Defendant has therefore deliberately engaged in significant activities within Missouri, and has created "continuing obligations" between itself and Missouri residents. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Defendant's activities—such as at BJC Healthcare in St. Louis, where Defendant engaged in a full year of contact negotiations, and three years of implementing its health records software, Pl. Ex. 2, 3—are a clear availment of the privilege of conducting business in Missouri.

Defendant argues that these are not relevant contacts because Plaintiff's copyright infringement claim accrued in 2019, after it implemented each Missouri client's system. Reply at 3–4, ECF No. 20. The Court is not convinced. Defendant cites no law to support the idea that contacts which occur prior to a copyright claim's accrual are irrelevant to the determination of

personal jurisdiction. While Plaintiff's claim accrued in 2019—when he discovered the alleged infringement, *Asche & Spencer Music, Inc. v. Principato-Young Ent., Inc.*, 147 F. Supp. 3d 833, 838 (D. Minn. 2015)— the alleged infringement began much earlier. Defendant states that it inquired with Wolters Kluwer about licensing the SAQ-7 in June of 2016, and ultimately obtained that license on July 22, 2016.[1] Bader Decl. ¶ 6–7. Defendant has implemented its health records software at two hospitals since then: at the Saint Francis Healthcare System in Cape Girardeau—which launched in July of 2016—, and at BJC Healthcare in St. Louis—which launched in June of 2018. Pl. Ex. 1, ECF No. 16-3; Pl. Ex. 3, ECF No. 16-5. In addition, Defendant continues to provide ongoing support to its Missouri clients after Plaintiff's claim accrued. *See* Pl. Ex. 6. The first two factors therefore weigh in favor of personal jurisdiction.

b. **The third factor—the relation of Defendant's contacts to the forum state— weighs in favor of a finding of personal jurisdiction.**

In analyzing the third factor, the Court considers the relationship between the cause of action—here, copyright infringement—and Defendant's contacts with Missouri. Recent Eighth Circuit precedent seems to indicate that this is the most important factor. *See Bros. & Sisters in Christ*, 42 F.4th 948, 952 (8th Cir. 2022) ("[I]n assessing specific jurisdiction, we look only to Zazzle's contacts with Missouri related to BASIC's claims."). Here, Plaintiff alleges that Defendant reproduced the SAQ-7 on its software system, and that it also sold, implemented, and maintained this software system at eight separate hospital systems in Missouri. The third factor therefore weighs in favor of a finding of personal jurisdiction.

---

[1] The Court makes no finding as to whether the license Defendant obtained from Wolters Kluwer encompassed the use of the SAQ-7 on Defendant's software.

### c. The fourth factor is of little weight, but weighs in favor of a finding of personal jurisdiction.

The Court gives little weight to the fourth factor—the interest of the forum state in providing a forum for its residents. This is because, so long as a plaintiff files in his home state, this will always weigh in favor of a finding of personal jurisdiction. Nonetheless, Missouri has a clear interest in providing a forum for its residents, and thus this factor tilts slightly in favor of a finding of personal jurisdiction. *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014).

### d. The fifth factor weighs against a finding of personal jurisdiction.

The fifth factor—the convenience of the parties—weighs against a finding of personal jurisdiction. Plaintiff points to his Kansas City medical practice to argue that it would be highly inconvenient for him to have to litigate this case in another district. However, pre-trial discovery and motion practice will not require Plaintiff to leave Missouri. Should this case go to trial, it appears that many witnesses will be Defendant's employees, meaning that Defendant will be required to cover their travel expenses and work obligations. The fifth factor therefore weighs in Defendant's favor.

### e. The *Calder* effects test weighs in favor of a finding of personal jurisdiction.

The Court now turns to the *Calder* effects test. The Court construes the Calder effects test narrowly, "meaning that 'absent additional contacts, mere effects in the forum state are insufficient . . . .'" *Johnson v. Arden*, 614 F.3d 785, 797 (2010). It is not sufficient to show only that the first and third factors, *i.e.* that a defendant's acts "were intentional" and "caused harm, the brunt of which was suffered and—which the defendant knew would be suffered—[in the forum state]," were established. *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 1003–04 (E.D. Mo. 2013) ("Although the first and third factors of the *Calder* test are pertinent,

those factors are rarely dispositive."). This means that—to pass the *Calder* effects test—a plaintiff must make a prima facie showing of the second factor, i.e. that a defendant's actions "were uniquely or expressly aimed at the forum state." *Id.*

Plaintiff has alleged both the first and third factors of the *Calder* effects test. Regarding the first factor, he has alleged the knowing infringement of his copyright on the SAQ-7. Regarding the third factor, Plaintiff has alleged that he is a Missouri resident, that Defendant was aware of this fact once the parties attempted to negotiate a license, and that Defendant incorporated the SAQ-7 within its software and distributed that software to multiple health systems in Missouri. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) (holding that the third prong of the *Calder* effects test was met where, in a trademark infringement suit, the Plaintiff had its principal place of business in the forum state and the Defendant knew that its infringing product was sold in the forum state).

Regarding the second factor, the record shows that Defendant negotiated with eight Missouri health care systems to provide the software containing the SAQ-7. It then installed and now maintains that software in these Missouri health care systems. Defendant argues this is insufficient to establish that its actions "were uniquely or expressly aimed at the forum state" since Defendant sells its software products to healthcare organizations in all 50 states. Suggestions in Supp. at 8–10. However, a defendant is capable at aiming its actions at more than one state. Plaintiff has sufficiently alleged that Defendant's actions were expressly aimed at Missouri, and the *Calder* effects test therefore weighs in favor of a finding of personal jurisdiction.

After review of the factors, the Court concludes that the exercise of specific jurisdiction over Defendant in this case would not run afoul of due process. Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

## II. Defendant's motion to transfer is GRANTED.

The Court now turns to Defendant's motion to transfer this case to the Western District of Wisconsin.

The threshold question in deciding a motion to transfer venue is whether the proposed forum is one in which the action might have been brought. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *see* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). Here, the Western District of Wisconsin has general personal jurisdiction over Defendant because it is incorporated and maintains its principal place of business there. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Venue is also proper there because Defendant resides within the Western District of Wisconsin and a substantial part of the conduct giving rise to Plaintiff's claims occurred there. 28 U.S.C. §§ 1391, 1400. Thus, Plaintiff could have brought the case in the Western District of Wisconsin. The Court must now consider whether the "convenience of the parties and witnesses" and "the interest of justice" support transferring the case to the Western District of Wisconsin.

The Eighth Circuit has elaborated on the convenience factors and considers the following when deciding a motion to transfer venue:

> (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Terra Int'l, Inc.*, 119 F.3d at 696. "The convenience of the witnesses is the most important factor in deciding a motion to transfer." *Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Coca-Cola Co.*, No. 06-03056-CV-W-GAF, 2006 WL 696461, at *4 (W.D. Mo. Mar. 17, 2006).

13

The balance of the convenience factors weighs in favor of transfer. Regarding the convenience of the witnesses, Plaintiff identifies two doctors who practice in Missouri and who conducted research regarding the SAQ-7, another doctor who practices in Missouri and has knowledge of Defendant's use of the SAQ-7, and the copyright lawyer who assisted plaintiff in registering the relevant copyrights. Opp'n at 12, ECF No. 16; Bui. Decl. ¶ 12–15, ECF No. 16-2. Defendant argues that its employees who determine what to include on the software, who handle licensing of third-party content, and who decided to license the SAQ-7 from Wolters Kluwer, are located in Verona, Wisconsin. Defendant also states that all members of its in-house legal team—who negotiated with Plaintiff in 2019 regarding licensing the SAQ-7—are located in Verona. Suggestions in Supp. at 15, ECF No. 13. Defendant states—and the Court agrees—that the majority of the witnesses in this case would be Defendant's employees and would be forced to travel to Missouri if this case were litigated here.

Since many witnesses would be Defendant's employees, the convenience of the parties also weighs in favor of transfer, as Defendant would "incur expenses for airfare, meals and lodging, and losses in productivity from time spent away from work." *In re Apple, Inc.*, 602 F.3d at 913. Plaintiff argues that—as a physician—he must be accessible to his patients in Kansas City. However—while they disagree on where most of the relevant documents are located—both parties agree that the relevant documents can be produced electronically. Similarly, depositions may be conducted via teleconference. Discovery therefore will not require Plaintiff to travel to the Western District of Wisconsin. Likewise, pretrial motion practice will not require Plaintiff to travel. Further, should this case proceed to trial Plaintiff cannot reasonably expect to be available for his patients during that time, regardless of the district.

The fourth convenience factor—the location where the conduct complained of occurred—also weighs in favor of transfer, as Defendant's purported purchase of a license from Wolters Kluwer and its decision to include the SAQ-7 on its software were made in Verona, Wisconsin.

The two remaining factors—the accessibility to records and documents and the applicability of each forum state's substantive law—are neutral. Plaintiff's claim arises under Federal law and, as the Court noted above, both parties agree that relevant documents can be produced electronically.

Next, the Court must determine whether the interest of justice is served by granting transfer. In determining whether transfer serves "the interest of justice" the Court looks to:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*Terra Int'l, Inc.*, 119 F.3d at 696. Apart from the fact that Plaintiff chose to file in this District, *See In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010), none of the interest of justice factors are implicated here.[2] The costs of litigating in each district will be similar, and the parties will not have trouble enforcing a judgment or receiving a fair trial in either district. Similarly, there no issues of local law are implicated in this case. However, given the fact that the convenience of the parties clearly weighs in favor of transfer, Defendant's motion to transfer this case to the Western District of Wisconsin is GRANTED.

---

[2] Neither party briefed the interest of justice factors. *See* Suggestions in Supp. at 13–17, ECF No. 13; Opp'n at 10–15, ECF No. 16; Reply at 9–10, ECF No. 20.

**Conclusion**

Defendant's motion to dismiss for lack of personal jurisdiction is DENIED, its motion to transfer this case to the Western District of Wisconsin is GRANTED, and its motion to stay discovery is DENIED AS MOOT.

**IT IS SO ORDERED.**

Date: <u>September 21, 2022</u>     <u>    /s/ Greg Kays                    </u>
                                     GREG KAYS, JUDGE
                                     UNITED STATES DISTRICT COURT