# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| John A. Spertus, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>Epic Systems Corporation,<br><br>Defendant. | Case No. 3:22-cv-00553-wmc<br><br>**REDACTED** |

## DEFENDANT EPIC SYSTEMS CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant, Epic Systems Corporation ("Epic"), by and through its attorneys, Quarles & Brady LLP, hereby responds to the Complaint of Plaintiff, John A. Spertus, M.D. ("Plaintiff" or "Dr. Spertus"). The paragraphs in this Answer are numbered to correspond with the paragraph numbers the Complaint (Dkt. 1). Any and all allegations in the Complaint that are not specifically admitted are hereby denied. Epic states as follows:

## INTRODUCTION

1. Dr. John Spertus is a cardiologist. Dr. Spertus maintains an active clinical practice and also conducts research and publishes in the cardiology field.

**ANSWER:** Epic admits that upon information and belief Dr. Spertus is a cardiologist. For any remaining allegations, Epic lacks knowledge or information sufficient to form a belief as those to allegations and therefore denies those allegations.

2. Dr. Spertus is the author of a series of questionnaires that are used to measure the impact of heart disease on patients' lives. Dr. Spertus owns the copyrights to the questionnaires and registered them with the Copyright Office in 2005.

**ANSWER:** Paragraph 2 contains legal conclusions to which no response is required. To the extent a response is required and to the extent one of the "series of questionnaires" being

referenced is the "Short Form Questionnaire" as defined in Paragraph 22 of the Complaint, Epic

denies that Plaintiff owned a valid, enforceable copyright in said "Short Form Questionnaire"

during the period in which Plaintiff alleges infringement. Epic lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations in Paragraph 2, and therefore

denies those allegations.

3.    Dr. Spertus licenses his questionnaires to doctors, clinics, hospitals, researchers and industry actors.    Many doctors, clinics, and hospitals have taken licenses to Dr. Spertus' questionnaires.  The questionnaires are used widely in the field.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of Paragraph 3, and therefore denies those allegations.

4.    Defendant Epic Systems Corporation is a leading provider of electronic health records software in the United States.  Epic provides its health records software to hospitals and medical schools.    In 2019, Dr. Spertus learned that, through its health records software, Epic was reproducing and distributing one of Dr. Spertus' copyrighted questionnaires without Dr. Spertus' permission.

**ANSWER**:  Epic admits that it is a leading provider of electronic health records software

in the United States, and that Epic provides electronic health records software to hospitals and

medical schools. Epic denies that Epic reproduced and distributed one of Dr. Spertus' copyrighted

questionnaires without Dr. Spertus' permission. Epic lacks knowledge or information sufficient to

form a belief as to the remaining allegations of Paragraph 4, and therefore denies those allegations.

5.    Dr. Spertus offered Epic the opportunity to license his questionnaire.  But Epic refused to take a license from Dr. Spertus.  Yet, as Dr. Spertus recently learned, Epic nonetheless continued to use his copyrighted questionnaire without his permission.   Dr. Spertus files this case for copyright infringement to stop Epic's use of Dr. Spertus' copyrighted work, and to hold Epic accountable for its past and continuing infringement.

**ANSWER**:  Paragraph 5 contains legal conclusions to which no response is required. To

the extent a response is required, Epic admits Plaintiff attempted to get Epic to pay for a license to

the "Short Form Questionnaire," to which Epic already had (and has) a license, and to which

Plaintiff did not **REDACTED**. Epic admits Plaintiff has now filed this case alleging

2

purported copyright infringement. Epic denies that it has infringed any copyright and denies all remaining allegations in Paragraph 5.

## PARTIES

6.    Plaintiff Dr. John Spertus ("Dr. Spertus" or "Plaintiff") is an individual who resides in Kansas City, Missouri.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief about the truth of any allegations in Paragraph 6 of the Complaint and therefore denies those allegations.

7.    Defendant Epic Systems Corporation ("Epic") is a corporation organized under the laws of Wisconsin, with its principal place of business in Verona, Wisconsin.  Epic does business in many states, including the state of Missouri.

**ANSWER**:  Epic admits that it is a corporation organized under the laws of Wisconsin, with its principal place of business in Verona, Wisconsin, and that Epic has customers that implement its software in many states, including the State of Missouri. To the extent Paragraph 7 contains any other allegations, Epic denies such allegations.

## NATURE OF THE ACTION, JURISDICTION AND VENUE

8.    Dr. Spertus asserts claims for copyright infringement under the copyright laws of the United States, including 17 U.S.C. §§ 501 *et. seq.*  The Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER**:  Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is required, Epic admits that the Complaint purports to be an action for copyright infringement under 17 U.S.C. §§ 501 *et. seq*, and admits that, based solely on the allegations in the Complaint and without admitting them as true, the United States District Court for the Western District of Wisconsin (the "Western District of Wisconsin") has jurisdiction over this action.

9.    The Court has personal jurisdiction over Epic.  Epic has transacted and does transact business within, and has committed and continues to commit acts of infringement in, this district. For example, Epic has provided and continues to provide its electronic health records software to clients in Missouri, including hospitals in this district.  In doing so, Epic reproduces and transmits

3

Dr. Spertus' copyrighted work into Missouri and specifically this district in violation of Dr. Spertus' exclusive rights. In addition, by intentionally infringing Dr. Spertus' copyright as alleged below, Epic committed intentional acts expressly aimed at Missouri, and specifically this district, causing harm to Dr. Spertus that Epic knew was likely to be suffered in Missouri, and specifically in this district, where Dr. Spertus resides.

**ANSWER**: Paragraph 9 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Epic admits that Epic has provided and continues to provide its electronic health records software to clients in Missouri and that the Western District of Wisconsin has personal jurisdiction over Epic for purposes of the present action. Epic denies any remaining allegations in Paragraph 9.

10. Venue is proper in this district under 28 U.S.C. § 1400(a). Epic may be found in this district within the meaning of section 1400(a) because this Court has personal jurisdiction over Epic.

**ANSWER**: Paragraph 10 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Epic does not contest, solely for purposes of the present action, that venue as to Epic is proper in the Western District of Wisconsin. To the extent Paragraph 10 refers to the Western District of Missouri, where the Complaint was originally filed, Epic denies that the Western District of Missouri was or is the proper venue for this dispute.

## FACTS

11. Dr. John Spertus is a cardiologist, a doctor who specializes in the study and treatment of heart diseases and heart abnormalities. Alongside his clinical practice, Dr. Spertus has conducted extensive research in this field.

**ANSWER**: Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 11, and therefore denies those allegations.

4

12.   Dr. Spertus authored and owns a series of copyrighted questionnaires for patients with coronary artery disease known as the Seattle Angina Questionnaires.[1]

**ANSWER**:  Paragraph 12 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 12 and the accompanying footnote, and therefore denies those allegations.

13.   Dr. Spertus authored the first version of the Seattle Angina Questionnaire (the "First Angina Questionnaire") in 1992.  At the time, there was no universally-accepted health status measure for coronary disease patients.  A health status measure is a measure of the overall impact of a health condition on a patient's life, including their symptoms, function and quality of life.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 13, and therefore denies those allegations.

14.   Dr. Spertus observed the need for a universally-accepted health status measure for coronary disease, in part because such a measure would be valuable in measuring treatment outcomes for both clinical and research purposes.  Dr. Spertus also recognized that it would be highly advantageous for such a measure to come from a questionnaire that patients could administer to themselves, as compared with physician-administered systems.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 14, and therefore denies those allegations.

15.   To meet this need, Dr. Spertus authored the First Angina Questionnaire.   The questionnaire measures the five clinically important dimensions of the disease:  physical limitation, anginal stability, anginal frequency, treatment satisfaction, and disease perception.   The

---

[1] "Angina" is a cardiovascular condition marked by severe pain in the chest caused by inadequate blood supply to the heart.  The first version of the survey was developed in Seattle.

questionnaire contains nineteen questions, each with five to six scaled answer options. An example question is shown below:



2. <u>Compared with 4 weeks ago</u>, how often do you have **chest pain, chest tightness, or angina** when doing your **most strenuous** activities?

I have had **chest pain, chest tightness, or angina**...

| Much more often | Slightly more often | About the same | Slightly less often | Much less often | I have had **no chest pain** over the last 4 weeks |
|:---:|:---:|:---:|:---:|:---:|:---:|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**ANSWER**: Epic denies that the example question in Paragraph 15 is taken from the "First Angina Questionnaire" as it is reproduced in Exhibit 3 to the Complaint. Epic lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 15, and therefore denies those allegations.

16. Dr. Spertus intended the First Angina Questionnaire to be accessible to, and usable by, patients. He authored the questions, as well as the overall questionnaire, to ensure that patients would be able to complete it in 5 minutes or less. He created the questions so that they could be used by all coronary disease patients, regardless of socioeconomic status and gender. And he crafted the answer options by adapting physician-administered classifications systems to make them understandable and therefore accessible to patients.

**ANSWER**: Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 16, and therefore denies those allegations.

17. For example, the questionnaire asks patients to indicate how much their chest pain, chest tightness, or angina limited them from performing certain everyday activities, like "dressing yourself" and "showering." Patients answer by choosing an option on a scale from "severely

6

limited" to "not limited," or "Limited, or did not do for other reasons," as shown in the excerpt below.



The Seattle Angina Questionnaire I

1. The following is a list of activities that people often do during the week. Although for some people with several medical problems it is difficult to determine what it is that limits them, please go over the activities listed below and indicate how much limitation you have had due to chest pain, chest tightness, or angina over the past 4 weeks.

Place an x in one box on each line.

| Activity | Severely Limited | Moderately Limited | Somewhat Limited | A Little Limited | Not Limited | Limited, or did not do for other reasons |
|---|---|---|---|---|---|---|
| Dressing yourself | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking indoors on level ground | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Showering | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**ANSWER**:  Epic admits that the excerpt in Paragraph 17 appears to have been taken from the First Angina Questionnaire attached to the Complaint as Exhibit 3 and that the scale used in question 1 of the First Angina Questionnaire attached to the Complaint as Exhibit 3 makes use of the terms "Severely Limited," "Moderately Limited," "Somewhat Limited," "A Little Limited," "Not Limited," and "Limited, or did not do for other reasons." Epic lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 17, and therefore denies those allegations.

18.  Dr. Spertus also developed a scoring system to translate answers to the questionnaire into a quantitative measure of patient-centered coronary disease outcomes.  And Dr. Spertus and his colleagues conducted studies to ensure that the questionnaire was scientifically valid (measures what it intends to measure), reproducible, and responsive to clinically-important changes.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 18, and therefore denies those allegations.

19.  Dr. Spertus also authored other versions of the questionnaire.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 19, and therefore denies those allegations.

20.  In 1996, Dr. Spertus authored a second questionnaire largely based on the first, which he called the "Seattle Angina Questionnaire II" ("Second Angina Questionnaire").  In the Second

7

Angina Questionnaire, Dr. Spertus changed the phrasing of certain questions and answer options. Dr. Spertus made these changes so that the questionnaire would be easier for patients to answer, and easier to translate into other languages.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 20, and therefore denies those allegations.

21.  In 2014, Dr. Spertus observed the need for a shorter questionnaire.  A shorter and less time-consuming version would make it more feasible to use the questionnaire in routine clinical care.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 21, and therefore denies those allegations.

22.  So Dr. Spertus created a shorter version of the Second Angina Questionnaire ("Short Form Questionnaire").  And Dr. Spertus and his colleagues used data from thousands of patients with coronary artery disease to create the Short Form Questionnaire to preserve the psychometric and prognostic properties of the Second Angina Questionnaire.

**ANSWER**:  Epic admits that the verbiage in the Short Form Questionnaire (Exhibit 5 to the Complaint) appears to be a subset of the verbiage contained in the Second Angina Questionnaire (Exhibit 4 to the Complaint). Epic otherwise lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 22, and therefore denies those allegations.

23.  The Short Form Questionnaire is composed entirely of a subset of the elements of the Second Angina Questionnaire, reproduced verbatim with no changes.

**ANSWER**:  Epic admits that the verbiage in the Short Form Questionnaire (Exhibit 5 to the Complaint) appears to be a subset of the verbiage contained in the Second Angina Questionnaire (Exhibit 4 to the Complaint), but Epic denies that the Short Form Questionnaire is reproduced verbatim with no changes from the Second Angina Questionnaire. Epic lacks information or knowledge sufficient to form a belief as to the remaining allegations of Paragraph 23, and therefore denies those allegations.

QB\310265.00379\76009118

24.  Here is Question 1 of the Second Angina Questionnaire:

Place an X in one box on each line

| Activity | Extremely Limited | Quite a bit Limited | Moderately Limited | Slightly Limited | Not at all Limited | Limited for other reasons or did not do the activity |
|---|---|---|---|---|---|---|
| Dressing yourself | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking indoors on level ground | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Showering | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Climbing a hill or a flight of stairs without stopping | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Gardening, vacuuming, or carrying groceries | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking more than a block at a brisk pace | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Running or jogging | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Lifting or moving heavy objects (e.g. furniture, children) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Participating in strenuous sports (e.g. swimming, tennis) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**ANSWER**:  Epic denies that Question 1 of the Second Angina Questionnaire (Exhibit 4 to the Complaint) is reproduced in Paragraph 24 as the actual question language is not included in the reproduction. To the extent Paragraph 24 contains any other allegations, Epic denies them.

25.  And here is Question 1 of the Short Form Questionnaire:

1.  The following is a list of activities that people often do during the week. Although for some people with several medical problems it is difficult to determine what it is that limits them, please go over the activities listed below and indicate how much limitation you have had **due to chest pain, chest tightness or angina over the past 4 weeks**.

Place an X in one box on each line.

| Activity | Extremely limited | Quite a bit limited | Moderately Limited | Slightly limited | Not at all limited | Limited for other reasons or did not do the activity |
|---|---|---|---|---|---|---|
| Walking indoors on level ground | ❏ | ❏ | ❏ | ❏ | ❏ | ❏ |
| Gardening, vacuuming or carrying groceries | ❏ | ❏ | ❏ | ❏ | ❏ | ❏ |
| Lifting or moving heavy objects (e.g. furniture, children) | ❏ | ❏ | ❏ | ❏ | ❏ | ❏ |

**ANSWER**:  Epic admits that the above screenshot contains Question 1 of the Short Form Questionnaire (Exhibit 5 to the Complaint). To the extent Paragraph 25 contains any other allegations, Epic denies them.

26.   As the above demonstrates, question 1, the instructions for question 1, and the answer categories to question 1 are identical.  And the activities the Short Form Questionnaire asks about are a subset of the activities that the Second Angina Questionnaire asks about.

**ANSWER**:  Epic denies that the above Paragraphs demonstrate that question 1 and the instructions for question 1 are identical. To the extent Paragraph 24 contains any other allegations, Epic denies them.

27.   The remaining questions of the Short Form Questionnaire are each identical to questions on the Second Angina Questionnaire.

**ANSWER**:  Epic admits, upon information and belief, that the verbiage of the remaining questions of the Short Form Questionnaire (Exhibit 5 to the Compliant) appear to be identical to questions contained in the Second Angina Questionnaire (Exhibit 4 to the Complaint). To the extent Paragraph 27 contains any other allegations, Epic denies them.

28.   Question 2 of the Short Form Questionnaire is identical to Question 3 of the Second Angina Questionnaire.  Question 3 of the Short Form Questionnaire is identical to Question 4 of the Second Angina Questionnaire.  Question 4 of the Short Form Questionnaire is identical to Question 9 of the Second Questionnaire.  And Question 5 of the Short Form Questionnaire is identical to Question 10 of the Second Angina Questionnaire.

**ANSWER**: Epic admits the verbiage of Question 2 of the Short Form Questionnaire (Exhibit 5 to the Complaint) appears to be identical to Question 3 of the Second Angina Questionnaire (Exhibit 4 to the Complaint), but denies Question 2 of the Short Form Questionnaire is reproduced verbatim as Question 3 of the Second Angina Questionnaire. Epic admits the verbiage of Question 3 of the Short Form Questionnaire (Exhibit 5 to the Complaint) appears to be identical to Question 4 of the Second Angina Questionnaire (Exhibit 4 to the Complaint), but denies Question 3 of the Short Form Questionnaire is reproduced as Question 4 of the Second

Angina Questionnaire. Epic admits the verbiage of Question 4 of the Short Form Questionnaire (Exhibit 5 to the Complaint) appears to be identical to Question 9 of the Second Angina Questionnaire (Exhibit 4 to the Complaint), but Epic denies Question 9 of the Second Questionnaire is reproduced verbatim as Question 4 of the Short Form Questionnaire. Epic admits the verbiage of Question 5 of the Short Form Questionnaire (Exhibit 5 to the Complaint) appears to be identical to Question 10 of the Second Angina Questionnaire (Exhibit 4 to the Complaint), but Epic denies Question 10 of the Second Questionnaire is reproduced verbatim as Question 5 of the Short Form Questionnaire. To the extent Paragraph 28 contains any other allegations, Epic denies them.

29.  Dr. Spertus also created a scoring method for the Short Form Questionnaire.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 29, and therefore denies those allegations.

30.  Dr. Spertus is the author of and owns the copyright to the First Angina Questionnaire and the Second Angina Questionnaire.  In 2005, Dr. Spertus registered his copyright for both the First Angina Questionnaire and the Second Angina Questionnaire.  Exhibit 1; Exhibit 2.

**ANSWER**:  Paragraph 30 contains legal conclusions to which no response is required. To the extent a response is required, Epic admits that Exhibit 1 and Exhibit 2 appear to be copies of certificates of registration for "The Seattle Angina Questionnaire I" and "The Seattle Angina Questionnaire II". Epic lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 30, and therefore denies those allegations.

31.  The Short Form Questionnaire is composed entirely of elements from the Second Questionnaire.  Indeed, as explained above, the Short Form Questionnaire consists entirely of a verbatim subset of the questions on the Second Questionnaire.  Moreover, each of those questions is a protectable element.  Accordingly, the entirety of the Short Form Questionnaire, and each element of it, is protected by the registered copyright on the Second Angina Questionnaire.

**ANSWER**:  Paragraph 31 contains legal conclusions to which no response is required. To the extent a response is required, Epic admits that the verbiage in the Short Form Questionnaire

(Exhibit 5 to the Complaint) appears to be a subset of the verbiage contained in the Second Angina Questionnaire (Exhibit 4 to the Complaint), but Epic denies that the Short Form Questionnaire is reproduced verbatim with no changes from the Second Angina Questionnaire. Epic denies the remaining allegations in Paragraph 31.

32.   Dr. Spertus licenses his questionnaires to clinics, practices, hospitals, researchers, and industry actors for an annual fee.  The fee can vary based on the number of patients at each client clinic, practice, or hospital.

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 32, and therefore denies those allegations.

33.   Both the Second Angina Questionnaire and the shorter Short Form Questionnaire have become among the most commonly-used measures of coronary disease patients' angina symptoms and angina's effect on their functioning and quality of life.

**ANSWER**:  Epic denies that the Second Angina Questionnaire and the shorter Short Form Questionnaire are "commonly used". To the extent Paragraph 33 contains any other allegations, Epic lacks knowledge or information sufficient to form a belief as to them, and therefore denies those allegations.

34.   Peer-reviewed research has repeatedly supported the survey's validity.[2]  And a task force comprising the American College of Cardiology Foundation and the American Heart Foundation endorsed the use of the Second Angina Questionnaire, which is generally known as the Seattle Angina Questionnaire, in 2011.[3]

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 34, and therefore denies those allegations.

---

[2] *See, e.g.* https://pubmed.ncbi.nlm.nih.gov/29772387/;
https://pubmed.ncbi.nlm.nih.gov/33624815/; https://pubmed.ncbi.nlm.nih.gov/34175106/;
https://pubmed.ncbi.nlm.nih.gov/34495443/; https://pubmed.ncbi.nlm.nih.gov/33261627/.
[3] https://www.ahajournals.org/doi/epub/10.1161/CIR.0b013e31821d9ef2

12

35.  Likewise, shortly after the Short Form Questionnaire was developed in 2015, the International Consortium for Health Outcomes Measurement endorsed the results of the Short Form Questionnaire as a standardized outcome measure for patients with coronary artery disease.[4]

**ANSWER**:  Epic lacks knowledge or information sufficient to form a belief as to the

allegations of Paragraph 35, and therefore denies those allegations.

36.  Defendant Epic is a leading provider of electronic health records software.  Epic provides its health records software to hospitals and medical schools, including Kaiser Permanente, John Hopkins Hospital, Cleveland Clinic, and the Mayo Clinic. According to Epic, more than 250 million patients have a current electronic record in Epic. Epic is paid license fees for its software.

**ANSWER**:  Epic admits that it is a leading provider of electronic health records software

and that Epic licenses its health records software to hospitals, including the organizations named

in Paragraph 36. To the extent that Paragraph 36 contains any other allegations, Epic denies those

allegations.

37.  Epic's health records software allows its users—such as hospital and clinics—to manage their patients' health records. The software performs basic functions like record-keeping and appointment-scheduling. Epic's software also includes other content and functions.

**ANSWER**:  Epic admits that its health records software allows its users to manage their

patients' health records including scheduling appointments, among a multitude of other functions.

To the extent Paragraph 37 contains any other allegations, Epic denies those allegations.

38.  In June 2019, Dr. Spertus discovered that Epic was reproducing the Short Form Questionnaire and distributing it to its clients on its health records system.

**ANSWER**:  Paragraph 38 contains legal conclusions to which no response is required. To

the extent a response is required, Epic denies the allegations in Paragraph 38.

39.  Reproducing and distributing the Short Form Questionnaire without a license infringes Dr. Spertus' copyright. As explained above, the Short Form Questionnaire consists entirely of elements taken from Second Angina Questionnaire. Indeed, each and every question in the Short Form Questionnaire also appears, identically, in the Second Angina Questionnaire. Accordingly, Dr. Spertus has the exclusive right to reproduce and distribute the Short Form

---

[4] https://www.ahajournals.org/doi/10.1161/JAHA.115.001767

Questionnaire, and each element of it. Epic's use of the Short Form Questionnaire without Dr. Spertus' permission therefore infringes Dr. Spertus' exclusive rights.

**ANSWER**: Paragraph 39 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 39.

40. Shortly after discovering Epic's infringement, Dr. Spertus sent Epic a copyright violation notice. In the notice, Dr. Spertus informed Epic that the Short Form Questionnaire was copyrighted, that Dr. Spertus owned the copyrights covering the Short Form Questionnaire, and that Epic was infringing his copyright by providing the Short Form Questionnaire on its medical platform.

**ANSWER**: Paragraph 40 contains legal conclusions to which no response is required. To the extent a response is required, Epic admits Dr. Spertus sent Epic a letter concerning the Short Form Questionnaire and alleging Epic was infringing Dr. Spertus' copyright. Epic responded to the referenced letter from Dr. Spertus' attorney by stating: "We respect and make every effort not to infringe upon the intellectual property rights of others. To that end, we purchased a perpetual license to the Seattle Angina Questionnaire from Wolters Kluwer on July 22, 2016." Epic denies that it infringed any copyright and further denies all remaining allegations in Paragraph 40.

41. In addition, Dr. Spertus attempted to negotiate with Epic a license to the Short Form Questionnaire, so that Epic could continue distributing the Short Form Questionnaire on its system. But their negotiations failed after several months, and Epic did not take a license from Dr. Spertus.

**ANSWER**: Epic admits Dr. Spertus offered a license to Epic concerning the Short Form Questionnaire and that Epic did not take a license from Dr. Spertus after informing Dr. Spertus that Epic already had a license to use the Short Form Questionnaire. To the extent Paragraph 41 contains any other allegations, Epic denies those allegations.

42. Because Epic did not take a license, Epic did not have the right to continue reproducing and distributing the Short Form Questionnaire, and continuing to do so would constitute a willful violation of Dr. Spertus' copyright rights. But in May 2021, Dr. Spertus

discovered that Epic was still using the Short Form Questionnaire—without a license and without telling Dr. Spertus. Dr. Spertus again notified Epic that it was violating Dr. Spertus' copyright.

**ANSWER**:  Paragraph 42 contains legal conclusions to which no response is required. To the extent a response is required, Epic admits Dr. Spertus' counsel contacted Epic in or around May 2021 alleging copyright infringement and that Epic reminded Dr. Spertus' counsel that Epic has a license to use the Short Form Questionnaire. Epic denies all remaining allegations in Paragraph 41.

43.   Despite Dr. Spertus' repeated notices of copyright infringement, Epic continued and continues to infringe Dr. Spertus' copyrighted works.

**ANSWER**:  Paragraph 43 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 43.

44.   As described above, Epic provides and makes available to its clients on its health records software a copy of the Short Form Questionnaire.

**ANSWER**:  Paragraph 44 contains legal conclusions to which no response is required. To the extent a response is required, Epic admits, that since 2019, Epic has included a questionnaire titled "Seattle Angina Questionnaire-7" that Epic licensed from Wolters Kluwer in July of 2016 in the content Epic offers its customers to consider using in their electronic health record software. To the extent that Paragraph 44 contains any other allegations, Epic denies those allegations.

45.   Using Epic's health records software, a client doctor can download to their computer and open a copy of the Short Form Questionnaire for a patient, fill it in, receive a score for the questionnaire, and save a copy of the completed questionnaire and its score to the patient's file.  In addition, patients can themselves view and download the questionnaire using Epic's health records software.

**ANSWER**:  Epic denies the Allegations in Paragraph 45.

46.   To make the Short Form Questionnaire available on its health records software, Epic necessarily reproduces the Short Form Questionnaire.  In doing so, Epic distributes copies of the copyrighted work to its clients.  In addition, by making Dr. Spertus' copyrighted work available to its clients, Epic knows that its clients use the Short Form Questionnaire, and induces and

15

materially contributes to their copying and distribution of the questionnaire in their own systems and to their patients.

**ANSWER**: Paragraph 46 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 46.

47. Epic does not disclose to its clients that it does not have a license to use the Short Form Questionnaire as used by Epic and its clients. And Epic does not inform its clients that they would have to obtain a license to use the Short Form Questionnaire as used in connection with Epic's heath records software. Nor does Epic do anything to check or make sure that its clients have a license to the Short Form Questionnaire before making it available to them or allowing them to use, copy, or distribute it.

**ANSWER**: Epic denies the Allegations in Paragraph 47.

48. Epic has the right and ability to prevent its clients' use of the Short Form Questionnaire without a license. For example, Epic can remove the Short Form Questionnaire from its software. Or, Epic could require its clients to provide proof that they have a license to use the Short Form Questionnaire before making it available to its clients. But Epic does not take any of these steps.

**ANSWER**: Paragraph 48 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the Allegations in Paragraph 48.

49. Providing the Short Form Questionnaire on its health records system is a draw for Epic's clients to use and pay for Epic's software, because use of the Short Form Questionnaire is valuable and these clients would otherwise have to pay for a license to use the Short Form Questionnaire. And Epic's failure to police or otherwise prevent infringing uses of the Short Form Questionnaire is also a draw for Epic's clients. That is, if Epic took steps to prevent its clients from using the Short Form Questionnaire without a license, such as requiring proof of a license before providing access to the Short Form Questionnaire, then Epic's software would be less desirable to its clients.

**ANSWER**: Epic denies the Allegations in Paragraph 49.

50. Meanwhile, Epic's use of the Short Form Questionnaire—and the use of the Short Form Questionnaire on behalf of Epic's clients that Epic knowingly induces, causes, and materially

contributes to—deprives Dr. Spertus of the fees that he would charge for licenses of the Short Form Questionnaire.

**ANSWER**:  Paragraph 50 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 50.

51.  Since at least 2019, Epic has known of Dr. Spertus' copyright in his Short Form Questionnaire.  Epic further knows that it does not have a license or permission to use the Short Form Questionnaire in connection with its commercialized heath records software.

**ANSWER**:  Paragraph 51 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 51.

52.  Despite this, Epic has refused to stop using the Short Form Questionnaire, and has refused to revoke access to the Short Form Questionnaire for its clients.  Instead, Epic continues to make the Short Form Questionnaire available on its health records software without a license. And Epic continues to allow its clients to access and use the Short Form Questionnaire without a license.

**ANSWER**: Paragraph 52 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 52.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### for copyright infringement (direct, contributory, vicarious)

53.  Dr. Spertus re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

**ANSWER**:  Epic repeats and re-alleges its responses to Paragraphs 1 through 52 above.

54.  Dr. Spertus is the exclusive owner of the copyright to the First Angina Questionnaire and the Second Angina Questionnaire.  Both works are original works of authorship that were fixed in a tangible medium and subject to copyright protection.  Both works have been registered with the United States copyright office since 2005.  A true and correct copy  of the certificate of registration for the First Angina Questionnaire is attached as Exhibit 1 to this Complaint.  A true and correct copy of the certificate of registration for the Second Angina Questionnaire is attached as Exhibit 2 to this Complaint.  Copies of the First and Second Angina Questionnaire, as well as the Short Form Questionnaire, are attached as Exhibits 3-5.

**ANSWER**:  Paragraph 54 contains legal conclusions to which no response is required. To the extent a response is required, Epic admits that the documents attached to the Complaint as

Exhibits 1 and 2 appear to be copies of certificates of registration for works titled "The Seattle Angina Questionnaire I" and "The Seattle Angina Questionnaire II," respectively, and the documents attached as Exhibits 3-5 appear to be copies of the questionnaires Dr. Spertus has referred to as the First Angina Questionnaire, Second Angina Questionnaire, and Short Form Questionnaire, respectively. Epic otherwise lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 54, and therefore denies those allegations.

55. Epic had constructive knowledge of Dr. Spertus' copyright in the Seattle Angina Questionnaires since Dr. Spertus' registration in 2005. And Epic had actual knowledge of Dr. Spertus' copyrights in these works since at least 2019.

**ANSWER**: Paragraph 55 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 55.

56. Epic reproduced, distributed, and publicly displayed Dr. Spertus' protected work, or derivatives of Dr. Spertus' protected work, without Dr. Spertus' consent. Epic's acts violate Dr. Spertus' exclusive rights under the Copyright Act, 17 U.S.C §§ 106 and 501, including Dr. Spertus' exclusive rights to reproduce and distribute copies of his work, to create derivative works, and to publicly display his work. Epic's infringement was undertaken knowingly, and with intent to financially gain from Dr. Spertus' copyrighted work.

**ANSWER**: Paragraph 56 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 56.

57. In addition, Epic's clients, using Epic's health records system, reproduced, distributed, and publicly displayed Dr. Spertus' protected work, or derivatives of Dr. Spertus' protected work, without Dr. Spertus' consent. Epic knew that its clients were performing these acts. Epic also knew that these acts constituted copyright infringement, because Epic was aware that Dr. Spertus' works are copyrighted and that neither it nor its clients had a license to use, reproduce, or distribute the works. And Epic induced and materially contributed to its clients' infringements by providing access to and distributing the Short Form Questionnaire to them on its health records system and by failing to prevent their infringing uses.

**ANSWER**: Paragraph 57 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 57.

18

58.  In addition, Epic had the right and ability to supervise its clients' infringing activities, such as by removing the Short Form Questionnaire from its software or requiring users to have a license to the Short Form Questionnaire before providing access.

**ANSWER**:  Paragraph 58 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 58.

59.  Moreover, Epic has a direct financial interest in its clients' infringing activity.  The availability of the Short Form Questionnaire on Epic's health records system, and the ability to use the Short Form Questionnaire without paying a license, are draws for Epic's clients.  Epic's failure to police or otherwise take action against infringing uses of the Short Form Questionnaire is also a draw for clients who use Epic's health records system.

**ANSWER**:  Paragraph 59 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 59.

60.  Accordingly, Epic has directly, contributorily, and vicariously infringed Dr. Spertus' copyrighted works.

**ANSWER**:  Paragraph 60 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 60.

61.  Epic's infringement has been, and continues to be, willful.  Epic knows that Dr. Spertus' works are copyrighted and knows that it does not have a license to use, reproduce, or distribute the works.  Accordingly, Epic knows that its acts constitute copyright infringement.

**ANSWER**:  Paragraph 61 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 61.

62.  Epic's copyright infringement has harmed Dr. Spertus.  For example, Dr. Spertus has lost license fee revenue as a direct result of Epic's copyright infringement.

**ANSWER**:  Paragraph 62 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 62.

63.  Because of Epic's infringing acts, Dr. Spertus is entitled to statutory damages, to his actual damages, and to Epic's profits attributable to its copyright infringement, in an amount to be proven at trial.

**ANSWER**:  Paragraph 63 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 63.

64. Epic's infringement has caused and is causing irreparable harm to Dr. Spertus, for which he has no adequate remedy at law. Unless this Court enjoins Epic from infringing Dr. Spertus' work, the harm will continue to occur in the future. Accordingly, Dr. Spertus is entitled to a preliminary and permanent injunction.

**ANSWER**: Paragraph 64 contains legal conclusions to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 64.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John A. Spertus, MD prays for judgment as follows:

a.  Entry of judgment holding Epic liable for infringement of the copyrights at issue in this litigation;

b.  An order permanently enjoining Epic from continued acts of infringement of the copyrights at issue in this litigation;

c.  An order requiring Epic to provide a full accounting to Dr. Spertus of clients that have used the copyrighted work without a license, and for all profits derived from Epic's infringement of Dr. Spertus' copyrights;

d.  An order awarding Dr. Spertus his actual damages from the copyright infringements and Epic's profits resulting from Epic's infringement of the copyrights at issue in this litigation in such amount as may be found; alternatively, at Dr. Spertus' election, for statutory damages pursuant to 17 U.S.C. §504;

e.  An order requiring Epic to pay punitive damages as a result of their deliberate and willful misconduct;

f.  An order awarding Dr. Spertus his costs and attorney's fees under 35 U.S.C. §505;

g.  Impounding and destruction of Epic's products and materials that infringe Dr. Spertus' copyright; and

h.  Any and all other legal and equitable relief as may be available under law and which the court may deem proper.

**ANSWER**: Epic denies any and all allegations contained in Plaintiff's Prayer for Relief. Epic denies that Plaintiff is entitled to any relief whatsoever from Epic, including without limitation the relief requested in the Prayer for Relief.

QB\310265.00379\76009118

## DEFENDANT'S AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise bear under applicable law and rules, and specifically reserving its right to assert additional affirmative defenses as additional information or materials become available through discovery or otherwise, Epic hereby asserts the following affirmative defenses. Epic incorporates by reference its responses to the allegations set for in the Complaint as recited above and those set forth below as if fully set forth herein.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1. Plaintiff has failed to state a claim upon which relief can be granted, including *inter alia* because the Short Form Questionnaire is an unregistered work, because the Short Form Questionnaire contains only uncopyrightable material, because Plaintiff did not **REDACTED** ██████████████████████████████████████████, and because Epic had, and has a license to the Short Form Questionnaire.

2. Plaintiff does not plead allegations sufficient to support a claim of infringement regarding the First Seattle Angina Questionnaire.

3. To the extent the Short Form Questionnaire can be treated as a separately copyrightable derivative work for license and enforcement purposes, Dr. Spertus **REDACTED** ██████████████████████████████████████.

### SECOND AFFIRMATIVE DEFENSE
### (Lack of Standing)

4. Upon information and belief, during the period in which Plaintiff alleges that Epic infringed his alleged copyrights, **REDACTED** ████████████████████████████. As such, Plaintiff does not have standing to sue for the conduct he alleges in his Complaint.

QB\310265.00379\76009118

5.     As such, Plaintiff does not have standing to sue for the conduct he alleges in his Complaint.

### THIRD AFFIRMATIVE DEFENSE
### (Non-Infringement)

6.     Epic does not and has not infringed, under any theory of infringement, including directly or indirectly (whether contributorily or vicariously), any valid and enforceable copyright in the First Angina Questionnaire, and has not committed any acts in violation of 17 U.S.C. §§ 501 *et. seq.*

7.     Epic does not and has not infringed, under any theory of infringement, including directly or indirectly (whether contributorily or vicariously), any valid and enforceable copyright in the Second Angina Questionnaire, and has not committed any acts in violation of 17 U.S.C. §§ 501 *et. seq.*

8.     Epic does not and has not infringed, under any theory of infringement, including directly or indirectly (whether contributorily or vicariously), any valid and enforceable copyright in the Short Form Questionnaire (to the extent any right even exists), and has not committed any acts in violation of 17 U.S.C. §§ 501 *et. seq.*

### FOURTH AFFIRMATIVE DEFENSE
### (Copyright Invalidity)

9.     The alleged copyright protected questionnaire(s) asserted against Epic in the Complaint are invalid for failure to satisfy one or more of the requirements set forth in 17 U.S.C. § 102, *et seq.*, including under the merger doctrine and under the doctrine of *scènes à faire*.

10.     The First and Second Seattle Angina Questionnaires contain a set of basic formulaic and functional questions representing fundamental base level ideas or procedures for collecting information regarding a patient's angina condition. The First and Second Seattle Angina

22

Questionnaires therefore merely contain Dr. Spertus' attempt to copyright medical ideas, namely the method to collect information concerning a patient's angina condition, which is not a copyright eligible expression under 17 U.S.C. § 102(b).

11.     Moreover, the asserted Questionnaires are not original works and/or contain questions from pre-existing works. Indeed, by Dr. Spertus' own admission, the expression(s) contained within the questionnaires are essential to the idea(s) presented within the Questionnaires—collecting basic information for a medical condition—and, based on other available public questionnaires and methods, there are very few ways of expressing the medical idea(s) or scientific principals represented in the Questionnaires. The Questionnaires are therefore invalid, including under the merger doctrine.

### FIFTH AFFIRMATIVE DEFENSE
### (Copyright Misuse)

12.     Prior to the period in which Dr. Spertus alleges Epic infringed the copyright in the Short Form Questionnaire, Dr. Spertus **REDACTED**

13.     During the period in which Plaintiff alleges that Epic infringed the copyright in the Short Form Questionnaire, Dr. Spertus was not **REDACTED**. During the period Dr. Spertus attempted to sell to Epic a license to the Short Form Questionnaire, Dr. Spertus did not **REDACTED**

14. Dr. Spertus has leveraged, and continues to leverage, alleged rights granted by the Copyright Act to assert and/or attempt to sell rights to the Short Form Questionnaire—**REDACTE** ████████████████████

15. During the period that Dr. Spertus accused Epic of copyright infringement and attempted to license the Short Form Questionnaire to Epic, Dr. Spertus knew he did not **REDA** ████████████████████████████████████████████ ████████████████████████████

16. Prior to filing this instant lawsuit against Epic, Dr. Spertus demanded the American Heart Association transfer back to Dr. Spertus the rights and copyright to the Short Form Questionnaire he assigned and transferred to the American Heart Association.

17. The American Heart Association refused to transfer such rights back specifically because it had already transferred rights to Wolters Kluwer which had granted rights to Epic.

18. Dr. Spertus **REDACTED** ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████, just nine days later, Dr. Spertus filed the Complaint accusing Epic of infringement without disclosing any of its dealings **REDACTED** ████████████

19. Upon information and belief, despite Dr. Spertus **REDACTED** ████████████ ████████████████████████████████████████████ ████████, Dr. Spertus, directly or indirectly through entities he owned and controlled, marketed

QB\310265.00379\76009118

and sold licenses to the Short Form Questionnaire to hospitals and healthcare organizations and received royalties **REDACTED**▮.

20.     Plaintiff's Complaint is barred in whole or in part on the grounds that Dr. Spertus misused his copyright in violation of antitrust law and public policy by attempting to assert and license rights **REDACTED**▮▮ by licensing the Short Form Questionnaire to third parties for substantial fees and by repeatedly attempting to license the Short Form Questionnaire to Epic, including after threatening litigation for Epic's alleged use of the Short Form Questionnaire.

### SIXTH AFFIRMATIVE DEFENSE
### (License)

21.     Plaintiff fails to state a claim upon which relief can be granted because, *inter alia*, Epic possessed a valid license from a licensee of the owner of the copyright in the Short Form Questionnaire during the period in which Plaintiff alleges Epic infringed the Short Form Questionnaire.

### SEVENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

22.     Epic's alleged infringing conduct occurred more than three years before the commencement of this action. Plaintiff's claim for copyright infringement is therefore barred in whole or in part by Section 507(b) of the Copyright Act (17 U.S.C. § 507(b)) precluding claims commenced more than three years after the claim accrues.

QB\310265.00379\76009118

## EIGHTH AFFIRMATIVE DEFENSE
### (Waiver, Acquiescence, Estoppel)

23.     Plaintiff's claims are barred, in whole or in part, by equitable doctrines including the doctrines of waiver, acquiescence, unclean hands, and/or equitable estoppel.

## NINTH AFFIRMATIVE DEFENSE
### (No Willfulness)

24.     Plaintiff has failed to plead facts that allege willful conduct on Epic's part. Epic's alleged actions cannot show willfulness, including because Epic obtained a valid license from a licensee of the owner of the copyright in the Short Form Questionnaire.

## TENTH AFFIRMATIVE DEFENSE
### (Innocent Infringement)

25.     Any recovery of statutory damages claimed by Plaintiff should be reduced because Epic was not aware and had no reason to believe that any of its alleged acts constituted an infringement of copyright, as Epic reasonably believed it had properly licensed the Short Form Questionnaire.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

26.     Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

27.     Dr. Spertus **REDACTED**

28.     Following **REDACTED**

, which in turn granted Epic a perpetual license to use the Short Form Questionnaire.

26

29. During the period that Dr. Spertus accused Epic of copyright infringement and attempted to license the Short Form Questionnaire to Epic, Dr. Spertus knew **REDACTED**

████████████████████████████████████████████████

█████████████████████████████████

30. Despite Dr. Spertus' knowledge, Dr. Spertus persisted in leveraging alleged rights granted by the Copyright Act to assert and/or attempt to sell rights to the Short Form Questionnaire—**REDACTED**.

**TWELFTH AFFIRMATIVE DEFENSE**
**(Statutory Damages and/or Attorneys' Fees Unavailable)**

31. Without admitting or accepting any of Plaintiff's allegations as true or that Epic is liable for any claim of infringement by Plaintiff, Plaintiff's claims are not subject to and do not merit an award of statutory damages or attorneys' fees.

32. Plaintiff alleges Epic infringes Plaintiff's purported copyright in or to the Short Form Questionnaire.

33. The Short Form Questionnaire is not registered under the Copyright Act.

34. Plaintiff cannot collect statutory damages or attorneys' fees for purported infringements occurring before a work is registered.

**ADDITIONAL AFFIRMATIVE DEFENSES**

35. Epic reserves the right to assert additional defenses based on information learned or obtained during discovery.

QB\310265.00379\76009118

## EPIC'S COUNTERCLAIMS

Defendant/Counterclaimant Epic Systems Corporation ("Epic"), as its Counterclaims against Plaintiff/Counterclaim Defendant John A. Spertus, M.D. ("Spertus"), alleges as follows based on Epic's knowledge as to its own activities, and upon information and belief as to the activities of others:

### Nature of Action & Relief Sought

1.     This Court has jurisdiction over the subject matter of Epic's claims under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and pursuant to 28 U.S.C. §§ 1331 and 1338.

2.     This Court may declare the rights and other legal relations of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, because this case presents a case of actual controversy within this Court's jurisdiction.

3.     This Court also has jurisdiction over the subject matter of Epic's claims pursuant to 28 U.S.C. § 1332 as Epic and Dr. Spertus are citizens of different states and the amount in controversy exceeds $75,000.00.

4.     This Court has supplemental jurisdiction over the asserted state law claims under 28 U.S.C. § 1367(a).

5.     Venue is proper in this Court pursuant at least to 28 U.S.C. §§ 1391, 1400(a).  Epic is incorporated under the laws of Wisconsin and maintains its principal place of business in Verona, Wisconsin.

6.     This Court has personal jurisdiction over Dr. Spertus pursuant to the Western District of Missouri's Order granting Epic's Motion to Transfer Case (Dkt. 40) and because Dr. Spertus directed his efforts and accusations against Epic causing injury to Epic while Epic was located in this District. Dr. Spertus alleged Epic infringed certain purported copyrights held by Dr.

28

Spertus and subsequently engaged in communications and negotiations with Epic concerning Dr. Spertus' purported copyrights in or to the Seattle Angina Questionnaire(s).

7.      This is further an action arising from Dr. Spertus' conduct which has harmed Epic. This conduct includes Dr. Spertus pressuring and demanding Epic pay for alleged rights to questionnaire(s) Epic already had a license to use and for which Dr. Spertus did not own the rights, title, interest, or copyright to at the time of Dr. Spertus' representations to Epic.

8.      This is an action to declare Epic does not infringe any validly held copyrights owned by Dr. Spertus. This is also an action to declare the Questionnaires are not subject to copyright protection and/or that Dr. Spertus does not, or at the time of the relevant allegations, did not hold legal right, title, or interest to any copyright in the Questionnaires.

9.      Additionally, this is an action to declare that Dr. Spertus' actions constitute Copyright Misuse, and/or Unfair Trade Practice to the detriment and harm of Epic.

10.     Dr. Spertus has engaged in intentional conduct that has harmed Epic.

11.     Epic has been injured by Dr. Spertus' conduct and has suffered damages resulting therefrom in an amount greater than $75,000.00.

**The Parties & The Short Form Questionnaire (SAQ-7)**

12.     Upon information and belief, Dr. Spertus is a cardiologist who resides in Kansas City, Missouri.

13.     Epic is a healthcare information technology company that develops software for the healthcare industry, including for hospitals, medical groups, integrated healthcare organizations, and payors.

14.     Epic's primary software offerings are EpicCare Inpatient and EpicCare Ambulatory, which are electronic health records ("EHR") software offered for acute care facilities

29

and outpatient clinics, respectively. Epic also offers a number of specialty modules that its customers can choose to separately license.

15. Epic's EHR software is highly configurable, and each customer organization determines for itself how to configure their local systems based on their clinical and operational protocols. The software also includes general purpose tools that enable customer organizations to create their own content to use in their local deployment of Epic software, commonly referred to as an "instance." Examples of this content include questionnaires, after-visit summaries, clinical calculators, or template letters. Customers may also license content from third parties to use in their local instance. Each customer organization determines for itself the content it uses in its instance of Epic software.

16. In addition to the EHR software it licenses, Epic also offers some items of content for its customers to consider building in their instance of Epic in what is called the "Foundation System." To the extent that rights to this content belong to a third-party, Epic obtains rights to use the content in its software or in the Foundation System before it begins development.

17. In July 2016, Epic obtained a license from Wolters Kluwer Health to use and reproduce the contents of an article titled *Development and Validation of a Short Version of the Seattle Angina Questionnaire* (the "Article").

18. In or around February 2019, Epic added to the Foundation System a copy of a questionnaire that was the subject of—and was copied in—the Article.

19. Previously, REDACTED , Dr. Spertus REDACTED

30

QB\310265.00379\76009118

**REDACTED**

20.     When Dr. Spertus **REDACTED**

21.     On September 24, 2014, the AHA published the Article purportedly authored by Dr. Spertus, Paul S. Chan, MD, MSc, Philip G. Jones, MS, and Suzanne A. Arnold, MD in the AHA journal *Circulation: Cardiovascular Quality and Outcomes.*

22.     The Article concerned the Questionnaire referred to in the Complaint as the Short Form Questionnaire, also known as SAQ-7.  Indeed, the Article contained a copy of the Short Form Questionnaire as a Figure on page 644 of the AHA Journal.

23.     **REDACTED**

**REDACTED**

## Epic's License to Use The Short Form Questionnaire

24.     On July 22, 2016, Epic purchased a perpetual license to the Article, including the Figure containing the Short Form Questionnaire, from WKH through its agent Copyright Clearance Center's ("CCC") RightsLink platform (the "Epic License" or "Epic's License").

25.     Epic's License is dated July 22, 2016 and remains in full force and effect.

26.     Epic's License from WKH granted Epic the right to use and reproduce "The Seattle Angina Questionnaire-7" at page 644 of the Journal in Epic's software for use with the hundreds of healthcare organizations using that software. That is the "Short Form Questionnaire" at issue in this litigation.

27.     WKH **REDACTED**

## Dr. Spertus' Copyright Misuse & Presence of an Actual Controversy

28.     **REDACTED**

Dr. Spertus' attorney, Carl Covert, contacted Epic alleging Epic infringed Dr. Spertus' alleged copyright based on Epic's alleged use of the Short Form Questionnaire.

29.     Epic responded to Mr. Covert informing him that Epic had a license to use the Short Form Questionnaire through WKH.

30.     In June of 2021, Dr. Spertus' attorney again contacted Epic alleging Epic should obtain a license from Dr. Spertus to use the Short Form Questionnaire in Epic's software.  Epic

responded noting that Epic's License with WKH contemplated and covered Epic's use of the Short

Form Questionnaire in Epic's software.

31. Meanwhile, **REDACTED**

32. **REDACTED**

33. **REDACTED**

34. **REDACTED**

35. **REDACTED**

**REDACTED**

36. **REDACTED**

37. **REDACTED**

38. On March 16, 2022, **REDACTED** Dr. Spertus filed the instant lawsuit against Epic in the Western District of Missouri.

39. Despite Dr. Spertus' multiple representations in 2019, 2020, and 2021, **REDACTED**

40. Despite Dr. Spertus **REDACTED** , and being notified of Epic's license from WKH in or around September 2019, Dr. Spertus continued to represent to Epic **REDACTED**

41. **REDACTED**

42. Dr. Spertus, **REDACTED** , also understood that he **REDACTED**

43. **REDACTED**

44. **REDACTED**

**REDACTED** , Dr. Spertus persisted in attempting to solicit money from Epic for using those rights and filing and prosecuting this lawsuit alleging Epic infringed Dr. Spertus' copyright.

## FIRST COUNTERCLAIM
### (Copyright Misuse)

45. Epic re-alleges and incorporates by reference all of the preceding counterclaim paragraphs as if fully set forth herein.

46. Upon information and belief, during the period in which Dr. Spertus alleges that Epic infringed the copyright in the Short Form Questionnaire, **REDACTED**

47. In or around August 2016, Dr. Spertus attempted to sell a copyright license, **RED**

48.     In or around August 2019, Dr. Spertus' attorney sent a letter to Epic alleging infringement of the Short Form Questionnaire, after which Dr. Spertus attempted to use the threat of litigation to sell a copyright license for the Short Form Questionnaire to Epic, **REDACTED**
███████████████████████████████████.

49.     Upon information and belief, between June 24, 2014 and March 8, 2022, Dr. Spertus has offered to sell, and has sold, copyright licenses for the Short Form Questionnaire to numerous hospital systems, universities, and other third parties for substantial licensing fees. During this period Dr. Spertus **REDACTED**
█████████████████████████████████████████████.

50.     Dr. Spertus was and is aware of Epic's prior license to use the Short Form Questionnaire and that **REDACTED**
███████████████████████████ Dr. Spertus' therefore did not have any right or standing to demand Epic enter into a license for material Epic already possessed a valid license to. Dr. Spertus' copyright misuse is therefore willful and malicious.

51.     Based on Epic's licensed rights to use the Short Form Questionnaire, Dr. Spertus' copyright infringement claims against Epic are meritless.

52.     Dr. Spertus has leveraged, and continues to leverage, alleged rights granted by the Copyright Act to assert and/or attempt to sell rights to the Short Form Questionnaire—**REDACTE**
███████████████.

53.     Dr. Spertus uses any copyright he may possess in or to any of the Questionnaires in a manner that is anticompetitive, contrary to public policy, and in contravention of the limited rights afforded under the Copyright Act.

54.     Dr. Spertus attempted to negotiate with Epic and then filed the instant lawsuit against Epic in an inequitable attempt to expand Dr. Spertus' purported copyright in or to any of the Questionnaires, in a manner that is anticompetitive and contrary to public policy, constitutes copyright misuse.

55.     Epic is entitled to relief for the harm Epic has suffered as a result of Dr. Spertus' copyright misuse, including (i) Epic's costs and attorneys' fees incurred in responding to Dr. Spertus' actions, misuse, and meritless claims and (ii) any such relief the court deems proper to discourage such conduct in the future.

## SECOND COUNTERCLAIM
### (Declaration of Non-Infringement)

56.     Epic re-alleges and incorporates by reference all of the preceding counterclaim paragraphs as if fully set forth herein.

57.     Dr. Spertus alleges that Epic directly, contributorily, and vicariously infringes Dr. Spertus' copyright in the First and/or Second Seattle Angina Questionnaires.

58.     Epic has not and does not infringe Dr. Spertus' copyright directly, contributorily, or vicariously. Specifically, Epic had and has a perpetual license to use the Short Form Questionnaire, which originates from **REDACTED**

59.     An actual and justifiable controversy requiring declaratory relief exists between Dr. Spertus and Epic as evidenced by Dr. Spertus filing the instant lawsuit against Epic alleging copyright infringement.

60.     Epic is entitled to a judgment declaring Epic does not infringe any copyright held by Dr. Spertus to any form or version of the Seattle Angina Questionnaire.

61.     A judicial declaration is necessary and appropriate so Epic may ascertain its rights regarding the Short Form Questionnaire.

## THIRD COUNTERCLAIM
### (Declaration of Copyright Invalidity)

62.     Epic re-alleges and incorporates by reference all of the preceding counterclaim paragraphs as if fully set forth herein.

63.     The alleged copyright protected questionnaire(s) asserted against Epic in the Complaint are invalid for failure to satisfy one or more of the requirements set forth in 17 U.S.C. § 102, *et seq*.

64.     The First and Second Seattle Angina Questionnaires contain a set of basic formulaic and functional questions representing fundamental base level ideas or procedures for collecting information regarding a patient's angina condition.

65.     The First and Second Seattle Angina Questionnaires merely contain Dr. Spertus' attempt to copyright medical ideas, namely the method to collect information concerning a patient's angina condition, which is not a copyright eligible expression under 17 U.S.C. § 102(b).

66.     By Dr. Spertus' own admission, the expression(s) contained within the questionnaires are essential to the idea(s) presented within the Questionnaires—collecting basic information for a medical condition—and, based on other available public questionnaires and methods, there are very few ways of expressing the medical idea(s) or scientific principals represented in the Questionnaires.  The Questionnaires are therefore invalid under the merger doctrine.

67.     The First and Second Seattle Angina Questionnaires are also invalid under the doctrine of *scènes à faire* because the idea or method of collecting information on a patient's

38

condition represented in the Questionnaires is only capable of expression in more or less stereotyped form.

68. By Dr. Spertus' own admission, there are not different ways he could have expressed the information within the Questionnaires and still have them work.

69. The manner in which Dr. Spertus expressed the questions in the Questionnaires was dictated by the medical and scientific limitations associated with angina.

70. Additionally, the information contained within both the First and Second Seattle Angina Questionnaires contains scientific and/or medical observations relating to angina, which are not invented or created; rather they already existed and are merely observed, discovered, or recorded within the Questionnaires. Such discoveries do not give rise to copyright protection.

71. Dr. Spertus did not create the medical reality observed or noted in the Questionnaires, which exist as a law of nature or science.

72. For one or more of the foregoing reasons supporting the invalidity of the First and Second Seattle Angina Questionnaires, the Short Form Questionnaire (SAQ-7) is equally invalid because it is merely a verbatim selection of several questions from the Second Questionnaire. The Short Form Questionnaire contains a subset of seven questions found in the Second Questionnaire, which represent basic ideas or procedures for collecting medical information.

73. Dr. Spertus admits the Short Form Questionnaire or SAQ-7 is verbatim derived from the Second Seattle Angina Questionnaire and contains the bare minimum of questions necessary. The Short Form Questionnaire is therefore invalid, including under the doctrine of *scènes à faire*, because the questions contained within the Short Form Questionnaire are capable of expression in more or less stereotyped form—the form depicted in the Short Form Questionnaire.

74.     The Short Form Questionnaire is further invalid under the merger doctrine as it applies to the "fact-expression dichotomy" codified in 17 U.S.C. § 102(b).

75.     The questions in the Short Form Questionnaire are taken entirely from the Second Seattle Angina Questionnaire and admittedly are "reproduced verbatim with no changes."

76.     The only way for Dr. Spertus to have created the Short Form Questionnaire was to take the elements and/or ideas from the Second Seattle Angina Questionnaire and express them in the verbatim manner they are expressed in the Short Form Questionnaire as claimed by Dr. Spertus.

77.     There is only one possible way of expressing the content of the Second Seattle Angina Questionnaire in the Short Form Questionnaire.

78.     Copyrighting the Short Form Questionnaire would therefore be an impermissible copyrighting of the ideas expressed in the Second Seattle Angina Questionnaire.

79.     An actual and justiciable controversy requiring declaratory relief exists between Plaintiff and Epic as evidenced by Plaintiff's filing of the Complaint alleging copyright infringement against Epic.

### FOURTH COUNTERCLAIM
**(Unfair Trade Practices, Wis. Stat. § 100.20)**

80.     Epic re-alleges and incorporates by reference all of the preceding counterclaim paragraphs as if fully set forth herein.

81.     During the period in which Plaintiff alleges that Epic infringed the copyright in the Short Form Questionnaire, **REDACTED**

82.     **REDACTED**

40

83.     In or around August 2016, Dr. Spertus attempted to sell to Epic a copyright license to the Short Form Questionnaire, **REDACTED**

84.     In or around August 2019, Dr. Spertus' attorney sent a letter to Epic alleging infringement of the Short Form Questionnaire, after which Dr. Spertus attempted to use the threat of litigation to sell a copyright license for the Short Form Questionnaire to Epic, **REDACTED**

85.     In 2016, 2019, and 2020, Dr. Spertus represented to Epic that Dr. Spertus had the right to license the Short Form Questionnaire to Epic. Dr. Spertus engaged in his representations to Epic to induce Epic to enter into a license to the Short Form Questionnaire from Dr. Spertus.

86.     Despite **REDACTED** , and being notified of Epic's license from WKH in or around September 2019, Dr. Spertus continued to represent to Epic that he **REDACTED** held the rights to the Short Form Questionnaire.

87.     Pursuant to Wis. Stat. § 100.20, Dr. Spertus engaged in unfair trade practices by attempting to cause Epic to believe that Epic (i) was infringing valid copyright interests in the Short Form Questionnaire owned by Dr. Spertus and/or (ii) that Dr. Spertus owned a valid copyright interest in the Short Form Questionnaire that Epic could and/or had to license from Dr. Spertus.

88.     Epic has been and continues to be harmed by Dr. Spertus' unfair trade practices.

## **JURY DEMAND**

Epic hereby demands a trial by jury on all issues so triable.

QB\310265.00379\76009118

## PRAYER FOR RELIEF

WHEREFORE, Epic prays for an order entering judgment as follows:

(a)     Dismissal of Dr. Spertus' Complaint with prejudice;

(b)     Judgment declaring that Dr. Spertus' actions constitute Copyright Misuse;

(c)     Judgment declaring that Epic has not and does not infringe any valid enforceable copyright of Dr. Spertus;

(d)     Judgement declaring any alleged copyright owned or held by Dr. Spertus and asserted against Epic is invalid;

(e)     Judgment declaring Dr. Spertus' actions and/or statements constitute Fraudulent Representations under Wis. Stat. § 100.18;

(f)     Judgment declaring Dr. Spertus' actions and/or statements constitute Negligent Representations under Wisconsin common law;

(g)     Judgment declaring Dr. Spertus' actions and/or statements constitute Unfair Trade Practices under Wis. Stat. § 100.20;

(h)     Award of damages to Epic resulting from Epic's Counterclaims;

(i)     Judgment awarding Epic its reasonable costs and attorneys' fees in connection with this matter, including pursuant to 17 U.S.C. § 505; and

(j)     Such other and further relief as this Court deems just and proper.

QB\310265.00379\76009118

Dated:  October 19, 2022.   Respectfully submitted,

QUARLES & BRADY LLP

*/s/ Kristin Graham Noel*
Kristin Graham Noel
Matthew J. Duchemin
Bryce A. Loken
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 251-5000
Fax: (608) 251-9166
kristin.noel@quarles.com
matthew.duchemin@quarles.com
bryce.loken@quarles.com

*Counsel for Defendant Epic Systems Corporation*

QB\310265.00379\76009118