**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

JOHN A. SPERTUS, M.D.,

       Plaintiff,

       v.

EPIC SYSTEMS CORPORATION,

       Defendant.

Case No. 3:22-cv-00553-wmc

REDACTED

## DEFENDANT EPIC SYSTEMS CORPORATION'S
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

SUMMARY OF THE ARGUMENT ................................................................... 1

BACKGROUND ................................................................................................. 4

    I.   Epic and its Electronic Health Records Software ..................................... 4

    II.  Epic's Foundation System and Licensed Third-Party Content ................ 4

    III. Dr. Spertus and the Seattle Angina Questionnaires ............................... 5

    IV. Dr. Spertus ███████████████████████████████████ ... 9

    V.  Epic's License to Use the SAQ-7 Questionnaire ..................................... 11

    VI. Epic's Licensed Implementation of the SAQ-7 Questionnaire .............. 15

    VII. Dr. Spertus' Efforts to Separately License the SAQ-7 Questionnaire ... 16

    VIII. Dr. Spertus' ██████████████ and the Instant Lawsuit ................ 17

LEGAL STANDARD .......................................................................................... 20

ARGUMENT ....................................................................................................... 21

    I.   DR. SPERTUS' CLAIM OF INFRINGING THE "SAQ-7" COPYRIGHT OR ANY ALLEGED DERIVATIVE MUST BE DISMISSED BECAUSE NEITHER SAQ-7 NOR ANY DERIVATIVE IS REGISTERED ............ 21

    II.  THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE EPIC'S USE OF SAQ-7 WAS LICENSED. ................................................ 23

        A. ███████████████████████████████████ ...... 24

        B. ████████████████████████████████████████ ██████ ............................................................................. 26

        C. Wolters Kluwer Conveyed a License to Epic for SAQ-7 ................. 27

        D. Dr. Spertus' ██████████████████ Resolves Any Alleged Ambiguity in Favor of Epic ............................................................. 34

    III. THE SAQ QUESTIONNAIRES ARE NOT COPYRIGHTABLE .............. 36

        A. SAQ-7 is Not Entitled to a Presumption of Validity Because it is Unregistered. ..... 36

        B. SAQ-I and SAQ-II are Not Entitled to a Presumption of Validity Because They Were Registered More Than 5 Years After First Publication. ................................. 37

        C. The SAQ Questionnaires Do Not Contain Copyrightable Expression ..................... 38

        D. The Merger Doctrine Precludes Copyright Protection for the SAQ Questionnaires. 41

IV. THE COURT SHOULD DISMISS DR. SPERTUS' CLAIMS FOR ACTUAL
DAMAGES, AND DISGORGEMENT OF EPIC'S ALLEGED PROFITS BECAUSE
THOSE CLAIMS LACK SUFFICIENT EVIDENTIARY SUPPORT. ...................... 45

   A. Dr. Spertus Seeks To Recover Actual Damages and Epic's Profits. ........................ 45

   B. A Causal Connection Between The Alleged Infringement And The Remedy Sought
      Is A Predicate To Dr. Spertus' Recovery Of Damages Under 17 U.S.C. § 504(b). . 46

   C. Dr. Spertus Cannot Establish His Lost Profits as a Measure of Actual Damages in
      This Case. ................................................................................................................... 47

   D. Dr. Spertus Cannot Establish that Any of Epic's Profits were Attributable to the
      Alleged Infringement. ............................................................................................... 50

   E. If the Court Does Not Dismiss Dr. Spertus' Claim for Disgorgement Damages, It
      Should Cap Those Damages At ███████ – The Unrebutted Cap Established By
      Epic's Damages Expert. ............................................................................................ 53

V. EPIC SHOULD RECEIVE ITS REASONABLE ATTORNEY'S FEES .................... 54

   A. The Seventh Circuit Recognizes a "Very Strong Presumption" for Attorney's Fees
      for Prevailing Defendants in Copyright Suits ......................................................... 54

   B. The *Fogarty* Factors Weigh in Epic's Favor. ......................................................... 55

VI. THE COURT SHOULD DISMISS DR. SPERTUS' CLAIM FOR WILLFUL
INFRINGEMENT ................................................................................................................... 59

CONCLUSION ................................................................................................................... 60

QB\85037428.1

# TABLE OF AUTHORITIES

## Cases

*Am. Dental Ass'n v. Delta Dental Plans Ass'n*,
126 F.3d 977 (7th Cir. 1997) ................................................................ 38

*Baker v. Selden*,
101 U.S. 99 (1879) ............................................................................... 40

*Big Daddy Games, LLC v. Reel Spin Studios, LLC*,
No. 12-cv-449-bbc, 2013 WL 12233949 (W.D. Wis. Apr. 10, 2013) ............................... 36, 37

*Boehm v. Svehla*,
No. 15-CV-379-JDP, 2017 WL 4326308 (W.D. Wis. Sept. 27, 2017) ............................ 59, 60

*Brownmark Films LLC v. Comedy Partners*,
No. 10-CV-1013-JPS, 2011 WL 6002961 (E.D. Wis. Nov. 30, 2011) .................................. 57

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*,
329 F.3d 923 (7th Cir. 2003) ................................................................ 41

*Budget Cinema, Inc. v. Watertower Assocs.*,
81 F.3d 729 (7th Cir. 1996) ................................................................. 58

*Carol Barnhart Inc. v. Econ. Cover Corp.*,
773 F.2d 411 (2d Cir. 1985) ................................................................. 40

*Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*,
692 F.3d 580 (7th Cir. 2012) ................................................................ 24

*Collins v. Ralston Purina Co.*,
147 F.3d 592 (7th Cir. 1998) ................................................................ 32

*CW Invs., Inc. v. Novelty, Inc.*,
482 F.3d 910 (7th Cir. 2007) ................................................................ 22

*Datacarrier S.A. v. WOCCU Servs. Grp., Inc.*,
No. 16-cv-122-JDP, 2018 WL 3130628 (W.D. Wis. June 26, 2018) ................................... 58

*Design Basics, LLC v. Kerstiens Homes & Designs, Inc.*,
1 F.4th 502 (7th Cir. 2021) ................................................................. 54

*Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.*,
97 F.3d 377 (9th Cir. 1996) ................................................................. 50

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) .......................................................................... 49

*Fantasy, Inc. v. Fogerty*,
94 F.3d 553 (9th Cir. 1996) ................................................................. 57

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) .................................................................. 55, 58, 59

QB\85037428.1

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881, 203 L. Ed. 2d 147 (2019) ............................................. 22

*FutureSource LLC v. Reuters Ltd.*,
  312 F.3d 281 (7th Cir. 2002) ............................................................... 30

*Graham v. James*,
  144 F.3d 229 (2d Cir. 1998) ............................................................... 23

*Hickey v. A.E. Staley Mfg.*,
  995 F. 2d 1385 (7th Cir. 1993) ............................................. 24, 33, 35

*HyperQuest, Inc. v. N'Site Sols., Inc.*,
  632 F.3d 377 (7th Cir. 2011) ............................................................... 55

*I.A.E., Inc. v. Shaver*,
  74 F.3d 768 (7th Cir. 1996) ............................................. 23, 31, 32, 58

*JCW Invs., Inc. v. Novelty, Inc.*,
  509 F.3d 339 (7th Cir. 2007) ............................................................... 55

*Lambing v. Godiva Chocolatier*,
  142 F.3d 434 (6th Cir. 1998) ............................................................... 41

*Lanard Toys Ltd. v. Novelty Inc.*,
  511 F. Supp. 2d 1020 (C.D. Cal. 2007) ............................................... 50

*Landsted Homes, Inc. v. Sherman*,
  305 F. Supp. 2d 976 (W.D. Wis. 2002) ............................................... 31

*Latimer v. Roaring Toyz, Inc.*,
  601 F.3d 1224 (11th Cir. 2010) ........................................................... 22

*Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*,
  77 F.4th 630 (7th Cir. 2023) ............................................. 1, 54, 55, 58

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
  49 F.3d 807 (1st Cir. 1995),
  *aff'd* 516 U.S. 233 (1996) ................................................................... 41

*Mackie v. Rieser*,
  296 F.3d 909 (9th Cir. 2002) ............................................................... 47

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................. 20

*McRoberts Software, Inc. v. Media 100, Inc.*,
  329 F.3d 557 (7th Cir. 2003) ............................................................... 48

*Metalex Corp. v. Uniden Corp. of Am.*,
  863 F.2d 1331 (7th Cir. 1988) ............................................................. 23

*Morrissey v. Procter & Gamble Co.*,
  379 F.2d 675 (1st Cir. 1967) ........................................................ 41, 42

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*,
  526 F.3d 1093 (7th Cir. 2008) ............................................................. 55

iv

*Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*,
  264 F.3d 622 (6th Cir. 2001) ................................................................... 22

*Niazi v. Merit Med. Sys., Inc.*,
  No. 22-cv-381-JDP, 2023 WL 4198675 (W.D. Wis. June 27, 2023) ..................... 31

*PaySys Int'l, Inc. v. Atos Se*,
  226 F. Supp. 3d 206 (S.D.N.Y. 2016) ....................................................... 23

*Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*,
  No. 21-10410, 2023 WL 3454614 (11th Cir. May 15, 2023) .......................... 22

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ......................................................... 47, 48, 50

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
  383 F.3d 1303 (Fed. Cir. 2004) .............................................................. 50

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) .......................................................................... 22

*Schrock v. Learning Curve Int'l, Inc.*,
  586 F.3d 513 (7th Cir. 2009) ........................................................... 21, 36

*Seng-Tiong Ho v. Taflove*,
  648 F.3d 489 (7th Cir. 2011) ........................................................... 38, 44

*Servicios Especiales Al Comercio Exterior v. Johnson Controls, Inc.*,
  791 F. Supp. 2d 626 (E.D. Wis. 2011) ...................................................... 21

*Sides v. City of Champaign*,
  496 F.3d 820 (7th Cir. 2007) ................................................................ 21

*Sigel v. Shell Oil Co.*,
  612 F.3d 932 (7th Cir. 2010) ................................................................ 20

*State ex rel. Journal/Sentinel, Inc. v. Pleva*,
  155 Wis. 2d 704, 456 N.W.2d 359 (1990) ................................................ 30

*Strategic Digital Signage, LLC v. Ashley Home Stores, Ltd.*,
  No. 18-CV-199-WMC, 2019 WL 2369402 (W.D. Wis. June 5, 2019) ............ 20, 30

*Sullivan v. Flora, Inc.*,
  No. 15-cv-298-wmc, 2017 WL 1487624 (W.D. Wis. Apr. 25, 2017) ................... 47

*Taylor v. Meirick*,
  712 F.2d 1112 (7th Cir. 1983) ........................................................... 49, 52

*Town Bank v. City Real Est. Dev., LLC*,
  2010 WI 134, ¶ 33, 330 Wis. 2d 340, 793 N.W.2d 476 ............................... 30

*UIRC-GSA Holdings, Inc. v. William Blair & Co., LLC.*,
  No. 15 CV 9518, 2021 WL 4459530 (N.D. Ill. Sept. 29, 2021) ....................... 38

*Warth v. Seldin*,
  422 U.S. 490 (1975) .......................................................................... 49

v

*Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*,
354 F.3d 112 (2d Cir. 2003) ................................................................ 22

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
18 F.3d 502 (7th Cir. 1994) ................................................................ 38

*Wood v. Mid–Valley Inc.*,
942 F.2d 425 (7th Cir.1991) ................................................................ 30

*Woods v. Resnick*,
725 F. Supp. 2d 809 (W.D. Wis. July 16, 2010) .................................. 44

*Zalewski v. Cicero Builder Dev., Inc.*,
754 F.3d 95 (2d Cir. 2014) ................................................................ 41

**Statutes**

17 U.S.C. § 101 .................................................................................... 21, 37

17 U.S.C. § 102(b) ................................................................................ 36, 38

17 U.S.C. § 204(a) ................................................................................ 31

17 U.S.C. § 410(c) ................................................................................ 36

17 U.S.C. § 411(a) ................................................................................ 22, 36

17 U.S.C. § 504(b) ................................................................................ 46, 47

17 U.S.C. § 505 .................................................................................... 54, 55

**Other Authorities**

5 Nimmer on Copyright § 14.03 ............................................................ 53

**Rules**

Fed. R. Civ. P. 54 ................................................................................ 54

Fed. R. Civ. P. 56(a) ............................................................................ 20, 21

QB\85037428.1

# INTRODUCTION

Epic Systems Corporation seeks dismissal of the Complaint, and for an Order granting Epic its reasonable fees for having to defend this meritless copyright lawsuit. Plaintiff, Dr. John Spertus, asserted a claim of copyright infringement of questionnaires used for measuring and evaluating a patient's coronary artery disease symptoms. Dr. Spertus, a cardiologist, developed three questionnaires that he collectively refers to as "the Seattle Angina Questionnaires" ("SAQ" or "SAQ Questionnaires"), and individually as "SAQ-I," "SAQ-II" and "SAQ-7." Dr. Spertus alleges that Epic's inclusion of SAQ-7 in its electronic health records ("EHR") software infringes his copyrights. Dr. Spertus' assertions are belied by the facts and the law.

As Dr. Spertus knew before filing this lawsuit, Epic has a license to use the very work that Dr. Spertus claims his copyrights cover. Moreover, the copyrights do not meet the requirements of the Copyright Act and thus are invalid. Specifically, the work is not artistic, but functional, and fails under the merger doctrine. As the Seventh Circuit has recognized, all prevailing copyright defendants are "entitled to a very strong presumption in favor of recovering their fees." *Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630, 632 (7th Cir. 2023). This is particularly true in cases such as the one at hand where the Complaint lacks merit.

## SUMMARY OF THE ARGUMENT

Dr. Spertus' copyright claim fails for several reasons. *First*, Dr. Spertus cannot sustain a claim of copyright infringement of SAQ-7 or any alleged "derivatives" of his works for the simple reason that he did not obtain a copyright registration for them. The Copyright Act requires registration of a copyright prior to initiating a suit for infringement. Dr. Spertus has the burden to prove compliance with the statute. Dr. Spertus has only identified two registrations, for SAQ-I and SAQ-II. Any claim of copyright infringement of SAQ-7 or an unspecified derivative must be dismissed.

1

*Second,* Epic cannot be found to infringe any purported copyright covering SAQ-7 because Epic has an express, valid license to use SAQ-7 in its EHR software. Dr. Spertus coauthored an article describing the development of SAQ-7 and included SAQ-7 as a figure. In 2014, Dr. Spertus ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. In 2016, Epic purchased from Wolters Kluwer a perpetual license to use SAQ-7 in its EHR system.

When Dr. Spertus first accused Epic of infringing his alleged copyrights in 2019, Epic informed him that Epic had purchased a license from Wolters Kluwer that permitted Epic to publish SAQ-7 in its EHR. In 2021, Dr. Spertus ████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████. Dr. Spertus filed this lawsuit. ███████████████████████████████████████████████████████████████████ ████████████ Epic still has a valid license to use SAQ-7. Dr. Spertus' copyright infringement claim is meritless, and Epic is entitled to summary judgment.

*Third*, Dr. Spertus cannot prevail on his claim of copyright infringement because the Questionnaires are not copyrightable. They are mere embodiments of an idea, method, process, or procedure, and do not contain copyrightable expression. The Questionnaires were developed to achieve a specific, scientific purpose and designed to maximize their functionality. Accordingly, they are functional works and not entitled to copyright protection. In addition, the ideas embodied in the SAQ Questionnaires can only be expressed in a limited number of ways, and thus they are uncopyrightable under the merger doctrine of copyright law.

Moreover, if the Court grants Epic's Motion for Summary Judgment, it should award Epic its reasonable attorney's fees pursuant to 17 U.S.C. § 505. Epic would be a prevailing party in this case, and the Seventh Circuit recognizes a very strong presumption in favor of awarding attorney's fees to prevailing defendants in copyright suits.

Even if the Court declines to dismiss the Complaint, it should dismiss Dr. Spertus' claim for actual damages and Epic's alleged profits. Dr. Spertus cannot meet his burden to establish causation between the alleged infringement and remedy sought because no evidence establishes that he lost, or Epic made, a single sale as a result of Epic's alleged infringement. Dr. Spertus has not even offered an opinion on, or calculation of, lost profits. He has no evidence to support an award of damages.

Finally, the Court should dismiss Dr. Spertus' claim for willful infringement because there is no evidence that Epic had knowledge that its conduct represented infringement or that Epic recklessly disregarded that possibility. Rather, the evidence shows that Epic in good faith purchased a license agreement from Wolters Kluwer permitting Epic to use SAQ-7 in its EHR.

# BACKGROUND

## I. Epic and its Electronic Health Records Software

Epic is a Wisconsin corporation with its headquarters in Verona, Wisconsin. (PFF 1).[1] Epic is a healthcare information technology company that develops software for the healthcare industry, including for hospitals, medical groups, and integrated healthcare organizations. (PFF 2). Epic's primary software offerings are EpicCare Inpatient and EpicCare Ambulatory, which are electronic health records software offered for acute care facilities and outpatient clinics, respectively. (PFF 3-5, 8-10). Epic also offers MyChart to its customers. (PFF 6). Epic MyChart allows patients to view medications, test results, upcoming appointments, medical bills, price estimates for treatment, complete pre-visit questionnaires, chat with providers, and more. (PFF 7).

## II. Epic's Foundation System and Licensed Third-Party Content

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

[1] Epic's Proposed Findings of Fact are filed concurrently herewith and are referenced herein by "PFF."

QB\85037428.1

[redacted]

## III. Dr. Spertus and the Seattle Angina Questionnaires

Dr. Spertus is a cardiologist who maintains a clinical practice in Kansas City, Missouri. (PFF 22). Dr. Spertus is a co-inventor of a patented angina-focused medical diagnostic system for measuring health status in patients with coronary artery disease. (PFF 23). Related to the patented diagnostic system, Dr. Spertus is the claimed author of a series of three questionnaires used to assist healthcare providers measure and evaluate a patient's coronary artery disease progression and treatment. (PFF 24). Dr. Spertus refers to these three questionnaires as the "Seattle Angina Questionnaire(s)" or the "SAQs" (PFF 25). Overall, the Seattle Angina Questionnaires are used to measure outcomes in clinical trials and are endorsed by some in the medical community as a performance measure for assessing the quality of coronary artery disease care. (PFF 26). In particular, the Seattle Angina Questionnaires measure five dimensions of coronary artery disease: physical limitation, anginal stability, anginal frequency, treatment satisfaction, and disease perception. (PFF 27). [redacted]

[redacted]

In 1992, Dr. Spertus began working on the Seattle Angina Questionnaire, also known as SAQ-I. (PFF 29). The SAQ-I Questionnaire is a 19-item, self-administered questionnaire taken by patients with coronary artery disease. (PFF 30). SAQ-I results in five scales that measure clinically important aspects of a patient's coronary disease. (PFF 31). █████████████████████████████████████████████████████████████████████████████████████████████████████████████ ████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████ While not part of the SAQ-I Questionnaire itself, Dr. Spertus also developed a scoring system that assigns numerical values to patients' responses and calculates a total score. (PFF 34). ██████████████████████████ ████████████████████████████████████████

Shortly after developing the SAQ-I Questionnaire, Dr. Spertus began intensively researching the efficacy of the SAQ-I Questionnaire, including to test the psychometric properties of the questionnaire—namely its validity, reliability, and responsiveness. (PFF 35). In 1996, based on the results of this research, Dr. Spertus created the Second Seattle Angina Questionnaire, also known as SAQ-II, by modifying the SAQ-I Questionnaire. (PFF 36). The SAQ-II Questionnaire contains 11 questions concerning a patient's angina symptoms and their feelings about their angina symptoms. (PFF 37). For example, the first question in the SAQ-II Questionnaire list nine everyday activities, such as showering or dressing, and asks the patient to indicate the level of limitation in each activity due to angina. (PFF 38). Possible responses range from "Severely Limited" to "Not Limited." (PFF 38). The remaining questions in the SAQ-II Questionnaire likewise ask the patient to provide basic information regarding the patient's illness, such as frequency and severity of different angina symptoms. (PFF 39).

Dr. Spertus conducted additional rigorous testing and studies to ensure the SAQ-II Questionnaire's clinical validity, reliability, and responsiveness. (PFF 40). According to Dr. Spertus, the SAQ-II Questionnaire resulted in a more clinically reliable and valid measure of a patient's coronary disease and thus proved to be a superior medical instrument over the SAQ-I Questionnaire. (PFF 41). As such, Dr. Spertus worked to facilitate the translation of the SAQ-II Questionnaire into other languages and cultures. (PFF 42). ████████████████ ██████████████████████████████████████████████████████ ████████████████████

In the mid-2000s, Dr. Spertus began working on a shorter version of the SAQ-II Questionnaire to make the instrument more feasible for use in routine clinical care. (PFF 44). Dr. Spertus developed a 7-item version of the SAQ-II Questionnaire that maintained the rigorous clinical validity, reliability, and responsiveness of the full version. (PFF 45). Dr. Spertus named this shortened questionnaire SAQ-7. (PFF 46).

The SAQ-7 Questionnaire contains seven questions taken from the SAQ-II Questionnaire. (PFF 47). It is replicated below.

### The Seattle Angina Questionnaire-7

1. The following is a list of activities that people often do during the week. Although for some people with several medical problems it is difficult to determine what it is that limits them, please go over the activities listed below and indicate how much limitation you have had **due to chest pain, chest tightness or angina** <u>over the past 4 weeks</u>.

Place an X in one box on each line.

| Activity | Extremely limited | Quite a bit limited | Moderately Limited | Slightly limited | Not at all limited | Limited for other reasons or did not do the activity |
|---|---|---|---|---|---|---|
| Walking indoors on level ground | ❑ | ❑ | ❑ | ❑ | ❑ | ❑ |
| Gardening, vacuuming or carrying groceries | ❑ | ❑ | ❑ | ❑ | ❑ | ❑ |
| Lifting or moving heavy objects (e.g. furniture, children) | ❑ | ❑ | ❑ | ❑ | ❑ | ❑ |

2. Over the <u>past 4 weeks</u>, on average, how many times have you had **chest pain, chest tightness or angina**?

I have had **chest pain, chest tightness or angina…**

| 4 or more times per day | 1-3 times per day | 3 or more times per week but not every day | 1-2 times per week | Less than once a week | None over the past 4 weeks |
|---|---|---|---|---|---|
| ❑ | ❑ | ❑ | ❑ | ❑ | ❑ |

3. Over the <u>past 4 weeks</u>, on average, how many times have you had to take nitroglycerin (nitroglycerin tablets or spray) for your **chest pain, chest tightness or angina**?

I have taken nitroglycerin…

| 4 or more times per day | 1-3 times per day | 3 or more times per week but not every day | 1-2 times per week | Less than once a week | None over the past 4 weeks |
|---|---|---|---|---|---|
| ❑ | ❑ | ❑ | ❑ | ❑ | ❑ |

4. Over the <u>past 4 weeks</u>, how much has your **chest pain, chest tightness or angina** limited your enjoyment of life?

| It has **extremely** limited my enjoyment of life | It has limited my enjoyment of life **quite a bit** | It has **moderately** limited my enjoyment of life | It has **slightly** limited my enjoyment of life | It has **not** limited my enjoyment of life at all |
|---|---|---|---|---|
| ❑ | ❑ | ❑ | ❑ | ❑ |

5. If you had to spend the rest of your life with your **chest pain, chest tightness or angina** the way it is right now, how would you feel about this?

| Not satisfied at all | Mostly dissatisfied | Somewhat satisfied | Mostly satisfied | Completely satisfied |
|---|---|---|---|---|
| ❑ | ❑ | ❑ | ❑ | ❑ |

(PFF 48). Question 1 of the SAQ-7 Questionnaire contains identical instructions and answer categories to Question 1 of the SAQ-II Questionnaire, but contains only a subset of the activities contained in the SAQ-II Questionnaire. (PFF 49-50). The remaining six questions of the SAQ-7 Questionnaire are identical to the corresponding questions in the SAQ-II Questionnaire. (PFF 51-55).

8

Dr. Spertus has written numerous articles detailing his efforts to validate the clinical effectiveness of the Seattle Angina Questionnaires and extoling the clinical effectiveness of the respective questionnaires. (PFF 56). SAQ-I was published at least as early as 1995 in an article titled *Development and Evaluation of the Seattle Angina Questionnaire: A New Functional Status Measure for Coronary Artery Disease*, which appeared in the Journal of the American College of Cardiology. (PFF 57). SAQ-II was published at least as early as 1998, █████████████████ ██████████████████████████████

SAQ-7 was first published in 2014 in an article titled *Development and Validation of a Short Version of the Seattle Angina Questionnaire*, which appeared in the American Heart Association's journal Cardiovascular Quality and Outcomes. (PFF 59, 73). SAQ-7 was included in the article verbatim as Figure 1, the only figure in the Article. (PFF 74-75).

In 2005, more than five years after publication, Dr. Spertus applied for and received copyright registrations for both the SAQ-I Questionnaire and the SAQ-II Questionnaire. (PFF 60-65). He did not disclose the prior publications to the Copyright Office, contrary to the Copyright Act, 17 U.S.C. § 409(B). (PFF 66). Dr. Spertus has not applied for copyright registration in connection with the SAQ-7 Questionnaire. (PFF 67).

**IV.     Dr. Spertus** ████████████████████████████████████████

In connection with the 2014 Article publishing the SAQ-7 Questionnaire, Dr. Spertus

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



QB\85037428.1

**V. Epic's License to Use the SAQ-7 Questionnaire**

Epic then acquired from Wolters Kluwer a perpetual license to use SAQ-7 in its EHR software for ████ . (PFF 120). ████████████████████████████████



QB\85037428.1



QB\85037428.1



QB\85037428.1

On July 22, 2016, Epic's License Agreement with Wolters Kluwer was assigned License No. ████████████████████████████████████████████ the License Agreement granted Epic a ████████████ perpetual license to reproduce the SAQ-7 Questionnaire contained as Figure 1 in the Article in Epic's EMR software. (PFF 121). ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

## VI. Epic's Licensed Implementation of the SAQ-7 Questionnaire

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

## VII. Dr. Spertus' Efforts to Separately License the SAQ-7 Questionnaire

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

In August 2019, Dr. Spertus was aware that Epic received a license to reproduce the SAQ-7 Questionnaire in Epic's EHR software. (PFF 143). ███████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████ Subsequently, on September 12, 2019, ████████

████████████████████████████████ Mr. Covert contacted Epic to allege Epic was infringing Dr. Spertus' copyright in SAQ-7. (PFF 145). On September 20, 2019, Epic responded to Mr. Covert and advised that Epic had purchased a license from Wolters Kluwer that allowed Epic to reproduce the SAQ-7 Questionnaire in an electronic format. (PFF 146).

16

On May 5, 2021, Mr. Covert contacted Epic again to allege Epic's use of the SAQ-7 Questionnaire infringed Dr. Spertus' copyrights and accused Epic of ███████████ ████████████████████████████████████████ Epic responded on May 17, 2021 and reminded Mr. Covert of its August 2019 communication (*i.e.*, that it had a license to use SAQ-7) and stated that Epic ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

**VIII.   Dr. Spertus' ████████████████ and the Instant Lawsuit**

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



(PFF 171-172).



On March 16, 2022, ████████████████████████████████████████

████████████ Dr. Spertus filed the instant lawsuit against Epic alleging Epic's use of the SAQ-7 Questionnaire infringed Dr. Spertus' copyrights. (PFF 185).

## LEGAL STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). For the party with the burden of proof in particular, "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit." *Strategic Digital Signage, LLC v. Ashley Home Stores, Ltd.*, No. 18-CV-199-WMC, 2019 WL 2369402, *3 (W.D. Wis. June 5, 2019) (Conley, J.) (citing *Sigel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)) (internal quotations omitted). The responding party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "[a] genuine issue of material

20

fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return

a verdict for that party." *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007).

Rule 56 authorizes the entry of partial summary judgment on a claim or defense, or any

"part" of a claim or defense. *See* Fed. R. Civ. P. 56(a); *see also Servicios Especiales Al Comercio*

*Exterior v. Johnson Controls, Inc.*, 791 F. Supp. 2d 626, 631-32 (E.D. Wis. 2011).

## ARGUMENT

## I. DR. SPERTUS' CLAIM OF INFRINGING THE "SAQ-7" COPYRIGHT OR ANY ALLEGED DERIVATIVE MUST BE DISMISSED BECAUSE NEITHER SAQ-7 NOR ANY DERIVATIVE IS REGISTERED

In his Complaint, Dr. Spertus accuses Epic of infringing his "copyrights" in SAQ-7. (PFF

186-187). While he does not allege that SAQ-7 is a derivative of the SAQ-I or SAQ-II copyrights

(nor could he, as SAQ-7 does not add any material), he alleges infringement of "the works" or

"derivatives of Dr. Spertus' protected work."[2] (PFF 188). He alleges he has registrations for SAQ-

I and SAQ-II but makes no such representation with respect to SAQ-7 or any unspecified

derivatives.

The Court should dismiss Dr. Spertus' claim of infringement of the "SAQ-7" copyright

and any undisclosed "derivative" copyright because neither have been registered. To succeed on a

claim of copyright infringement, Dr. Spertus must prove two elements: (1) ownership of a valid

---

[2] Nor could SAQ-7 be considered a "derivative". The Copyright Act defines "derivative work" as "a work based upon one or more preexisting works," and, for a work consisting of editorial revisions, such modifications must "as a whole, represent an original work of authorship []." 17 U.S.C. § 101. "[T]he key inquiry is whether there is sufficient nontrivial expressive variation in the derivative work to make it distinguishable from the underlying work in some meaningful way." *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 520-21 (7th Cir. 2009). Here, Dr. Spertus admits that SAQ-7 is "composed entirely of a subset of the elements of the Second Angina Questionnaire, reproduced verbatim with no changes." (PFF 49-55). Dr. Spertus' article describing the development of SAQ-7 explains that the need for scientific accuracy is what guided the selection of questions. (PFF 246-252). Thus, as copyright expert Dr. Depoorter testified, "[t]his lack of independent and non-trivial variation from the Second Angina Questionnaire prevents [SAQ-7] from any protection as a derivative work." (PFF 265).

copyright, and (2) copying of constituent elements of the work that are original. *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). To prove he has a valid copyright, Dr. Spertus must first prove that his work is original and that he "complied with applicable statutory formalities." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (cleaned up). "One of those statutory formalities is the Copyright Act's registration requirement, which provides that 'no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made.'" *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, No. 21-10410, 2023 WL 3454614, at \*5 (11th Cir. May 15, 2023) (*quoting* 17 U.S.C. § 411(a)). The Supreme Court confirmed that this registration requirement must be satisfied prior to a plaintiff bringing a suit for copyright infringement. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887, 203 L. Ed. 2d 147 (2019) (holding that although a copyright owner may have common law rights, the registration requirement "is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights").

This registration requirement equally applies to derivative copyrights. *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 632 (6th Cir. 2001) (holding that "before an infringement suit can be sustained based on the derivative work, that derivative work must be registered"), overruled on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*, 354 F.3d 112, 115 (2d Cir. 2003) (holding that copyright registration of "an original work does not create subject matter jurisdiction with respect to a suit of infringement of the original's unregistered derivative"), abrogated on other grounds by *Reed Elsevier*, 559 U.S. 154.

22

Despite having the burden to prove he complied with § 411, he has not identified any registrations for any unidentified derivatives. Accordingly, the Court should dismiss any claim of copyright infringement of the "SAQ-7" copyright or any derivative, and limit his claims to asserting infringement of the SAQ-I or SAQ-II copyrights.

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE EPIC'S USE OF SAQ-7 WAS LICENSED.

No matter which copyright Dr. Spertus alleges that Epic infringed by using SAQ-7, the Court should grant Epic summary judgment because Epic has a valid license to use SAQ-7. "[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). This is because "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *see also PaySys Int'l, Inc. v. Atos Se*, 226 F. Supp. 3d 206, 216 (S.D.N.Y. 2016) ("it is well-established that a licensor generally may not sue its licensee for copyright infringement"). As Epic informed Dr. Spertus before he filed the Complaint, Epic has a license to use SAQ-7 through a series of conveyances. (PFF 143-148). Specifically, Epic has a license to use SAQ-7 from Wolters Kluwer,

The Seventh Circuit has held that when there are no triable issues of fact, "[c]ontract interpretation is a subject particularly suited to disposition by summary judgment." *Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1333 (7th Cir. 1988). The Seventh Circuit has also instructed that "when one party files a motion for summary judgment requiring interpretation of a contract, the district court must determine (1) if the contract is ambiguous or unambiguous and (2)

if it is ambiguous, whether after consideration of the extrinsic evidence, there are any triable issues of fact." *Hickey v. A.E. Staley Mfg.*, 995 F. 2d 1385, 1389 (7th Cir. 1993). "Even when a contract is ambiguous, as long as the extrinsic evidence bearing on the interpretation is undisputed and leads to only one reasonable interpretation, [the Court] can decide the matter on summary judgment." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012).

Here, the terms of the conveyances and licenses are clear and unambiguous. Dr. Spertus included SAQ-7 as a figure in an article titled *Development and Validation of a Short Version of the Seattle Angina Questionnaire* ("the Article"). (PFF 59, 74-75). The Article including SAQ-7 was published in a journal issued by the AHA. (PFF 59, 73-74). ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ (PFF 76-80). Epic then obtained a perpetual license from Wolters Kluwer to use the figure (*i.e.*, SAQ-7) of the Article in its electronic medical records software. (PFF 120-122).

**A.** ██████████████████████████████████████

Dr. Spertus transferred any rights he had in SAQ-7 to the AHA prior to Epic's use thereof. On ███████, Dr. Spertus ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████ ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████

Dr. Spertus does not dispute ████████████████████████████

████████████████████████████████████████████████████

or that the Article was published on September 1, 2014, in the journal *Circulation: Cardiovascular Quality and Outcomes* with SAQ-7 as a figure (PFF 73). Accordingly, ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

25

**B.** ██████████████████████████████████

Following publication of the article in *Circulation: Cardiovascular Quality and Outcomes*,

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

26

### C.    Wolters Kluwer Conveyed a License to Epic for SAQ-7

On July 22, 2016, Epic obtained a perpetual license to use SAQ-7 in its EHR software from Wolters Kluwer. (PFF 120-122). As set forth below, the contract itself is comprised of multiple documents between Epic and Wolters Kluwer, ████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ If the Court finds the agreement ambiguous, then Epic is still entitled to summary judgment because the parole evidence conclusively establishes the terms. Both Wolters Kluwer and Epic have provided unrebutted sworn testimony that ████████████████████████████████ ██████████████████████

For context, Wolters Kluwer ██████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████

In June 2016, Epic submitted a request through RightsLink to obtain a license to reproduce and use content in Dr. Spertus' Article, which includes SAQ-7. (PFF 100). 



(PFF 114-116).

The License

issued on July 22, 2023, and specifically identified the licensed content as ███



████████████████████████████ The *only* Figure present in the Article is SAQ-7. (PFF 74-75). ████████████████████████████

████████████████████████████████████

████████████████████████████████████

███. The agreement also specifies that "[t]his is a perpetual license." (PFF 120-121).

### 1. The Clear Language of the License Agreement Shows that Wolters Kluwer Conveyed a Perpetual License to Epic

The language of the License Agreement demonstrates that the parties intended to enter into a perpetual license agreement permitting Epic to incorporate SAQ-7 into Epic's Electronic Medical Records System. As this Court held in *Strategic Digit. Signage*, "contract construction aims 'to ascertain the true intentions of the parties as expressed by the contractual language' with the purpose of 'determining what the parties contracted to do as evidenced by the language they saw fit to use.'" 2019 WL 2369402, at *3 (quoting *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990)). "Stated another way, the best indication of the parties' intent is the language of the contract itself, for that is the language the parties saw fit to use." *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶ 33, 330 Wis. 2d 340, 793 N.W.2d 476 (cleaned up).[3]

---

[3] The license agreement between Wolters Kluwer and Epic is silent as to which choice of law governs. To the extent not addressed by the Copyright Act, Epic has applied Wisconsin law to the interpretation of the license agreement. *See*, *FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281, 283 (7th Cir. 2002) (holding that in absence of any discussion of choice of law issues by parties, the court applies law of forum state); *Wood v. Mid–Valley Inc.,* 942 F.2d 425, 427 (7th Cir.1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."). As this "case calls for the application of basic principles of contract interpretation …the

The License between Wolters Kluwer and Epic is a non-exclusive license to use SAQ-7, and as such it is not required to be memorialized in writing. (*See* PFF 120-121). Under the Copyright Act, a "transfer of copyright ownership" must be in writing and signed by the owner of the rights conveyed. 17 U.S.C. § 204(a). However, non-exclusive licenses are explicitly excluded from the definition of "transfer of ownership" in 17 U.S.C. § 101. As the Seventh Circuit has held, non-exclusive licenses do not need to be in writing, but "may be granted orally, or may even be implied from conduct." *I.A.E., Inc.,* 74 F.3d at 775-76; *see also Landsted Homes, Inc. v. Sherman*, 305 F. Supp. 2d 976, 983 (W.D. Wis. 2002) ("Because no transfer of copyright ownership occurs with a nonexclusive license, no writing is required and permission may be granted orally.").



As discussed, the License granted by Wolters Kluwer to Epic ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The only "Figure" in the article is SAQ-7. (PFF 74-75). ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

choice of law is not likely to affect the outcome." *Niazi v. Merit Med. Sys., Inc.*, No. 22-cv-381-JDP, 2023 WL 4198675, at *3 (W.D. Wis. June 27, 2023).

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

QB\85037428.1

████████████████████████████████████████████████████████

████████████████████████████████████████████ Thus, Epic has a valid

license to use SAQ-7, and Dr. Spertus' claim of copyright infringement fails. *I.A.E., Inc.*, 74 F.3d

at 775.

### 2. Extrinsic Evidence and the History of Epic's and Wolters Kluwer's Dealings Resolve Any Alleged Ambiguity in Favor of Epic

If the Court finds the contract ambiguous, Epic is still entitled to summary judgment

because the parole evidence establishes that ████████████████████████████████

███████████████████████████████████████████████. *Collins v. Ralston*

*Purina Co.*, 147 F.3d 592, 598 (7th Cir. 1998) (holding that the extrinsic evidence in the form of

an affidavit and deposition testimony "resolv[ed] the ambiguity contained in the [] agreement.").

The unrebutted sworn testimony of Epic and Wolters Kluwer establishes ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ In

sum, the extrinsic evidence shows that ██████████████████████████

███████████████████████████████████████████████. *Hickey*,

995 F.2d at 1389-90 (holding that even though the contract was ambiguous "the extrinsic evidence

[] in the form of defense affidavits conclusively established the intent of the [contract].").

If the Court needs further clarification, ████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████

**D.** **Dr. Spertus'** ██████████████████ **Resolves Any Alleged Ambiguity in Favor of Epic**

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████.

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████.

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████



. For these reasons, Epic should be granted summary judgment on Dr. Spertus' claim of copyright

QB\85037428.1

infringement. *See*, *Hickey*, 995 F. 2d at 1389-90, 1392 (affirming district court determination that there was "no triable issue of fact because the undisputed extrinsic evidence … conclusively established the intent of the [contract].").

## III.     THE SAQ QUESTIONNAIRES ARE NOT COPYRIGHTABLE

The Court should also grant summary judgment holding that the Questionnaires are not copyrightable. In the Seventh Circuit, "copyrightability is an issue of law for the court." *Schrock*, 586 F.3d at 517. While a plaintiff with a registered copyright generally receives a prima facie presumption of copyright validity, this presumption applies "only if the work was registered within five years of first publication []." *Big Daddy Games, LLC v. Reel Spin Studios, LLC*, No. 12-cv-449-bbc, 2013 WL 12233949, at *14 (W.D. Wis. Apr. 10, 2013) (citing 17 U.S.C. § 410(c)). Here, the Questionnaires have no presumption of validity because Dr. Spertus published them more than five years before he registered SAQ-I or SAQ-II. 17 U.S.C. § 410(c).

Pursuant to § 102(a) of the Copyright Act, copyright protection only extends to original works of authorship. It does not extend to "to any idea, procedure, process, system, method of operation, concept, principle, or discovery []." 17 U.S.C. § 102(b). The Questionnaires are ultimately not copyrightable expression under 17 U.S.C. § 102(b), but rather are functional works that were developed to achieve a specific scientific purpose. In addition, the ideas embodied in the SAQ Questionnaires can only be expressed in one or a limited number of ways, and thus they are uncopyrightable under the merger doctrine of copyright law.

### A.     SAQ-7 is Not Entitled to a Presumption of Validity Because it is Unregistered.

As discussed in section Argument Section I, Dr. Spertus cannot bring a claim for copyright infringement of SAQ-7 because it was never registered with the Copyright Office. 17 U.S.C. § 411(a). Even if Dr. Spertus could register SAQ-7 in the future (he could not as it is not a derivative), that registration would not be entitled to a presumption of validity. Pursuant to 17 U.S.C. § 410(c),

36

a certificate of registration "shall constitute prima facie evidence of the validity of the copyright" but only if the registration occurred "before or within five years after first publication of the work." SAQ-7 was published on September 2, 2014, over nine years ago, in the article *Development and Validation of a Short Version of the Seattle Angina Questionnaire*. (PFF 59, 73).

**B.** **SAQ-I and SAQ-II are Not Entitled to a Presumption of Validity Because They Were Registered More Than 5 Years After First Publication.**

Similarly, neither SAQ-I nor SAQ-II are entitled to a presumption of validity because they were registered more than five years after first publication. (*See* PFF 60-65). As discussed above, a copyright registration is entitled to a presumption of validity if the registration occurred "before or within five years after first publication of the work." 17 U.S.C. § 410(c). Here, both questionnaires were registered with the Copyright Office in 2005. (PFF 60, 62). However, SAQ-I was first published in 1995 in the Journal of American Cardiology in the appendix of an article by Dr. Spertus titled *Development and Evaluation of the Seattle Angina Questionnaire: A New Functional Status Measure for Coronary Artery Disease*. (PFF 57). ███████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████ The statutory definition of "publication" includes distribution of copies of a work to the public by rental, lease, or lending. 17 U.S.C. § 101.[5]

Accordingly, Dr. Spertus has no presumption of validity, and now "bears the burden of showing that there are elements" of SAQ-I and SAQ-II "that are 'original' and protectable by copyright." *Big Daddy Games,* 2013 WL 12233949, at *14.

---

[5] In obtaining both registrations, Dr. Spertus failed to disclose the prior publications, contrary to 17 U.S.C. § 411(b). (PFF 66; *see also* PFF 61, 63).

## C. The SAQ Questionnaires Do Not Contain Copyrightable Expression.

None of the SAQ Questionnaires contain copyrightable expression. Pursuant to § 102(b) of the Copyright Act, copyright protection does not extend to "to any idea, procedure, process, system, method of operation, concept, principle, or discovery []." 17 U.S.C. § 102(b). The Seventh Circuit has described § 102(b) as codifying a "fact-expression dichotomy." *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 981 (7th Cir. 1997). Fundamentally, "the Copyright Act protects the expression of ideas, but exempts the ideas themselves from protection." *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507 (7th Cir. 1994). "Thus, even though an individual can have a valid copyright in a document, facts and ideas contained in the document are not subject to copyright." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 497 (7th Cir. 2011). Nor does the Copyright Act protect "expressions dictated solely by function, or subjects that can be expressed only in certain ways." *UIRC-GSA Holdings, Inc. v. William Blair & Co., LLC.*, No. 15 CV 9518, 2021 WL 4459530, at *2 (N.D. Ill. Sept. 29, 2021).

For example, in *UIRC-GSA Holdings*, the court held that documents created by the plaintiff for use in bond offerings lacked originality and were "not sufficiently creative to warrant copyright protection." *Id.* at *3. The court found that, even if the more substantial phrases and paragraphs of the documents included a "modicum of originality, they are not entitled to copyright protection because they consist of unprotectable facts, functional phrases akin to instructions, fragmented phrases, or subjects that can be expressed only in certain ways, such as definitions of terms." *Id.* at *4.

Similarly, the SAQ Questionnaires are mere embodiments of an idea, method, process, or procedure, and do not contain copyrightable expression. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

38

For example, in an article Dr. Spertus co-authored in the Journal of American Cardiology titled *Development and Evaluation of the Seattle Angina Questionnaire: A New Functional Status Measure for Coronary Artery Disease*, Dr. Spertus described the purpose of SAQ-I as "a disease-specific functional status measure . . . to quantify the physical and emotional effects of coronary artery disease. This instrument (Appendix) is a 19-item self-administered questionnaire resulting in five scales that measure clinically important dimensions of coronary artery disease: physical limitation, anginal stability, anginal frequency, treatment satisfaction, and disease perception." (PFF 245). The study concluded that SAQ-I "is a valid and reliable instrument that measures five clinically important dimensions of health in patients with coronary artery disease. It is sensitive to clinical change and should be a valuable measure of outcome in cardiovascular research." (PFF 246). Dr. Spertus testified ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████



The evidence establishes that the SAQ Questionnaires were developed to achieve a specific, scientific purpose, and the specific wording of each Questionnaire were designed to maximize their functionality. As copyright expert Dr. Depoorter testified, the SAQ Questionnaires are functional works because they "prioritize the achievement of a particular task. . .. Any expression or aesthetic appeal is merely secondary or incidental to the questionnaires main functional clinical purpose." (PFF 253). Functional works are distinguishable from "nonfunctional works, such as poems or paintings, [which] primarily aim to evoke sensory or emotional responses in their audience through expressive and aesthetic qualities." (PFF 254).

Courts have long denied copyright protection for functional works. *See Baker v. Selden*, 101 U.S. 99, 103–104 (1879) (bookkeeping system forms were not eligible for copyright protection because they were functional systems and ideas rather than original expression); *Carol Barnhart Inc. v. Econ. Cover Corp.*, 773 F.2d 411, 419 (2d Cir. 1985) (human torso display forms lacking originality and consisting primarily of functional features were not eligible for copyright

QB\85037428.1

protection); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 815 (1st Cir. 1995), *aff'd* 516 U.S. 233 (1996) (functional elements of a computer spreadsheet program, such as its menu structure and command hierarchy, were not protected by copyright); *Lambing v. Godiva Chocolatier*, 142 F.3d 434 (6th Cir. 1998) ("[R]ecipes are functional directions for achieving a result and are excluded from copyright protection under 17 U.S.C. § 102(b).").

### D. The Merger Doctrine Precludes Copyright Protection for the SAQ Questionnaires.

In addition, the Questionnaires are not copyrightable under the merger doctrine. Under the merger doctrine, when "there is only one feasible way of expressing an idea, so that if the expression were copyrightable it would mean that the idea was copyrightable," the expression is not protected. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 928 (7th Cir. 2003). In other words, "[w]hen expression is so limited, idea and expression 'merge.' Expressions merged with ideas cannot be protected, lest one author own the idea itself." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 103 (2d Cir. 2014). As copyright expert Dr. Depoorter testified, the merger doctrine serves to prevent a monopolization over the idea expressed in the copyrighted work:

> Whenever copyright protection for an original expression would grant monopoly power over the idea thus expressed, copyright law strips away protection over the **precise original expression used** such that when a **creative expression merges with idea**, the former may be freely copied.
>
> The test for whether an idea merges with an expression is whether "improper monopolization of the subject idea will occur" if copyright were to be granted on the expression. Such monopolization of the subject idea may occur "even if several alternative locutions are conceivable."

(PFF 255). Whether it is *possible* to express the idea in other ways is irrelevant. For example, in *Morrissey v. Procter & Gamble Co.*, the First Circuit considered whether sweepstakes rules were eligible for copyright protection. 379 F.2d 675, 676-77 (1st Cir. 1967). The court determined that the plaintiff's sweepstakes rules were not copyrightable because the rules could only be expressed

41

in a limited number of ways and that otherwise "a party… by copyrighting a mere handful of forms, could exhaust all possibilities of future use of the substance." *Id.* at 678. The court found the sweepstakes rules to be "so straightforward and simple" that "the subject matter would be appropriated by permitting the copyrighting of its expression." *Id.* at 679. The court held "that copyright does not extend to the subject matter at all, and [the] plaintiff cannot complain even if his particular expression was deliberately adopted." *Id.*

Similar to the sweepstakes rules at issue in *Morrissey*, the idea embodied in the SAQ Questionnaires can only be expressed in one or a limited number of ways. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████



(PFF 260). This testimony is consistent with articles Dr. Spertus has published on the design and development of the SAQ Questionnaires. In one article, Dr. Spertus discussed why the questions and answer options of SAQ-7 were selected from those in SAQ-II and explained that the data showed those particular questions generated the most clinically accurate results. (PFF 41, 59; *see also* PFF 264).

As Spertus designed the Questionnaires and promotes them, some in the medical community have found the short length and targeted wording of SAQ-7 to serve a clinical function. (PFF 261). For example, the International Consortium for Health Outcomes Measurement has endorsed SAQ-7 as a standardized outcome measure for patients with coronary artery disease. (PFF 262-263).

These features of the SAQ Questionnaires place them squarely within the merger doctrine, and thus ineligible for copyright protection. As Dr. Depoorter testified:

> It is not feasible to revise the questions in a way that would not infringe on the copyright and still maintain the same level of functionality. As shown . . . by Dr. Spertus' own admission and validated by medical or clinical research, a reworded

> version of the SA questionnaire will not execute the same system and will not
> achieve the validity and diagnostic accuracy that the SA questionnaires have
> been tested and demonstrated to possess. In other words, without reproducing the exact
> wording of the questions and answer options, the accuracy of the test is undermined.

(PFF 264). The Seventh Circuit has found similar works to be uncopyrightable. For example, in

*Seng-Tiong Ho v. Taflove*, the Seventh Circuit held that that equations, figures, and texts used to

express an atomic model were not eligible for copyright protection under the merger doctrine,

because there was no evidence that the model could be expressed by other equations, figures, or

text. 648 F.3d at 499–500. The Seventh Circuit noted that the model "attempts to represent and

describe reality for scientific purposes" and its value was its "ability to accurately mimic nature."

*Id.* at 498.

Similarly, in *Woods v. Resnick*, this Court considered whether finance formulas developed

for use in Excel Spreadsheets are copyrightable. 725 F. Supp. 2d 809, 821 (W.D. Wis. July 16,

2010). The copyright holder had argued that the expressions in the spreadsheet had some minimal

degree of creativity as compared to other algorithms or arrangement available to the public. *Id.*

This Court disagreed, finding that the formulas in Excel were not copyrightable under the merger

doctrine and noting that the copyright owner made "no suggestion that there were different ways

he could have expressed the finance formulas in Excel and still have them work, nor does he

suggest that the manner in which he expressed his Excel equations were not dictated by the Excel

software." *Id.* So too, here. Dr. Spertus has not provided any evidence that the SAQ Questionnaires

could have been written in any other way and still achieved their purpose. Indeed, as described

above, Dr. Spertus has claimed the contrary. This Court should likewise find that the SAQ

Questionnaires are uncopyrightable under the merger doctrine. If Dr. Spertus wanted to protect his

functional works, he should have sought patent protection. (PFF 266).

44

## IV. THE COURT SHOULD DISMISS DR. SPERTUS' CLAIMS FOR ACTUAL DAMAGES, AND DISGORGEMENT OF EPIC'S ALLEGED PROFITS BECAUSE THOSE CLAIMS LACK SUFFICIENT EVIDENTIARY SUPPORT.

The Court should dismiss Dr. Spertus' claims for actual damages and disgorgement of Epic's alleged profits. First, Dr. Spertus cannot establish his lost profits as a measure of actual damages because there is no evidence that Dr. Spertus lost a single sale as a result of the alleged infringement. Second, Dr. Spertus does not disclose any calculation of lost profits in response to written discovery, or in his "expert" report. Third, Dr. Spertus cannot establish that any of Epic's profits were attributable to the alleged infringement. Finally, to the extent the Court does not dismiss Dr. Spertus' claim for disgorgement damages, it should cap those damages at ███ because the apportionment opinions proffered by Epic's damages expert are reliable, supported by substantial evidence, and completely unrebutted.[6]

### A. Dr. Spertus Seeks To Recover Actual Damages and Epic's Profits.

Rule 26(a)(1)(A)(iii) requires Dr. Spertus to disclose a computation of each category of damages and supporting materials. Dr. Spertus' disclosure states, in relevant part, that he "seeks his actual damages from Epic's copyright infringements, Epic's profits resulting from Epic's infringement of the copyrights at issue in this litigation." (PFF 189). He does not identify any computation or supporting materials but commits to "provide a detailed computation of damages" after damages discovery and evaluation by an expert. (PFF 190). Dr. Spertus has not updated this disclosure since it was served on June 14, 2022. (PFF 191).

On July 28, 2022, Dr. Spertus served responses to Epic's first set of interrogatories, including Interrogatory No. 11, which asked Dr. Spertus to "[i]dentify any and all damages . . .

---

[6] By seeking this "cap" Epic is not waiving or foregoing further downward adjustment of the amount for the reasons outlined by its damages expert. *See* Dkt. 70, Expert Report of Kevin M. Arst, dated August 11, 2023, at p.42.

and provide the computation, factual and legal bases, itemization, and/or calculation for each category of said damages." (PFF 192). ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ .

On June 2, 2023, Dr. Spertus disclosed himself as an "expert" witness ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

On July 14, 2023, ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

That represents the universe of Dr. Spertus' disclosures pertaining to damages.

**B.** **A Causal Connection Between The Alleged Infringement And The Remedy Sought Is A Predicate To Dr. Spertus' Recovery Of Damages Under 17 U.S.C. § 504(b).**

Upon a finding of infringement, a copyright owner is entitled to seek "actual damages" and "any profits of the infringer . . . not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Pursuant to §504(b), a copyright owner's actual damages must be incurred "as a result of the infringement," and recoverable profits of the infringer must be "attributable to the infringement." 17 U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th

Cir. 2004). This statutory language establishes a "causal link between the infringement and the monetary remedy sought" and acts as "a predicate to recovery of both actual damages and profits." *Id.* The copyright owner "must establish this causal connection" which is "akin to tort principles of causation and damage." *Id.* (*citing Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002)[7]).

### C. Dr. Spertus Cannot Establish His Lost Profits as a Measure of Actual Damages in This Case.

Dr. Spertus cannot establish his lost profits as a measure of actual damages because: (1) he cannot establish that Epic's alleged infringement caused Dr. Spertus to lose any sales, (2) Dr. Spertus does not even disclose a lost profit calculation, and (3) Dr. Spertus does not sell any products or services – ███████████████████████████████████████

#### 1. Dr. Spertus cannot establish that he lost any sales as a result of Epic's alleged infringement.

Dr. Spertus does not have any evidence that he lost a sale due to Epic's alleged infringement. 17 U.S.C. § 504(b); *Polar Bear Prods.*, 384 F.3d at 708. ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ ██████████████

---

[7] This Court has recognized the Ninth Circuit's decision in *Mackie* as "cited widely by the Seventh Circuit." *Sullivan v. Flora, Inc.*, No. 15-cv-298-wmc, 2017 WL 1487624, at *3 (W.D. Wis. Apr. 25, 2017).

Yet, Dr. Spertus' calculation of alleged lost licensing fees assumes ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Spertus' assumption of
causation is speculation, and "mere speculation does not suffice to link the losses to the
infringement." *Polar Bear Prods.*, 384 F.3d at 710.

### 2. Dr. Spertus does not disclose a lost profits calculation.

Dr. Spertus' claim for actual damages should also be dismissed because he fails to disclose
a calculation of lost profits. "Actual damages are usually determined by the loss in the fair market
value of the copyright, measured by the profits lost due to the infringement . . .." *Polar Bear Prods.,*
384 F.3d at 708 (*quoting McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir.
2003)). Dr. Spertus never disclosed a calculation of alleged lost profits.

While alleged lost revenue may be a starting point for the calculation of actual damages,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

48



. As explained by the Seventh Circuit, "a loss of revenue is not the same thing as a loss of profits." *Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir. 1983). Selling less of a product results in lower costs and those savings must be offset against the lost revenue in calculating alleged lost profit. *Id.* ████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████ But like the copyright owner in *Taylor*, Dr. Spertus "did not subtract a penny" from his estimated lost sales. *Taylor*, 712 F.2d at 1121. For the same reasons discussed in *Taylor*, Dr. Spertus has not provided a basis for the jury to calculate the fraction of lost sales that represents profit, i.e., actual damages.

### 3. Dr. Spertus is precluded from recovering the profits allegedly earned ████████████████████████████████████████.

Dr. Spertus is precluded from seeking lost profits because ███████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████

A plaintiff may sue for damages only on its own behalf—not on behalf of nonparties. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). And business entities are considered legally separate even if closely related. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). Permitting a plaintiff to recover the damages of its affiliates would allow it to "establish and use its affiliates' separate legal existence for some purposes"— such as limited liability and tax advantages—"yet have their separate corporate existence

disregarded for its own benefit against third parties." *Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.,* 97 F.3d 377, 380 (9th Cir. 1996). Federal courts do not permit this result, including in copyright cases. *Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007) (rejecting the copyright plaintiffs' argument that "Lanard Ltd. can assert the intellectual property rights of Lanard Inc. because they are 'related companies'").

These principles have been applied in the patent law context to prohibit plaintiffs from recovering the lost profits of a related company. In *Poly-America, L.P. v. GSE Lining Tech., Inc.*, the court held that the patent holder, Poly-America, could "recover only its own lost profits"—not those of its sister corporation, *Poly-Flex*. 383 F.3d 1303, 1311 (Fed. Cir. 2004). Poly-Flex was not a named plaintiff because, as a non-exclusive licensee, it lacked standing to sue for damages. *Id.* Poly-America attempted to circumvent standing rules by urging the court to treat the companies "as a single economic unit for [purposes of calculating] lost profits." *Id.* at 1310. Refusing to blur corporate distinctions, the court held that related corporations "may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure—in this case, the inability of the patent holder to claim the lost profits of its non-exclusive licensee." *Id.* at 1311.

### D. Dr. Spertus Cannot Establish that Any of Epic's Profits were Attributable to the Alleged Infringement.

Section 504(b) requires that recoverable profits of the infringer must be "attributable to the infringement." 17 U.S.C. § 504(b); *Polar Bear Prods.*, 384 F.3d at 708. As noted above, this language establishes a "causal link between the infringement and monetary remedy sought" and acts as "a predicate to recovery of both actual damages and profits." *Id.* Dr. Spertus does not have any evidence that Epic's revenue or profits were connected to the SAQ-7. (PFF 211-212).

[REDACTED]

Dr. Spertus fails to identify revenue attributable to the alleged infringement. These applications provide functionality far beyond access to SAQ-7 (when configured). The EpicCare, Ambulatory, and Healthy Planet applications are directed to outpatient clinics. (PFF 3-4). They provide a full suite of functionality to manage the delivery of healthcare, including standard reporting and documentation for clinical workflows, billing, system upgrades and maintenance, integration with other applications, predictive analytics, registration/front desk functionality, prescribing and creating orders, and helpdesk support. (PFF 4). They are available across many specialties, including allergy, bariatrics, endocrinology, ENT, general surgery, gastroenterology, infectious disease, neurology, orthopedics, pain, pediatrics, podiatry, urology, etc. (PFF 5). MyChart is Epic's patient platform. (PFF 6-7). Through MyChart, patients can complete a variety of tasks including viewing their medical records and test results, scheduling appointments, attending virtual visits, and making payments. (PFF 7).

Dr. Spertus' failure to further narrow the revenues is fatal to his disgorgement remedy. In *Taylor*, the court refused to accept the copyright owner's gross revenue figures because it

"lumped" the profits on noninfringing sales in with the infringing sales. *Taylor*, 712 F.2d at 1122.

The *Taylor* court explained:

> If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits.

*Id.* ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████  ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

52

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

At bottom, absolutely no evidence suggests that Epic's pricing and revenues are connected to SAQ-7. Whatever evidence Dr. Spertus tries to marshal will be pure speculation. "When an infringer's profits are only remotely and speculatively attributable to the infringement, courts deny recovery to the copyright owner." 5 Nimmer on Copyright § 14.03[B][2][a], at 16. The Court should deny Dr. Spertus' effort to recoup Epic's profits as copyright damages in this case.

**E.     If the Court Does Not Dismiss Dr. Spertus' Claim for Disgorgement Damages, It Should Cap Those Damages At ████ – The Unrebutted Cap Established By Epic's Damages Expert.**

To the extent the Court allows Dr. Spertus to proceed on a disgorgement theory of damages, the Court should cap his recoverable damages at ████. As noted above, Dr. Spertus offers no expert opinion testimony regarding the calculation or recovery of Epic's profits. (PFF 211-212). As such, he has no basis to oppose the apportionment analysis offered by Epic's expert, Kevin Arst.

Mr. Arst offers a thorough assessment of alleged disgorgement damages, including an assessment of pricing, accused sales, and an apportionment calculation based upon actual use. (PFF 241). His opinions cite to, and rely upon, substantial evidence including public information regarding the software applications at issue, interviews with Epic personnel, an assessment of thousands of pages of documents, and his own professional judgment and experience. (PFF 242). Ultimately, after apportioning the profit Epic earned ██████████████████████ ████████ ██████████████████████████, Mr. Arst concludes that there were ██████ in apportioned profits. (PFF 243). Mr. Arst notes, however, that this number would likely be lower for a number of other reasons. (PFF 244).

Because Dr. Spertus has disclosed no competing opinion on apportionment of revenues, he has no basis to challenge Mr. Arst's conclusions. As such, the Court should impose a cap of ███ if it permits Dr. Spertus to proceed with a disgorgement theory of recovery.

## V. EPIC SHOULD RECEIVE ITS REASONABLE ATTORNEY'S FEES

### A. The Seventh Circuit Recognizes a "Very Strong Presumption" for Attorney's Fees for Prevailing Defendants in Copyright Suits

If the Court grants Epic's Motion for Summary Judgment, Epic will be a prevailing party in this lawsuit, and be entitled it its attorney's fees. Fed. R. Civ. P. 54; s*ee also Design Basics, LLC v. Kerstiens Homes & Designs, Inc.*, 1 F.4th 502, 503 (7th Cir. 2021) (affirming award of attorney's fees to the defendant who prevailed on a motion for summary judgment).

The Copyright Act authorizes prevailing parties to recover their costs and fees. 17 U.S.C. § 505. Prevailing copyright ***defendants*** are "entitled to a very strong presumption in favor of recovering their fees." *Live Face*, 77 F.4th at 632. This is because a successful copyright defendant does not recover damages:

> The best he can hope for is to break even—to recover his attorney's fees. Without an award of attorney's fees, a defendant faces pressure to abandon his meritorious defenses and throw in the towel because the cost of vindicating his right (his attorney's fees) will exceed the private benefit he receives from succeeding (a non-excludable right to continue doing what he has already done).

*Id.* The presumption in favor of awarding fees to prevailing copyright defendants is so strong that the Seventh Circuit has "repeatedly reversed district courts who refused to award a prevailing defendant his attorney's fees." *Id.* (collecting cases). Accordingly, Dr. Spertus "face[s] a steep, uphill battle to rebut [the] very strong presumption in favor of awarding" Epic its attorney's fees. *Id.* at 633.

**B.    The *Fogarty* Factors Weigh in Epic's Favor.**

In *Fogarty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court set forth four nonexclusive factors to guide a district court's decision whether to award a prevailing party its fees: (1) the frivolousness of the suit; (2) the losing party's motivation for bringing or defending against a suit; (3) the objective unreasonableness of the claims advanced by the losing party; and (4) the need to advance considerations of compensation and deterrence. *Live Face*, 77 F.4th at 631 (citing *Fogarty*, 510 U.S. at 534 n.19). These factors weigh in Epic's favor, warranting an award of fees.

**1.    Dr. Spertus' Suit was Frivolous.**

"[T]he loser's conduct need not be 'sanctionable' for the winner to be entitled to attorney's fees" in a copyright infringement case. *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008) (quoting 17 U.S.C. § 505). In fact, "a finding of frivolity or bad faith is not required under the Copyright Act, which permits an award of attorneys' fees and costs in the court's discretion." *JCW Invs., Inc. v. Novelty, Inc.*, 509 F.3d 339, 342 (7th Cir. 2007) (citing 17 U.S.C. § 505).

Here, however, Dr. Spertus' case was frivolous, because Dr. Spertus brought this suit despite knowing since 2019 that Epic has a license from Wolters Kluwer to use SAQ-7.

In August 2019, Dr. Spertus' attorney wrote to Epic alleging Epic's use of SAQ-7 infringed Dr. Spertus' copyright. (PFF 143-144, 148). This conduct is particularly troubling because at that time Dr. Spertus ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████.

*HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 382 (7th Cir. 2011) (holding that only the exclusive licensee of a copyright interest is entitled to sue for infringement of that right).

Moreover, Dr. Spertus' demands were improper because Epic informed him that it had a license. In September 2019, Epic informed Dr. Spertus' counsel that Epic's use of SAQ-7 is covered by a license from Wolters Kluwer. (PFF 146). In 2021, Dr. Spertus ██████████ ████████████████████████████████████████████████████ ██████████ ████████████████████████████ Epic had purchased a perpetual license in 2016. (PFF 160-163).

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████ Dr. Spertus filed this lawsuit. (PFF 185).

The evidence demonstrates that Epic not only had a license to SAQ-7, but that Dr. Spertus knew this prior to filing this lawsuit. ████████████████████████████ ████████████████████████████████████████████████████ Additionally, in September 2022, ████████████████████████████ ████████████████████████████████████████████████████

████████████████████████████████████████████████ This factor weighs in Epic's favor.

### 2. Motivation

The second factor asks whether the losing party's motivation in bringing the lawsuit was questionable. *Live Face*, 77 F.4th at 634. "[A] court's discretion may be influenced by the plaintiff's culpability in bringing or pursuing the action, but blameworthiness is not a prerequisite to awarding fees to a prevailing [party]." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996).

In *Brownmark Films LLC, v. Comedy Partners*, the court found this factor to weigh in favor of a prevailing copyright defendant when the plaintiff's position was unreasonable, and the plaintiff delayed almost two years in filing suit, during which time the plaintiff was repeatedly told that his claims of copyright infringement were baseless. No. 10-CV-1013-JPS, 2011 WL 6002961, at *7 (E.D. Wis. Nov. 30, 2011). Here, in 2019, in response to allegations of copyright infringement by Dr. Spertus' attorney (PFF 146), Epic told Dr. Spertus that it has a perpetual license to use SAQ-7. (PFF 146, 148). ██████████████████████████████████████████

Nevertheless, three years later Dr. Spertus insisted on bringing this lawsuit ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████

### 3. Dr. Spertus' Claims were Objectively Unreasonable.

Dr. Spertus' claims were also objectively unreasonable because any plaintiff in his position would know that Epic had a license from Wolters Kluwer and thus Dr. Spertus could not seek further compensation from Epic through threats or this lawsuit. In *Brownmark Films LLC*, the court found the plaintiff's legal positions to be both objectively unreasonable and frivolous because there was "little that could justify the plaintiff's stated view" of its copyright infringement case. 2011 WL 6002961, at *6. Additionally, "[i]n determining the objective reasonableness of a party's

case, the appropriate question is not whether the party could prove or disprove a particular element or issue, but how clear it was that the party would succeed or fail on the claim as a whole." *Datacarrier S.A. v. WOCCU Servs. Grp., Inc.*, No. 16-cv-122-JDP, 2018 WL 3130628, at *3 (W.D. Wis. June 26, 2018).

Here, as explained *supra*, the evidence shows that Epic has a perpetual license to use SAQ-7. In fact, ███████████████████████████████████████████████ ███████████████████████████████████ "[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement." *I.A.E., Inc.*, 74 F.3d at 775. For these reasons, Dr. Spertus' suit is objectively unreasonable. *Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729, 732-33 (7th Cir. 1996) (holding that the plaintiff's case was objectively unreasonable "both factually and legally" because the plaintiff lacked copyright interests in the disputed work prior to filing its complaint); *see also*, *Datacarrier S.A.*, 2018 WL 3130628, at *3 (holding that the plaintiff's position was "not objectively reasonable" because it was contrary to "clearly established principles of copyright law.").

### 4. Awarding Epic its Attorneys' Fees Would Advance Considerations of Compensation and Deterrence.

The fourth factor "asks whether awarding fees would advance considerations of compensation and deterrence." *Live Face*, 77 F.4th at 635. In *Fogarty*, the Supreme Court noted that the ultimate purpose of copyright law is to "enrich[] the general public through access to creative works" and therefore "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty*, 510 U.S. at 527. As a prevailing defendant in a copyright suit, the only compensation Epic is eligible to receive are its expenses. *Live Face*, 77 F.4th at 635. Regarding deterrence, the Seventh Circuit has instructed that awarding a prevailing

defendant in a copyright infringement suit serves to encourage defendants to bring meritorious defenses. *Id.* This factor weighs in Epic's favor as well. In sum, this Court should award Epic its reasonable attorney's fees.

## VI.    THE COURT SHOULD DISMISS DR. SPERTUS' CLAIM FOR WILLFUL INFRINGEMENT

Even if the Court denies Epic's motion for summary judgment on the merits, the Court should dismiss Dr. Spertus' claim for willful infringement because no evidence supports that Epic willfully infringed Dr. Spertus' copyrights. *Boehm v. Svehla*, No. 15-CV-379-JDP, 2017 WL 4326308, at *12 (W.D. Wis. Sept. 27, 2017) (granting summary judgment in favor of the defendant because the plaintiff "adduced no evidence to create a genuine dispute as to whether [the defendant] was aware or willfully blind to the fact that its actions were infringing"). In the Seventh Circuit, "a finding of willfulness is justified if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Id.* (citation and quotation marks omitted).

The plaintiff has the burden of showing that a defendant's infringement was willful. *Id.* at *12. Dr. Spertus cannot meet this burden: there is no evidence that Epic had knowledge that its conduct represented infringement or that Epic recklessly disregarded that possibility. In fact, there is ample evidence to the contrary. Epic reasonably thought it had a license to SAQ-7 from Wolters Kluwer. As discussed in Argument Section II *supra*, in 2016 Epic purchased a perpetual license from Wolters Kluwer for the SAQ-7 Figure in the Article in which SAQ-7 was published. (PFF 120-122). ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████ Because there is no evidence that Epic's alleged infringement was willful, summary judgment is appropriate. *Boehm*, 2013 WL 4326308, at *12.

## CONCLUSION

For the reasons set forth above, the Court should grant Epic's motion for summary judgement, dismissing the Complaint with prejudice and awarding Epic its reasonable attorney's fees. Should the Court not enter summary judgment dismissing the entire Complaint, the Court should enter summary judgement dismissing Dr. Spertus' claims for actual damages and disgorgement of Epic's profits, and his claim that Epic willfully infringed his alleged copyrights.

Respectfully submitted the 29th day of September 2023.

*/s/ Kristin Graham Noel*
Kristin Graham Noel
Matthew J. Duchemin
Bryce A. Loken
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 251-5000
Fax: (608) 251-9166
kristin.noel@quarles.com
matthew.duchemin@quarles.com
bryce.loken@quarles.com

*Attorneys for Epic Systems Corporation*

QB\85037428.1